**REDACTED**

No. 24-40323

# In the United States Court of Appeals for the Fifth Circuit

---

ARAMARK SERVICES, INCORPORATED GROUP HEALTH PLAN;
ARAMARK SERVICES INCORPORATED, FORMERLY KNOWN AS
ARAMARK CORPORATION; ARAMARK UNIFORM SERVICES,
GROUP HEALTH AND WELFARE PLAN; ARAMARK BENEFITS
COMPLIANCE REVIEW COMMITTEE,
PLAINTIFFS-APPELLEES,

*v.*

AETNA LIFE INSURANCE COMPANY,
DEFENDANT-APPELLANT.

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS, NO. 2:23-CV-446-JRG
THE HONORABLE RODNEY GILSTRAP*

---

**BRIEF FOR APPELLANT AETNA LIFE INSURANCE COMPANY**

---

JOHN B. SHELY
M. KATHERINE STRAHAN
DAVID W. HUGHES
CAMERON POPE
HICKS THOMAS LLP
  *700 Louisiana Street
  Suite 2300
  Houston, TX 77002
  (713) 547-9100*

SARAH M. HARRIS*
LIBBY A. BAIRD
NOAH C. MCCULLOUGH[†]
IKENNA N. UGBOAJA
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW
  Washington, DC 20024
  (202) 434-5000
  sharris@wc.com*

*Counsel for Appellant*

*Counsel of Record.

*Additional Counsel on Inside Cover*

PETER J. KOCORAS
GREGORY H. BERMAN
THOMPSON HINE LLP
   20 North Clark Street
   Suite 3200
   Chicago, IL 60602
   (312) 998-4241

MELISSA RICHARDS SMITH
GILLAM & SMITH, LLP
   303 South Washington Avenue
   Marshall, TX 75670
   (903) 934-8450

[†] Admitted in the District of Columbia under an emergency examination waiver and practicing law under the supervision of D.C. Bar members pursuant to D.C. Court of Appeals Rule 46-A.

i

## CERTIFICATE OF INTERESTED PERSONS

Case No. 24-40323

The undersigned counsel of record represents that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. APPELLANT: Aetna Life Insurance Company

> Sarah M. Harris
> Libby A. Baird
> Noah C. McCullough
> Ikenna N. Ugboaja
> Williams & Connolly LLP
>   680 Maine Avenue SW
>   Washington, DC 20024
>   (202) 434-5000

> John B. Shely
> M. Katherine Strahan
> David W. Hughes
> Cameron Pope
> Hicks Thomas LLP
>   700 Louisiana Street
>   Suite 2300
>   Houston, TX 77002
>   (713) 547-9100

Peter J. Kocoras
Gregory H. Berman
Thompson Hine LLP
   20 North Clark Street
   Suite 3200
   Chicago, IL 60602
   (312) 998-4241

Melissa Richards Smith
Gillam & Smith, LLP
   303 South Washington Avenue
   Marshall, TX 75670
   (903) 934-8450

2.  AFFILIATES OF APPELLANT: Aetna Life Insurance Company is 100% owned by Aetna Inc., which is 100% owned by CVS Pharmacy, Inc., which is 100% owned by CVS Health Corporation ("CVS Health"), a Delaware corporation and publicly traded company.  CVS Health has no parent company, and no other publicly held corporation owns 10% or more of its stock.

3.  APPELLEES: Aramark Services, Inc., f/k/a Aramark Corporation; Aramark Services, Inc. Group Health Plan; Aramark Uniform Services Group Health and Welfare Plan; and Aramark Benefits Compliance Review Committee

Jennifer Leigh Truelove
McKool Smith, P.C.
   Suite 300
   104 E. Houston Street

Marshall, TX 75670

Jon Corey
McKool Smith, P.C.
   Suite 600
   1999 K Street, N.W.
   Washington, DC 20006

David Schiefelbein
McKool Smith, P.C.
   32nd Floor
   1301 Avenue of the Americas
   New York, NY 10019

Emily Brantley Tate
McKool Smith, P.C.
   32nd Floor
   1301 Avenue of the Americas
   New York, NY 10019

*/s/ Sarah M. Harris*
SARAH M. HARRIS

OCTOBER 15, 2024

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendant-Appellant Aetna Life Insurance Company believes that oral argument would be helpful to the Court due to the important legal issues involved in this appeal, including whether the Supreme Court has implicitly overruled Fifth Circuit precedent. Aetna accordingly requests oral argument.

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................1

STATEMENT OF THE CASE ...............................................................5

    A.    The Federal Arbitration Act (FAA) ......................................5

    B.    Aramark and Aetna's Agreement .......................................7

    C.    Ensuing Litigation ............................................................11

STANDARD OF REVIEW ...................................................................16

SUMMARY OF ARGUMENT .............................................................17

ARGUMENT ......................................................................................24

I.    Arbitrators, Not Courts, Must Decide Whether Aramark Seeks
Non-Arbitrable Equitable Relief.................................................24

    A.    The Parties' Delegation Clause Clearly and Unmistakably
Tasks Arbitrators with Classifying the Type of Relief
Sought................................................................................25

    B.    *Archer* Does Not Dictate a Contrary Result ..................34

II.    Regardless, Aramark Seeks Legal Relief Subject to Arbitration.........40

    A.    ERISA Claims For Monetary Relief Are Equitable Only If
They Seek Particular Funds from Defendants .............41

    B.    The District Court Erred in Concluding Otherwise....................45

III.    At a Minimum, The District Court Erred by Denying Aetna's
Request for A Discretionary Stay .............................................51

CONCLUSION....................................................................................56

## TABLE OF AUTHORITIES

Page

### CASES

*Ally Align Health, Inc. v. Signature Advantage, LLC,*
574 S.W.3d 753 (Ky. 2019)..........................................................30, 40

*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233 (5th Cir. 2009)..........................53

*Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007)..........................46

*Amtex Sec., Inc. v. 3M Co.*, 2007 WL 2176977 (S.D. Tex. July 27, 2007) ........53

*Archer & White Sales, Inc. v. Henry Schein, Inc.,*
935 F.3d 274 (5th Cir. 2019), *cert granted*, 141 S. Ct. 107 (2020),
*and dismissed as improvidently granted*, 141 S. Ct. 656 (2021) .......*passim*

*Arnold v. HomeAway, Inc.*, 890 F.3d 546 (5th Cir. 2018)................................36

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ..............................5, 6

*Blanton v. Domino's Pizza Franchising LLC,*
962 F.3d 842 (6th Cir. 2020)....................................................24, 26

*Bosse v. N.Y. Life Ins. Co.*, 992 F.3d 20 (1st Cir. 2021)...................................27

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ...................................26

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) ...........................................*passim*

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) .............................................14, 15

*Davis v. SEVA Beauty, LLC,*
2017 U.S. Dist. LEXIS 148434 (W.D. Wash. Sept. 13, 2017)......................33

*Dr.'s Assocs., Inc. v. Stuart*, 11 F. Supp. 2d 221 (D. Conn. 1998) ...................33

*Dr.'s Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)................................54

*E. El Paso Physicians' Med. Ctr., LLC v. Aetna Health Inc.,*
2017 WL 876313 (W.D. Tex. Mar. 2, 2017)......................................30

Page

Cases—continued:

*Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba,*
    243 F.2d 342 (2d Cir. 1957) ........................................................15, 53

*Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432 (5th Cir. 2022)....................49

*GateGuard, Inc. v. MVI Sys. LLC,*
    2021 WL 4443256 (S.D.N.Y. Sept. 28, 2021) ...................................33

*Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013) .................*passim*

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ...........................5

*Gimeno v. NCHMD, Inc.*, 38 F.4th 910 (11th Cir. 2022) ...................................49

*Given v. M&T Bank Corp.*, 674 F.3d 1252 (11th Cir. 2012)........................26, 29

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ...................45

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)..*passim*

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308 (1999).........................................................................41

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.,*
    921 F.3d 522 (5th Cir. 2019).........................................................16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 592 U.S. 168 (2021)..........39

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 141 S. Ct. 107 (2020) .......39

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 140 S. Ct. 951 (2020) .......39

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)...*passim*

*Hines v. Stamos*, 111 F.4th 551 (5th Cir. 2024)................................................52

*Hobbs v. Baker Hughes Oilfield Operations, Inc.,*
    294 F. App'x 156 (5th Cir. 2008).................................................46

Page

Cases—continued:

*Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*,
765 F.3d 396 (5th Cir. 2014)................................................45

*In re Beebe*, 1995 WL 337666 (5th Cir. 1995) (per curiam) ..............52

*Info. Sys. Audit & Control Ass'n, Inc. v. Telecomm. Sys., Inc.*, 2017
WL 2720433 (N.D. Ill. June 23, 2017)................................33

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of
Georgia, Inc.*, 892 F.3d 719 (5th Cir. 2018)......................49

*Kubala v. Supreme Prod. Servs.*, 830 F.3d 199 (5th Cir. 2016)..........25, 27

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936)................................52

*LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465 (9th Cir. 2021) ...........26

*Leipzig v. Principal Life Ins. Co.*, 481 F. App'x 865 (5th Cir. 2010) ...........55

*McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012) ........48

*McKnight v. Blanchard*, 667 F.2d 477 (5th Cir. 1982) ....................52

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) .......................*passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)................................................5

*Montanile v. Board of Trustees of the National Elevator Industry
Health Benefit Plan*, 577 U.S. 136 (2016) ......................*passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)................................................6, 45, 54, 55

*Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*,
804 F.2d 338 (5th Cir. 1986)................................54

ix

Page

Cases—continued:

*Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734 (5th Cir. 1999)................................17

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
    898 F.3d 461 (5th Cir. 2018)................................................................55

*Norman v. Apache Corp.*, 19 F.3d 1017 (5th Cir. 1994) ................................52

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
    --- F.4th ---, 2024 WL 4219295 (5th Cir. Sept. 18, 2024)................................51

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013)............40

*Petition of Home Ins. Co.*, 908 F. Supp. 180 (S.D.N.Y. 1995) .........................53

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
    687 F.3d 671 (5th Cir. 2012)............................................................11, 28

*Plump Eng'g, Inc. v. Westshore Design Eng'rs, P.C.*,
    2018 WL 3730168 (N.D.N.Y. Aug. 6, 2018)..........................................33

*Proulx v. Brookdale Living Cmtys. Inc.*,
    88 F. Supp. 3d 27 (D.R.I. 2015) .......................................................33

*Rainier DSC 1, LLC v. Rainier Cap. Mgmt., LP*,
    828 F.3d 356 (5th Cir. 2016) (per curiam) .......................................16

*Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190 (4th Cir. 1991) ....................33

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ..........................6, 7, 27

*Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023),
    *cert. denied*, 144 S. Ct. 1346....................................................*passim*

*Saleh v. Bush*, 848 F.3d 880 (9th Cir. 2017) .........................................51

*SEC v. Jarkesy*, 144 S. Ct. 2117 (2024)...........................................41, 42

*Singh Mgmt. Co., LLC v. Singh Dev. Co., Inc.*,
    774 F. App'x 921 (6th Cir. 2019)...................................................33

Page

Cases—continued:

*Stokes v. Sw. Airlines*, 887 F.3d 199 (5th Cir. 2018)..........................49

*Sullivan-Mestecky v. Verizon Commc'ns, Inc.*,
    961 F.3d 91 (2d Cir. 2020) ..........................................49

*Todd v. S.S. Mut. Underwriting Ass'n (Bermuda) Ltd.*,
    601 F.3d 329 (5th Cir. 2010)..........................................53

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*,
    667 S.W.3d 694 (Tex. 2023) ..............................................40

*U-Haul Int'l, Inc. v. Hire a Helper, LLC*,
    2009 WL 10671527 (S.D. Cal. Apr. 13, 2009) ................................33

*United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
    843 F.3d 1033 (5th Cir. 2016)..........................................52

*WasteCare Corp. v. Harmony Enters., Inc.*,
    822 F. App'x 892 (11th Cir. 2020)..........................................40

## STATUTES

9 U.S.C.
    § 2..........................................................................5
    § 3..........................................................................5, 12
    § 4.......................................................................*passim*
    § 9..........................................................................33

29 U.S.C.
    § 1104........................................................................9
    § 1132........................................................................12, 41

Employee Retirement Income Security Act of 1974 (ERISA) ...............*passim*

Page

Statutes—continued:

Federal Arbitration Act (FAA) ........................................................2, 5
   § 2 ........................................................................................5
   § 3 ....................................................................................5, 12
   § 16 ......................................................................................52

## OTHER AUTHORITIES

AAA, Commercial Arbitration Rules and Mediation Procedures
   (Sept. 1, 2022) ...........................................................*passim*
   R-6 ......................................................................................32
   R-7 ...................................................................1, 11, 18, 28
   R-49 ....................................................................................31

Samuel L. Bray, *Equity, Law, and the Seventh Amendment*,
   100 Tex. L. Rev. 467 (2022) .........................................46, 47

1 D. Dobbs, *Law of Remedies* (2d ed. 1993)
   § 1.1 ....................................................................................42
   § 4.3(1) ................................................................................43

Domke on Commercial Arbitration (Dec. 2023)
   § 15:20 ................................................................................26
   § 35:1 ..................................................................................31

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1)(A) because it is an appeal of an order refusing a stay of an action under 9 U.S.C. § 3. Defendant-Appellant Aetna Life Insurance Company timely appealed by filing its notice of appeal on May 2, 2024, six days after the district court's April 26, 2024, order.

## STATEMENT OF THE ISSUES

1.  Whether the district court erred in holding that the parties did not clearly and unmistakably agree that arbitrators, not courts, would resolve the threshold question whether plaintiffs seek non-arbitrable equitable relief.

2.  Even if courts decide the question, whether the district court erroneously held that Aramark's request for compensatory money damages to remedy an alleged breach of fiduciary duties is an equitable, not legal, remedy.

3.  Whether the district court abused its discretion by constructively denying Aetna's alternative request for a discretionary stay pending the District of Connecticut's resolution of Aetna's petition to compel arbitration.

## INTRODUCTION

This case belongs in arbitration, not federal court. The parties unequivocally agreed to arbitrate "any controversy or claim" arising from their contract, as well as any "objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." ROA.517; AAA, Commercial Arbitration Rules and Mediation Procedures R-7(a) (Sept. 1, 2022).

That broad language requires the parties to arbitrate *every* antecedent question about whether a claim or type of relief can be arbitrated, plus the merits of *every* claim implicating the parties' contract. The only exception is that arbitrators cannot decide a party's entitlement to any "injunctive relief or any other form of equitable relief," so parties must request that sort of relief in court. ROA.517. But the parties reserved to arbitrators, not courts, every other question—including whether particular requests for relief qualify as equitable (and must be resolved by courts) or are instead legal, monetary remedies subject to arbitration. And that arbitration agreement is unquestionably valid.

Yet, notwithstanding that agreement, Appellee Aramark Services, Inc. turned around and sued Appellant Aetna Life Insurance Company in the

1

Eastern District of Texas. Undisputedly, Aramark's claims arise from the parties' contract; Aramark asserts breaches of contractual duties that rise to the level of alleged violations of the Employee Retirement Income Security Act of 1974 (ERISA). As relief, Aramark avowedly sought "compensatory money damages" arising from Aetna's putative breaches of fiduciary duties. ROA.115 (citation omitted). Under the plain terms of the arbitration agreement, arbitrators are supposed to resolve those claims. And arbitrators are supposed to decide whether—if Aramark is entitled to relief at all—the requested damages are within arbitrators' power to grant.

But instead of honoring the parties' arbitration agreement—as the Federal Arbitration Act (FAA) requires—the district court held that courts, not arbitrators, must resolve Aramark's contention that it really seeks non-arbitrable equitable relief. The district court believed that this Court's previous decision in *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019), dictated that result. That holding ignores critical distinctions from *Archer* while defying bedrock FAA principles. The Supreme Court has admonished courts to carefully parse the language of specific arbitration agreements and respect parties' valid agreements to delegate to arbitrators any threshold disputes over what is arbitrable.

2

Yet the district court overlooked specific provisions of this agreement that make clear that the parties empowered arbitrators to resolve their substantive claims on the merits and decide what type of relief they seek. The arbitration agreement simply deprives arbitrators of the power to proceed to *award* equitable relief. The district court's reading risks nullifying countless other agreements to have arbitrators resolve threshold questions about the scope of arbitration—a vitally important issue of federal arbitration law that has previously attracted Supreme Court review.

The district court further erred by proceeding to classify Aramark's request for compensatory money damages as equitable relief that courts, not arbitrators, can resolve under the arbitration agreement. The parties' underlying contract is for Aetna to provide third-party administrator services for self-funded health benefits plans that Aramark maintains—an area comprehensively governed by ERISA. Thus, all agree that whether a party seeks legal monetary relief or equitable relief for claims relating to this contract turns upon the distinctions that courts have drawn between legal and equitable relief in the ERISA context.

As the Supreme Court confirmed in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), the

relevant test is historical:  only relief that courts of equity *typically* could award qualifies as equitable.  Compensatory money damages—the relief Aramark seeks here—do not qualify; such damages are classic legal relief, and could only be awarded by courts of equity in atypical situations.  Relying on *Montanile*, the Fourth Circuit thus rejected an identical argument that money damages for an alleged breach of fiduciary duty should instead count as equitable relief.  If this Court reaches this issue, it should avoid a stark circuit split, hew to Supreme Court precedent, and hold that Aramark seeks legal relief that is subject to arbitration.

Finally, the district court at a minimum erred in declining to enter a discretionary stay of proceedings in the Eastern District of Texas.  Shortly after Aramark breached the arbitration agreement by trying to litigate claims it had previously agreed to arbitrate, Aetna filed a petition to compel arbitration in the District of Connecticut—the venue where the parties had agreed arbitration would occur.  *See* 9 U.S.C. § 4; ROA.517.  To avoid unnecessary litigation and piecemeal proceedings, the Eastern District of Texas should have stayed litigation and allowed the petition to compel proceedings to unfold.  Yet the district court rejected that request without explanation—a clear abuse of discretion given the equities involved.

4

## STATEMENT OF THE CASE

### A.    The Federal Arbitration Act (FAA)

1.  Arbitration is a well-established alternative to litigating in court.  By agreeing to arbitrate, a party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *accord AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011).

The FAA protects parties' agreements to arbitrate, and indeed "manifest[s] a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (citation omitted).  FAA § 2 dictates that commercial arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  And, to ensure that federal courts honor parties' arbitration agreements, FAA § 3 requires federal district courts to stay litigation proceedings that involve issues "referable to arbitration." *Id.* § 3.  FAA § 4, in turn, requires federal courts to compel arbitration if one party has "fail[ed], neglect[ed], or refus[ed]" to comply with

an arbitration agreement.  *Id.* § 4; *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010).

2.  When evaluating arbitration agreements under the FAA, courts treat "arbitration [as] a matter of contract."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019).  Courts thus "enforce" arbitration agreements "according to their terms."  *Concepcion*, 563 U.S. at 339 (citation omitted).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Importantly, under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Henry Schein*, 586 U.S. at 67-68 (citations omitted).  The latter type of agreement, called a "delegation" clause, delegates "gateway" issues of arbitrability to the arbitrator.  *Rent-A-Center*, 561 U.S. at 68-69.  Such "gateway" issues can include disputes over the *scope* of the agreement, *e.g.*, whether the dispute at issue constitutes the type of dispute the parties agreed to arbitrate.  *Henry Schein*, 586 U.S. at 68.

6

Courts treat delegation clauses as "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 70). So long as contracting parties "clear[ly] and unmistakabl[y]" agree to "arbitrate arbitrability," "the courts must respect the parties' decision as embodied in the contract." *Id.* at 71-72 (citation omitted).

### B.    Aramark and Aetna's Agreement

1. This case arises from an agreement between Aramark and Aetna regarding Aetna's ongoing administration of Aramark's self-funded health benefit plans. Aramark is one of the nation's largest providers of "food services, facilities, and uniform services" to schools, prisons, hospitals, and other businesses, and employs some 135,000 employees "across the country." ROA.17, 206.

Like many large employers, "Aramark self-funds its employees' medical expenses." ROA.21-22. Specifically, Aramark sponsors and funds the Aramark Services, Inc. Group Health Plan and the Aramark Uniform Services Group Health and Welfare Plan (the Plans), which are organized and operated under ERISA, the federal statute governing such plans. ROA.18-19, 21-22.

7

Through the Plans, Aramark offers "tens of thousands of employees" and their families coverage for medical treatment and dental care. ROA.17-18, 20. Doctors and hospitals that treat plan participants submit claims to Aramark, which since 2018 has paid some $200 million in claims. ROA.18, 29.

Deciding whether the Plans in fact cover particular claims is complex, and requires familiarity with "standard service and treatment codes," the "standard transaction data sets" associated with medical claims, and byzantine federal regulations governing health plans and claims processing. ROA.25-29. Lacking this specialized knowledge, Aramark sought to hire a third-party administrator for the Plans. ROA.21. Third-party administrators support self-insured plans by providing access to a network of medical providers and adjudicating claims for payment that those providers submit. *See* ROA.18, 21.

Aramark initiated a "competitive" bidding process and, after conferring with various "best-in-class benefits consultants," hired Aetna to provide third-party administrator services for the Plans based on Aetna's "expertise" in this area. ROA.21.

2. Effective January 1, 2018, Aramark and Aetna entered into a Master Services Agreement governing this relationship. ROA.511-46. Under that agreement, Aramark remains the designated ███████████ and

███████████████████████████████████████████ ROA.512.

Meanwhile, Aetna is responsible for myriad administrative services involving

the Plans, such as handling ████████████████████████████████

████████████████████████████████████████████

████████████████████████████ ROA.521-22.

Further, the agreement charges Aetna with "provid[ing] access to its

network of providers and adjudicat[ing] claims for payment submitted by

those providers" in exchange for a monthly fee.  ROA.18; *see* ROA.521, 523,

540-43. ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████, Aetna owes fiduciary duties under ERISA to

"discharge [its] duties with respect to a plan solely in the interests of the

participants and beneficiaries" and with "care, skill, prudence, and diligence."

29 U.S.C. § 1104(a)(1). ████████████████████████████████

████████████████████████████. ROA.525.

3.   Like countless other commercial contracts, the Master Services

Agreement includes an arbitration agreement, which states in relevant part:

> Any controversy or claim arising out of or relating to this
> Agreement or the breach, termination, or validity thereof, except
> for temporary, preliminary, or permanent injunctive relief or any
> other form of equitable relief, shall be settled by binding

> arbitration in Hartford, CT, administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules[.] … The arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages.

ROA.517.   "[A]pplicable federal law, including ERISA," governs the agreement, though "Connecticut law" applies to the extent "such federal law does not govern."  ROA.519.

The parties' arbitration agreement thus broadly requires arbitration of "[a]ny controversy or claim arising out of or relating to the" Master Services Agreement or "the breach, termination, or validity" of the agreement. ROA.517.   The agreement excludes only certain types of "relief" from mandatory arbitration: "temporary, preliminary, or permanent injunctive relief or any other form of equitable relief" is not subject to arbitration. ROA.517.   Reinforcing that exclusion, the agreement only lets arbitrators award "monetary relief," specifically "compensatory damages."  ROA.517.

The arbitration agreement also includes a delegation clause delegating threshold challenges to the scope and validity of the parties' arbitration agreement to arbitrators.  The agreement expressly incorporates "the AAA's Commercial Arbitration Rules," which state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with

10

respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA R-7(a). By incorporating these rules by reference, the parties thus agreed that the arbitrator would resolve any antecedent threshold questions about what the parties agreed to arbitrate. *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019), *cert granted*, 141 S. Ct. 107 (2020), *and dismissed as improvidently granted*, 141 S. Ct. 656 (2021).

### C.    Ensuing Litigation

1. **Aramark's E.D. Tex. Suit.** Despite agreeing to arbitrate all claims relating to the parties' Master Services Agreement in Connecticut, Aramark—a Delaware corporation headquartered in Philadelphia, *see* ROA.18—sued Aetna in the Eastern District of Texas on September 27, 2023, over claims that plainly involve that agreement. ROA.4.

Aramark's complaint accuses Aetna of misconduct in performing Aetna's duties under the agreement. Specifically, the complaint alleges that Aetna approved improper or fraudulent claims or payments for Aetna subcontractors, ROA.29-36, provided inadequate subrogation services, ROA.35, made certain post-adjudication adjustments to claims to Aramark's

detriment, ROA.35-39, and commingled Plan funds with Aetna's funds, ROA.39-40. Aramark alleges that this asserted conduct constitutes breaches of fiduciary duty and prohibited transactions that violate ERISA. ROA.43-47 (relying on ERISA §§ 502(a)(2) & (a)(3), 29 U.S.C. §§ 1132(a)(2) & (a)(3)).

Aramark's complaint demanded a panoply of remedies. Aramark requested various forms of monetary relief, such as (1) "any and all losses resulting from Aetna's breach of its fiduciary duty"; and (2) "any and all benefit or profits" that Aetna "made as a result of its breach." Aramark also requested any other relief the Court "deem[ed] appropriate," plus attorneys' fees. ROA.43-48. Finally, Aramark demanded "a preliminary injunction" to compel Aetna to produce "all Plan claims data." ROA.48.

2. **Aetna's Motion to Stay the Texas Action.** As noted, FAA § 3 requires district courts to stay litigation where "the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3. Meanwhile, FAA § 4 authorizes parties to move to compel arbitration in the district where arbitration would occur. *Id.* § 4. Thus, on February 28, 2024, Aetna moved to compel arbitration in the District of Connecticut (since the agreement prescribed arbitration in Hartford, Connecticut), and on March 1, moved to stay Aramark's lawsuit in the Eastern District of Texas. ROA.370-401.

12

On April 26, 2024, the Eastern District of Texas denied Aetna's motion to stay the litigation for arbitration.  ROA.299-307.  *First*, the court held that courts, not arbitrators, must decide whether Aramark sought "equitable relief" that is not subject to mandatory arbitration.  The court reasoned that the "most natural reading of the Arbitration Provision is that the parties agreed to delegate arbitrability to the arbitrator … for all disputes except those seeking any form of equitable relief, which are carved out in the same sentence."  ROA.302.  The court based that reasoning entirely on this Court's decision in *Archer*, which involved an arbitration agreement with different language requiring arbitration of "[a]ny dispute … (except for actions seeking injunctive relief …)."  ROA.302; *see* 935 F.3d at 277.

*Second*, the district court classified Aramark's claims as seeking "equitable relief" and thus concluded that the claims were not "subject to mandatory arbitration."   ROA.302-03.   The court acknowledged that Aramark's ERISA claims sought "money damages resulting from Aetna's alleged breach of its fiduciary duty."  ROA.303.  But the court still considered those damages equitable under *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013), which held that an "award of make-whole relief in the form of surcharge" qualifies as "equitable relief" under ERISA.  *Id.* at 541 (citations

omitted); *see* ROA.305-06.  And the court rejected the argument that later Supreme Court ERISA decisions superseded *Gearlds*.  ROA.304, 306.

*Third*, the court denied Aetna's alternative request for a discretionary stay pending the District of Connecticut's decision on Aetna's petition to compel arbitration.  ROA.307.  Though Aetna discussed this request in its briefing, the court simply denied Aetna's motion in full without separately explaining why it denied a discretionary stay.  ROA.307, 388-89.

Shortly thereafter, Aramark's attorneys filed two more actions against Aetna in the Eastern District of Texas, asserting virtually identical allegations on behalf of other employers.  Plaintiffs' counsel agreed to stay both cases pending resolution of this appeal.  *See W.W. Grainger Inc. v. Aetna Life Ins. Co.*, No. 2:24-cv-352 (E.D. Tex. Aug. 12, 2024), ECF 16; *Huntsman Int'l LLC v. Aetna Life Ins. Co.*, No. 2:24-cv-404 (E.D. Tex. Aug. 19, 2024), ECF 9.

On May 2, 2024, Aetna appealed the district court's denial of a stay pending arbitration, ROA.309, and, on May 7, asked the district court to stay its "proceedings [pending Aetna's] interlocutory appeal" based on the Supreme Court's recent decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 744 (2023).  ROA.324-25.  *Coinbase* held that a district court "must stay" litigation while a party exercises its statutory right to an interlocutory appeal regarding

whether threshold issues are subject to arbitration. 599 U.S. at 741. Yet Aramark opposed any stay "[u]nless and until Aetna discontinue[d] its pursuit" of the petition to compel arbitration in Connecticut. ROA.331. Notwithstanding *Coinbase*'s clear "require[ment]" that the district court "stay its proceedings" pending this appeal, 599 U.S. at 747, the court allowed discovery to continue and did not grant Aetna's motion until Aramark withdrew its opposition nearly four months later. *See* ROA.324, 721.

3. **Aetna's Petition in Connecticut.** Because Aramark failed to honor its agreement to arbitrate in Connecticut, on February 28, 2024, Aetna filed an FAA § 4 petition in the District of Connecticut to compel arbitration. ROA.393-401. Aetna filed its petition in Connecticut because, under Second Circuit precedent, that was the only way to compel arbitration in Hartford— the agreed-upon forum. *See Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba*, 243 F.2d 342, 346 (2d Cir. 1957).

On July 30, 2024, Judge Underhill (D. Conn.) heard argument on Aetna's petition to compel arbitration and Aramark's competing motion to stay, dismiss, or transfer the petition to the Eastern District of Texas. ROA.739-77. Judge Underhill conveyed that "[i]f the Texas case wasn't on the table," "[t]here wouldn't be any reason not to grant the petition to compel arbitration"

and the petition "would be granted in the ordinary course." ROA.769-70. But Judge Underhill hesitated to issue a "conflicting decision" that could "result in … arbitration going forward in one district and … litigation on the same topic going forward in [another] district." ROA.772.

Judge Underhill decided to "wait for a ruling from the Fifth Circuit," which might resolve these "practical issues." ROA.746. But, had the Eastern District of Texas declined to stay the litigation there pending an interlocutory appeal to this Court, Judge Underhill would have granted the petition to compel arbitration so that Aetna did not "lose the race to the courthouse." ROA.774-75. Because the Eastern District of Texas eventually granted that stay, proceedings in Connecticut are now stayed pending this Court's resolution of this appeal. ROA.727.

## STANDARD OF REVIEW

This Court "review[s] a district court's denial of a motion to stay litigation pending arbitration *de novo*." *Rainier DSC 1, LLC v. Rainier Cap. Mgmt., LP*, 828 F.3d 356, 360 (5th Cir. 2016) (per curiam). Likewise, whether a "dispute falls within the scope of the [arbitration] agreement" is a question "of contract interpretation" that is "subject to this [C]ourt's plenary review." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522,

530-31 (5th Cir. 2019).  Finally, this Court reviews the district court's decision not to stay proceedings in the Eastern District of Texas pending proceedings in the District of Connecticut "for abuse of discretion."  *See Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 (5th Cir. 1999).

## SUMMARY OF ARGUMENT

I.    Under the parties' agreement, arbitrators must resolve whether Aramark seeks non-arbitrable equitable relief.  By incorporating the AAA Rules, the parties clearly and unmistakably delegated to arbitrators questions about how to classify the type of relief sought and whether that relief is arbitrable.  The district court improperly treated this Court's previous decision in *Archer* as requiring courts to decide those questions.  But *Archer* is distinguishable, and in all events rests on questionable footing.

A.    Delegation clauses broadly empower arbitrators to decide gateway issues, including whether an arbitration agreement covers a particular subject and whether any carve-outs from arbitration apply.  *Henry Schein*, 586 U.S. at 67-68.  The agreement here provides that "[a]ny controversy or claim arising out of" the Master Services Agreement must be arbitrated under the AAA Rules.  Thus, the parties agreed to binding arbitration on the merits of those claims and also having arbitrators decide

17

whether particular issues are within the scope of the agreement and subject to arbitration. ROA.517. The only exclusion is "temporary, preliminary, or permanent injunctive relief or any other form of equitable relief." ROA.517. Taken together, those provisions preclude arbitrators from *awarding* equitable relief under the agreement's terms. But the agreement does not preclude arbitrators from deciding the antecedent question of *what type of relief* a party requests. Instead, the delegation clause tasks arbitrators with categorically resolving "*any* objections with respect to the … scope" of the parties' agreement, including whether a party seeks equitable relief. AAA R-7(a) (emphasis added).

Other aspects of this particular arbitration agreement confirm that reading.

*First*, the arbitration agreement's separate clause requiring that "[t]he arbitrator may award only monetary relief" is plainly subject to the delegation clause. ROA.517. The parties thus tasked arbitrators with determining whether relief is "monetary," which by definition includes deciding whether relief is instead equitable; the classifications are two sides of the same coin.

*Second*, the parties' incorporation of the AAA Rules confirms the limits of the equitable-relief exclusion. The AAA Rules give arbitrators broad

18

authority to resolve all disputes, including disputes over arbitrability, and to grant all sorts of relief, including equitable relief. The parties' exclusion of arbitration of "any … form of equitable relief" thus overrides *only* the remedial provision of the AAA Rules, not the separate delegation provision authorizing arbitrators to decide all threshold issues, including how to classify particular relief.

*Finally*, Aetna's interpretation makes practical sense. Because a party's requested relief can shift over the course of arbitration proceedings—and may not be clear until remedies are ripe to consider—arbitrators must be able to classify the type of relief that a party seeks. Otherwise, parties would have to go to court, sometimes late in arbitration proceedings, to obtain a ruling on that basic question—a result at odds with arbitration's overall purposes of efficiency and simplicity. By contrast, Aramark's position invites parties to game the system by characterizing relief as equitable solely to evade arbitration.

B.     The district court erroneously interpreted *Archer* to require that courts, not arbitrators, decide threshold issues, including whether Aramark sought "equitable" relief. That cursory holding ignores key differences from *Archer*. The *Archer* agreement provided that "[a]ny dispute arising under or

19

related to this Agreement (except for actions seeking injunctive relief and disputes related to [certain subject matter]), shall be resolved by binding arbitration in accordance with the arbitration rules of the [AAA]." 935 F.3d at 277. This Court considered it unclear whether the parties delegated to arbitrators *any* authority to arbitrate anything in actions seeking injunctive relief. *See id.* at 281-82.

Contrary to the district court's assumption, however, the parties' agreement here is no mirror image of *Archer*'s, and does not exclude from arbitration all "*disputes* … seeking any form of equitable relief." ROA.302 (emphasis added). The parties' agreement instead unambiguously requires arbitration of all "controvers[ies] or claim[s]," and excludes only particular forms of "relief." ROA.517. So here, unlike in *Archer*, arbitrators must resolve *all* substantive claims, no matter the type of relief sought. If a party is entitled to some remedy, arbitrators then cannot award equitable relief, but must confine themselves to money damages.

That distinction is critically important to understanding the parties' delegation clause here. *Archer* considered it unclear whether arbitrators could resolve anything about actions involving injunctive relief because the agreement there could plausibly be read to carve out whole categories of

actions and disputes from any arbitration whatsoever.  But the agreement here yields no similar reading.  Other provisions absent from the *Archer* agreement confirm that the parties intended to deprive arbitrators of the power to award equitable relief, but to allow arbitrators to decide the antecedent question of whether particular relief qualifies as such.  The district court simply ignored those differences, and its expansion of *Archer* risks nullifying virtually any delegation clause.

II.    Even if courts could resolve how to classify the relief Aramark seeks, the relief here is legal, not equitable, and thus belongs in arbitration. As discussed, the arbitration agreement empowers arbitrators to resolve all controversies and claims involving the Master Services Agreement, save for "equitable relief."  That exclusion is not implicated here, because Aramark seeks compensatory money damages from Aetna's general funds over an alleged breach of fiduciary duties.  As the Fourth Circuit recently recognized, the Supreme Court's decision in *Montanile* confirms that such damages are *legal* relief, not equitable relief.

A.    Under ERISA and in other contexts, the test for whether relief qualifies as legal or equitable is whether the remedy at issue was typically available in premerger equity courts.  Money damages are quintessential legal

21

remedies that were typically unavailable in equity. A personal claim against the defendant's general assets was considered a legal remedy, not an equitable one. Generally, courts of equity could award monetary relief only via remedies like restitution or disgorgement, where plaintiffs sought *specific* funds that they rightfully owned but the defendant wrongfully possessed.

Here, longstanding Supreme Court ERISA precedents show that Aramark seeks quintessential legal relief. Aramark's request for "any and all losses resulting from" Aetna's alleged breach of fiduciary duties is a demand for compensatory damages and thus a legal remedy. ROA.48. Aramark's further request for "any and all benefit or profits" that Aetna allegedly obtained from this misconduct cannot qualify as equitable because Aramark has not identified any specific funds in Aetna's possession distinct from Aetna's general assets. ROA.45.

Because Aramark seeks legal relief, an arbitrator must resolve whether Aramark is entitled to that remedy. If any doubts remained, the presumption favoring arbitrability would resolve them in favor of arbitration.

B.    The district court considered itself bound by this Court's decision in *Gearlds*, which broke with prior circuit precedent and held that make-whole damages for breaches of fiduciary duty qualify as equitable relief under

22

ERISA. *Gearlds* believed that outcome was dictated by the Supreme Court's decision in *Amara*, which suggested that the unusual legal remedies available within equity's exclusive jurisdiction could qualify as "equitable." But the Supreme Court's subsequent decision in *Montanile* confirms that *Gearlds* erred in looking beyond the relief that was *typically* available at equity. As *Montanile* explained, the unusual legal remedies available in cases where courts of equity had exclusive jurisdiction do not qualify as relief *typically* available in equity. The Fourth Circuit has disavowed its *Gearlds*-equivalent precedent, and this Court should do the same.

The district court also considered Aetna's position "inconsistent" with Aetna's characterizations of equitable relief in other cases. But this case comes nowhere close to satisfying the standard for judicial estoppel. None of those cases grappled with *Montanile*, and Aetna cannot be estopped from relying on intervening Supreme Court precedent.

III. At a minimum, the district court abused its discretion by constructively denying Aetna's request for a discretionary stay. The District of Connecticut—the place where the parties agreed to arbitrate—is the proper court under FAA § 4 to decide the scope of the parties' agreement. Permitting Aramark to instead proceed in the Eastern District of Texas upsets the

parties' agreement to be bound by Connecticut and Second Circuit law and spawns inefficiency.  This Court should thus vacate the district court's order denying Aetna's request for a discretionary stay.

## ARGUMENT

### I.    Arbitrators, Not Courts, Must Decide Whether Aramark Seeks Non-Arbitrable Equitable Relief

The parties here undisputedly agreed to a valid arbitration agreement. ROA.109, 301-02.  That agreement mandates arbitration under AAA Rules of all controversies or claims involving the Master Services Agreement, except a party's entitlement to equitable relief.  Further, by agreeing to arbitrate under AAA Rules, the parties undisputedly agreed to "give arbitrators the exclusive authority to decide questions of 'arbitrability.'"  *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 849 (6th Cir. 2020).

Taken together, various provisions of this particular agreement confirm that arbitrators must decide the merits of all claims involving the contract, but are limited to awarding monetary, not equitable, remedies.  Meanwhile, the delegation clause clearly reserves to arbitrators the antecedent question of whether particular relief is monetary (and thus arbitrable) or equitable (and thus non-arbitrable).  The district court's contrary holding that courts, not arbitrators, must resolve any *claims* that allegedly seek equitable relief

24

misreads this arbitration agreement in multiple ways and misapplies this Court's decision in *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019).  This Court should reverse on this basis alone.

## A. The Parties' Delegation Clause Clearly and Unmistakably Tasks Arbitrators with Classifying the Type of Relief Sought

1.  Start with arbitration basics:  where, as here, the parties delegate to the arbitrator threshold questions about whether particular types of issues can be arbitrated at all, courts honor that agreement.  When the parties "enter into an arbitration agreement that delegates to the arbitrator the power to decide whether a particular claim is arbitrable," "the court's analysis … is limited."  *Archer*, 935 F.3d at 278-79 (citation omitted).  Under the FAA, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator … a court possesses no power to decide" arbitrability for itself.  *Henry Schein*, 586 U.S. at 68.  When (as here) the delegation clause is unquestionably valid, "the only question" is whether the delegation clause clearly and unmistakably "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated."  *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 202 (5th Cir. 2016); *see Archer*, 935 F.3d at 279.

Whether particular claims or types of relief are arbitrable—and how to classify them—are classic questions that arbitrators resolve under delegation

clauses. Delegation clauses ordinarily task arbitrators with resolving challenges to arbitrators' own power to hear the dispute. *Blanton*, 962 F.3d at 848; *Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015). That typically includes the power to decide the "scope" of the arbitration agreement, *i.e.*, "whether [the arbitration] agreement covers a particular controversy." *Henry Schein*, 586 U.S. at 67-68 (citation omitted).

Under delegation clauses, arbitrators commonly resolve all sorts of disputes about whether various carve-outs from arbitration apply. Of particular relevance here, if the arbitration agreement excludes claims that seek injunctive relief but contains a delegation clause, the arbitrator decides whether the prayed-for relief is an injunction and therefore beyond the scope of arbitration. *See Given v. M&T Bank Corp.*, 674 F.3d 1252, 1255-57 (11th Cir. 2012). "[T]he power of the arbitrator to grant the appropriate remedy" is a textbook "question[] of arbitrability." Domke on Commercial Arbitration § 15:20 (Dec. 2023). Or, if an arbitration agreement covers only claims relating to "software," not "hardware," and there is a delegation clause, the arbitrator decides how to classify the at-issue claim and whether it is arbitrable. *LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 466 (9th Cir. 2021). Similarly, if the agreement covers claims "arising" under an employment contract and there is

26

a delegation clause, the arbitrator decides whether the at-issue claim so arises and whether it is arbitrable. *See Bosse v. N.Y. Life Ins. Co.*, 992 F.3d 20, 24, 28 (1st Cir. 2021).

2.  The arbitration agreement and delegation clause here fit that mold. Whether such agreements empower arbitrators to resolve certain issues turns upon "the parties' *manifestation of intent*" in the specific agreement. *Rent-A-Center*, 561 U.S. at 69 n.1; *Kubala*, 830 F.3d at 203-04. Here, specific contractual language confirms that the parties clearly and unmistakably agreed that arbitrators, not courts, would decide *all* disputes about the scope of their arbitration agreement—including whether a party seeks legal relief subject to arbitration, or non-arbitrable equitable relief.

Again, the agreement provides:

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules[.] … The arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages.

ROA.517.

Breaking the clauses down, the parties agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement" under "the AAA's Commercial Arbitration Rules." ROA.517. "Binding arbitration" under those Rules does not just mean binding arbitration of the merits. ROA.517. Incorporating the AAA Rules constitutes "clear and unmistakable" evidence that the parties also tasked arbitrators with resolving threshold questions about whether particular issues are subject to arbitration. *See Archer*, 935 F.3d at 279; *Petrofac*, 687 F.3d at 675. Specifically, the AAA Rules empower arbitrators to decide their own "jurisdiction, including any objections with respect to the ... *scope* ... of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA R-7(a) (emphasis added). Under the agreement, the only matter that cannot be "settled by binding arbitration" is "temporary, preliminary, or permanent injunctive relief or any other form of equitable relief." ROA.517.

In basic terms, this agreement thus provides: All controversies or claims, except a party's entitlement to equitable relief, must be resolved via arbitration, including arbitration of whether an issue is arbitrable at all. Under that reading, the arbitrators cannot arbitrate whether a party is

entitled to equitable relief. But the arbitrators can and must decide whether the parties are *requesting* non-arbitrable equitable relief.

That reading is the only way to give full meaning to the delegation clause, under which the parties categorically agreed that arbitrators, not courts, would resolve "*any* objections with respect to the … scope … of the arbitration agreement or to the arbitrability of any claim." Again, a dispute over whether arbitrators can resolve a party's entitlement to particular relief is a classic example of a threshold arbitrability dispute. *Henry Schein*, 586 U.S. at 68; *Given*, 674 F.3d at 1255-57; *supra* p. 26. And the sweeping delegation clause language granting arbitrators the power to resolve "any objections" to what issues the arbitrators can resolve would make no sense if the parties instead meant, any objections *except* whether certain relief qualifies as equitable. The only reading that makes sense of the provisions as a whole is that the parties deprived arbitrators of the power to award equitable relief, but charged arbitrators, not courts, with deciding *whether* a particular remedy is equitable in nature.

That reading also tracks how other courts have interpreted similar language. A district court within this Circuit has held that the same arbitration agreement at issue delegates to the arbitrator questions about how

to classify particular relief. *See E. El Paso Physicians' Med. Ctr., LLC v. Aetna Health Inc.*, 2017 WL 876313, at *4-5 (W.D. Tex. Mar. 2, 2017) (reserving for arbitrator question whether plaintiff's requested remedies "are truly damages claims masquerading as claims for injunctive relief"). And the Kentucky Supreme Court interpreted a similar agreement to mean that the plaintiff could seek "equitable relief in a Kentucky court," not in arbitration. *Ally Align Health, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 757 (Ky. 2019). But "whether [the plaintiff] asserts a true claim for equitable relief or such assertion is a facade to avoid arbitration is a determination to be made by the arbitrator per the contract's adoption of the AAA's Rules." *Id.*

3. Other parts of this particular arbitration agreement reinforce that arbitrators, not courts, decide whether a particular remedy is "equitable." The last sentence of the arbitration agreement specifies that "[t]he arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages." ROA.517; *accord* ████████████ ████████████████████████████. That limitation on the arbitrators' power is plainly subject to the delegation clause, such that arbitrators must decide whether something qualifies as arbitrable "monetary relief." The sentence structure of this agreement precludes any other reading.

But deciding whether relief is "monetary" is just the flip side of deciding whether relief is "equitable." By definition, non-monetary relief is equitable relief. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255-56 (1993). It would be nonsensical to read the agreement to mean that arbitrators decide whether relief is "monetary," yet somehow only courts can decide whether relief is "equitable." The parties' clear understanding that arbitrators would decide whether relief is monetary (or instead equitable) should be dispositive evidence that the parties likewise understood that arbitrators would decide whether relief is equitable (or instead monetary).

Further, Aetna's reading of the equitable-relief exclusion makes sense of the parties' incorporation of the AAA Rules, which otherwise gives arbitrators vast default authority. The arbitration agreement largely mirrors the AAA Rules: it broadly subjects all disputes over the Master Services Agreement to arbitration and empowers arbitrators to arbitrate all threshold disputes about arbitrability. But the AAA Rules also by default let arbitrators "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." AAA R-49(a)-(b); *see* Domke § 35:1 ("Limited only by the broad concepts of equity and justice, an arbitrator has a plethora of remedies, both legal and equitable, to choose from in

31

structuring a remedy."). The parties' exclusion of "any … form of equitable relief" surgically overrides that part of the AAA Rules alone and limits arbitrators to legal remedies. But the parties did not otherwise intend to override the AAA Rules, including with respect to the arbitrators' authority to decide in the first instance whether relief is "equitable" or not.

Finally, reserving to the arbitrators the question whether relief is equitable (and beyond the arbitrators' powers to award) or legal (and within their powers) makes sense given the timing of that inquiry. Sometimes, as here, the parties may dispute the type of relief sought at the outset. But in many cases, the arbitrators and parties may not realize that non-arbitrable relief is at issue until much later in the proceedings. The remedies sought in arbitration can shift over the course of arbitral proceedings—sometimes, "the final amount of the claim or counterclaim" might not even be disclosed until "a post-hearing brief or submission." *See* AAA R-6. At that later point, it would be passing strange for the parties to have to go to court to get an interim ruling on the type of relief at issue.

Instead, the agreement here sensibly allows the arbitrators to decide whether they are empowered to grant the requested relief, issue an award, and the prevailing party can then file in court a motion to confirm the award

plus a request that the court award equitable relief that was beyond the scope of the arbitration. *See* 9 U.S.C. § 9.[1]  Parties could also seek equitable relief that is not included in the arbitral award in motions separate from their motion to confirm the award. *E.g.*, *Dr.'s Assocs., Inc. v. Stuart*, 11 F. Supp. 2d 221 (D. Conn. 1998) (granting motion to confirm award for damages and separate motion for permanent injunction); *cf. Singh Mgmt. Co., LLC v. Singh Dev. Co., Inc.*, 774 F. App'x 921, 929 (6th Cir. 2019) (Nalbandian, J., concurring) ("arbitration award … dictate[s] what the scope of relief might look like").[2]

---

[1] *Accord, e.g.*, *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 191, 194-95 (4th Cir. 1991) (affirming order granting petition for confirmation including monetary damages that the arbitrator concluded he lacked authority to award); *see also Info. Sys. Audit & Control Ass'n, Inc. v. Telecomm. Sys., Inc.*, 2017 WL 2720433, at *4 (N.D. Ill. June 23, 2017) ("courts have consistently construed equitable-relief exceptions" as authorizing courts "to enforce arbitral awards once arbitration is complete"); *GateGuard, Inc. v. MVI Sys. LLC*, 2021 WL 4443256, at *7 (S.D.N.Y. Sept. 28, 2021) (similar).

[2] *E.g.*, *Plump Eng'g, Inc. v. Westshore Design Eng'rs, P.C.*, 2018 WL 3730168, at *2, *6 (N.D.N.Y. Aug. 6, 2018) (interpreting agreement that did "not cover … claims brought by either party for injunctive relief" to require that plaintiff's "substantive claims … be arbitrated," just not "the remedy of injunctive relief"); *Davis v. SEVA Beauty, LLC*, 2017 U.S. Dist. LEXIS 148434, at *8-9 (W.D. Wash. Sept. 13, 2017) (similar); *Proulx v. Brookdale Living Cmtys. Inc.*, 88 F. Supp. 3d 27, 33-34 (D.R.I. 2015) (interpreting carve-out for "injunctive or other equitable relief" to mean that "the question of liability and legal damages, if any, are questions that must be resolved by the arbitrator" and that "[a]fter the arbitration is concluded … Plaintiff may make an appropriate motion before this Court to resolve Plaintiff's claims for equitable relief"); *U-Haul Int'l, Inc. v. Hire a Helper, LLC*, 2009 WL

Aramark's contrary reading of the agreement would bizarrely hamstring arbitrators, even in the late stages of arbitration, from classifying what type of relief a party seeks—even though arbitrators are clearly tasked with awarding certain relief for any legal violations they find.

## B.    *Archer* Does Not Dictate a Contrary Result

1.  The district court treated this Court's *Archer* decision as compelling the conclusion that the parties here "did not clearly and unmistakably delegate all threshold issues to the arbitrator." ROA.302. The sum total of the district court's operative reasoning was as follows: "The plain language and most natural reading of the Arbitration Provision is that the parties agreed to delegate arbitrability to the arbitrator in accordance with the AAA rules for all disputes except those seeking any form of equitable relief, which are carved out in the same sentence." ROA.302.

But *Archer* involved a differently worded arbitration agreement that this Court interpreted as incorporating the AAA Rules as to some disputes only:

---

10671527, at *2-3 (S.D. Cal. Apr. 13, 2009) (interpreting arbitration clause prohibiting arbitrator from "award[ing] injunctive relief" as "only except[ing] out a form of relief an arbitrator may award and … not stat[ing] that any claim that seeks injunctive relief as a form of remedy is excluded from arbitration").

> Any dispute arising under or related to this Agreement (except for
> actions seeking injunctive relief and disputes related to
> trademarks, trade secrets, or other intellectual property of [a
> defendant's predecessor-in-interest]), shall be resolved by binding
> arbitration in accordance with the arbitration rules of the
> American Arbitration Association [(AAA)].

*Archer*, 935 F.3d at 277. This Court held, "[t]he most natural reading of the

arbitration clause" was that the agreement "incorporates the AAA rules—and

therefore delegates arbitrability—for all disputes *except* those under the

carve-out," including disputes over whether a particular action sought

injunctive relief. *Id.* at 281-82. This Court therefore decided for itself whether

the action sought injunctive relief (answer: yes) and deemed the suit non-

arbitrable. *Id.* at 283-84.

Archer thus rested on the proposition that, when an arbitration

agreement broadly excepts from arbitration entire "*actions* seeking injunctive

relief," as well as entire "*disputes* related to" certain subject matter, that

renders the delegation clause unclear. *Id.* at 277, 283-84 (emphases added).

Those broad exceptions mean that only actions *not* seeking injunctive relief or

disputes *not* involving certain subject matter were subject to arbitration,

including arbitration of threshold issues. *See id.* at 277. And whether a

particular claim was an "action[] seeking injunctive relief" was a threshold

dispute over the scope of the agreement that fell outside the delegation clause.

35

But, unlike in *Archer*, this arbitration agreement does not render *any* "*dispute*[] … seeking any form of equitable relief*" non-arbitrable, as the district court erroneously concluded. ROA.302 (emphasis added) (citation omitted). The agreement unambiguously sends all "controvers[ies] or claim[s]" to arbitration and carves out only *remedies*—particular types of "relief." ROA.517. Unlike in *Archer*, arbitrators must resolve the substantive merits of all claims no matter what. If the relief sought is not arbitrable, parties can go to court to obtain that relief—but not to adjudicate the underlying claims. ROA.517; *supra* pp. 31-33.

That misreading of the parties' agreement led the district court to further err in deeming *this* agreement's delegation clause insufficiently "clear and unmistakable." ROA.302. *Archer* does not hold that whenever an arbitration agreement with a delegation clause excludes subjects from arbitration, courts must always decide whether a dispute involves a non-arbitrable subject. Rather, "[t]he mere fact that an arbitration provision" excepts certain issues from an arbitrator's power "does not render the parties' intent to delegate threshold questions about that provision less clear." *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018); *accord Archer*, 935 F.3d at 281.

36

Here, the parties' arbitration agreement provides the requisite "clear and unmistakable" evidence of intent to delegate that this Court found lacking in *Archer*. The agreement subjects a whole universe of "controvers[ies] or claim[s]" to arbitration without exception, including arbitration of threshold issues. ROA.517. Only equitable "relief" is non-arbitrable. ROA.517. Read in context, that exclusion is a limitation on arbitrators' power to award remedies, not to decide the antecedent question of how to classify a particular remedy. Again, that is how courts other than the decision below have universally interpreted materially similar arbitration agreements. *Supra* pp. 29-30. And that reading also makes sense of arbitrators' broad default remedial authority under the AAA Rules and accords with how arbitration works practically. *Supra* pp. 31-33.

2. Under the district court's contrary reading, virtually any delegation clause would lack effect. Almost all arbitration agreements have some limitation on their scope. If the rule is that arbitrators cannot decide whether a dispute falls within the arbitration agreement, even when the parties have incorporated a blanket delegation clause empowering arbitrators to resolve all threshold disputes, no delegation clause would ever be sufficiently clear and unambiguous to have effect. And parties could game their way out of

37

arbitration agreements, claiming that their agreement involves some non-arbitrable subject or relief just to get a toehold in court.

Consider the "Standard Arbitration Clause" that the American Arbitration Association provides as a model:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules ….

AAA Rules at 8. Under the district court's reasoning, parties could argue that their claims do not "aris[e] out of or relat[e] to" the contract and thus are excluded not only from arbitration, but also the delegation clause, which is incorporated "in the same sentence." ROA.302. If the "arising out of or relating to" language were treated not only as a carve-out from arbitration (it is), but also a carve-out from *delegation*, rudimentary threshold disputes over the agreement's coverage would go to courts *every time*—an outcome clearly at odds with the force and intent of the FAA.

The same problems would arise for arbitration provisions that apply to "disputes arising out of or relating to a party's employment" or "disputes between the parties regarding insurance coverage." Questions over whether a dispute actually arises from "a party's employment" or is about "insurance coverage" would negate an otherwise clear delegation clause. The district

38

court's approach overrides the parties' intent to delegate gateway issues and invites endless "collateral litigation" over arbitrability—"a time-consuming sideshow" that undermines the reasons parties enter arbitration agreements in the first place. *Henry Schein*, 586 U.S. at 70-71; *supra* p. 5.

3.    Finally, were this Court to deem *Archer* controlling, Aetna respectfully preserves for further review the argument that *Archer* was wrongly decided.  Broad delegation clauses are intended to operate broadly, letting arbitrators answer whether any given dispute is within the scope of the arbitration agreement.  Reading an agreement's exemption of certain actions and disputes from arbitration to override a broad delegation, as *Archer* did, nullifies the delegation clause.  *Supra* pp. 37-38.

After *Archer*, the Supreme Court stayed further litigation in the district court, signaling a tentative view that the Court would grant certiorari and vacate the opinion.  *See* 140 S. Ct. 951 (2020).  Though the Court ultimately granted review, it was unable to resolve the merits.  *See* 141 S. Ct. 107 (2020) (granting certiorari); 592 U.S. 168 (2021) (dismissing writ of certiorari as improvidently granted).  Since then, the judicial consensus against *Archer* has grown, with numerous courts holding that when an arbitration agreement contains a delegation clause but also excepts certain issues from arbitration,

arbitrators must decide threshold questions about whether the non-arbitrable exceptions cover the case at hand.[3]

## II.     Regardless, Aramark Seeks Legal Relief Subject to Arbitration

Even if courts, not arbitrators, decide how to classify the relief Aramark seeks, the answer is clear:    Aramark requests legal relief subject to arbitration.  Aramark seeks to recover "compensatory money damages" from Aetna's general funds over Aetna's "alleged breach of ... fiduciary duty" under ERISA.  ROA.303-05.  And compensatory damages are classic legal relief.  The district court instead deemed that relief "equitable" based on *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448 (5th Cir. 2013), which held that the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), required classifying awards of "compensatory money damages" for alleged breaches of fiduciary duties as equitable.  ROA.304-05 (citations omitted).

But the Supreme Court disavowed that approach in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), as the Fourth Circuit just recognized.  *See Rose v. PSA Airlines,*

---

[3] *See, e.g.*, *WasteCare Corp. v. Harmony Enters., Inc.*, 822 F. App'x 892, 896 (11th Cir. 2020); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075-76 (9th Cir. 2013); *see also TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 714 (Tex. 2023); *Ally Align*, 574 S.W.3d at 758.

*Inc.*, 80 F.4th 488, 503-04 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1346.  The Fourth Circuit thus held that the exact remedy that Aramark seeks here— compensatory damages for an alleged breach of fiduciary duties under ERISA—is legal, not equitable.  *Id.*  This Court should avoid creating a circuit split, hew to the Supreme Court's latest word on ERISA remedies, and revert to the well-settled rule that compensatory damages are not equitable relief.

### A.    ERISA Claims for Monetary Relief Are Equitable Only If They Seek Particular Funds from Defendants

1. All agree that whether relief qualifies as legal or equitable under this arbitration agreement tracks the longstanding distinctions between legal and equitable relief that govern ERISA and other contexts.  *See* ROA.113-17, 384-88.  Whether plaintiffs seek "equitable" relief depends on whether the remedy at issue "was traditionally accorded by courts of equity."  *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999); *see, e.g.*, *SEC v. Jarkesy*, 144 S. Ct. 2117, 2129 (2024) (same test for Seventh Amendment).  And ERISA limits plaintiffs to obtaining "appropriate equitable relief" to redress certain ERISA violations, which the Supreme Court has long defined as the "categories of relief that were *typically* available" in premerger equity courts.  *Montanile*, 577 U.S. at 142 (citation omitted) (interpreting "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)); *accord Great-*

*West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002); *Mertens*, 508 U.S. at 256.

That test is easy to apply when, as here, the plaintiff seeks money damages. "[M]oney damages [we]re the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129. Damages involve payments from defendants to compensate plaintiffs' monetary losses from alleged wrongs. *See* 1 D. Dobbs, *Law of Remedies* § 1.1, at 3-5 (2d ed. 1993); *Great-West*, 534 U.S. at 210. Thus, the Supreme Court held, plaintiffs who sought "money damages" against a nonfiduciary who knowingly participated in an ERISA "fiduciary's breach of fiduciary duty" asked for "legal relief," not equitable relief. *Mertens*, 508 U.S. at 251, 255. Likewise, plaintiffs who claimed to be "contractually entitled to *some* funds for benefits" they had "conferred" on a defendant sought legal relief. *Great-West*, 534 U.S. at 214. Because these plaintiffs requested "compensation for loss resulting from [a] defendant's breach of legal duty," they sought "money damages," the "classic form of *legal* relief." *Id.* at 210 (citations omitted); *see Rose*, 80 F.4th at 504.

By contrast, only narrow categories of monetary relief were typically available in courts of equity (as opposed to courts of law, the other option in the pre-1938 days of the divided bench). Courts of equity could ordinarily

award monetary relief only if the plaintiff sought to recover *specific* funds the defendant possessed, but that "in good conscience" belonged to the plaintiff. *See* Dobbs, *supra*, § 4.3(1), at 587-88; *Great-West*, 534 U.S. at 213 (describing when "a plaintiff could seek restitution *in equity*").

Thus, courts of equity could force a defendant to turn over "specifically identified funds" or "traceable items" that the defendant purchased with those identified funds. *Montanile*, 577 U.S. at 144-45. But any "personal claim against the defendant's general assets" constituted a "*legal* remedy, not an equitable one." *Id.* at 145. That distinction reflected the historical limitation that remedies typically available in equity would bestow or enforce "a right to or over some particular thing" instead of "a right to recover a sum of money generally out of the defendant's assets." *Id.* (citation omitted).

2. Applying those principles here, Aramark seeks legal relief. Aramark asserts ERISA violations for which it seeks to recover "any and all losses resulting from" Aetna's supposed "breach[]" of "its fiduciary duties" and "any and all benefit or profits" that Aetna realized as a result. ROA.44-48. Aramark's "losses resulting from" Aetna's supposed misconduct are quintessential "compensatory money damages," as Aramark tellingly conceded. ROA.115, 304. The plaintiff in *Mertens* sought virtually the same

thing:  "monetary relief for all losses their plan sustained as a result of [an] alleged breach of fiduciary duties."  508 U.S. at 255.  And the Supreme Court deemed that remedy legal, not equitable.  *Id.*; *accord Great-West*, 534 U.S. at 210.

Aramark's further request for "any and all benefit or profits" that Aetna allegedly obtained is not equitable relief either.  ROA.44-48.  Such monetary relief for allegedly wrongful gains would be "equitable" only if Aramark could point to specific funds or property that it rightfully owned but Aetna wrongfully possessed.  *See Rose*, 80 F.4th at 500-02; *Montanile*, 577 U.S. at 142-43; *Great-West*, 534 U.S. at 214.  Thus, the Supreme Court held that a request for restitution of funds that the defendant never possessed was legal, not equitable.  *Great-West*, 534 U.S. at 208-09, 213-14.  Nor did a request for a lien against a defendant's "general assets" to recover settlement funds spent on "nontraceable items" qualify as "equitable relief"; such assets are not "a specific fund in the defendant's possession."  *Montanile*, 577 U.S. at 145, 147.  So too here, Aramark's failure to identify "specific fund[s] in the defendant's possession" distinct from Aetna's "general assets" dooms Aramark's assertion that it seeks equitable relief.  *See id.* at 147; *see also* ROA.43-48.

44

In short, Aramark seeks the "classic" remedy available at common law—
"a judgment" that imposes a "personal liability upon [Aetna] to pay a sum of
money." *Great-West*, 534 U.S. at 213 (citation omitted); *see* ROA.47-48.
Because Aramark seeks legal relief, arbitrators—not courts—must adjudicate
that request. *See* ROA.517. If any doubts remained, the "presumption
favoring arbitrability" would resolve them in Aetna's favor. *See Hous. Ref.,
L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 412 (5th Cir.
2014). When parties "have agreed to arbitrate *some* matters pursuant to an
arbitration clause ... any doubts concerning the scope of arbitral issues should
be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of
Teamsters*, 561 U.S. 287, 298 (2010) (cleaned up). Here, the parties plainly
agreed to arbitrate all sorts of disputes, carving out only "form[s] of equitable
relief." ROA.517. Any doubts as to whether Aramark seeks "equitable relief,"
ROA.517, "should be resolved in favor of arbitration." *Moses H. Cone*, 460
U.S. at 24-25.

## B.     The District Court Erred in Concluding Otherwise

1. The district court considered itself "bound" by this Court's decision
in *Gearlds* to classify Aramark's demand for "compensatory money damages"
as "equitable in nature." ROA.304-05 (quoting *Gearlds*, 709 F.3d 448).

*Gearlds* held that "make-whole damages for breach of fiduciary duty" were "equitable relief" under ERISA. 709 F.3d at 450-52. But, as the Fourth Circuit just held, the Supreme Court's intervening decision in *Montanile* refutes that conclusion.

*Gearlds* itself broke ranks with this Court's previous ERISA jurisprudence. Before *Gearlds*, this Court would have unquestionably classified Aramark's compensatory-damages request as legal, on the ground that such damages were not *typically* available in equity. *See Amschwand v. Spherion Corp.*, 505 F.3d 342, 347 (5th Cir. 2007); *Hobbs v. Baker Hughes Oilfield Operations, Inc.*, 294 F. App'x 156, 159 (5th Cir. 2008).

But *Gearlds* viewed the Supreme Court's 2011 *Amara* decision as "implicitly overrul[ing]" this Court's "prior precedent." 709 F.3d at 452. *Amara* suggested that a request for "make-whole" monetary relief against a fiduciary could qualify as "equitable" under ERISA § 502(a)(3) by analogizing such relief to the "surcharge remedy" that courts in equity could award against trustees who committed a "breach of trust." 563 U.S. at 442. Historically, courts of equity had "exclusive jurisdiction" over trust cases, and that exclusive jurisdiction broadened the range of remedies courts in equity could award in those cases only. *Rose*, 80 F.4th at 497-98; *accord* Samuel L.

46

Bray, *Equity, Law, and the Seventh Amendment*, 100 Tex. L. Rev. 467, 488-90 (2022).  For example, defendants in breach-of-trust cases could be ordered to pay a "surcharge," which "subjected the trustee to *personal* liability based on the *plaintiff's losses*."  *Rose*, 80 F.4th at 498.  This Court in *Gearlds* thus interpreted *Amara* as dramatically overhauling the relevant "inquiry into equity" and requiring courts to classify the unusual legal remedies available in equity-only cases as "equitable."  709 F.3d at 451-52.

2.  The Supreme Court's intervening decision in *Montanile* confirms that this Court's earlier precedent was right all along and that *Gearlds* wrongly looked beyond the relief "typically available" in courts of equity.  *See Montanile*, 577 U.S. at 147-49.  As the Fourth Circuit recently recognized in a materially identical case, the Supreme Court in *Montanile* has since "rejected the turn that it contemplated in *Amara*," *i.e.*, the turn that this Court took in *Gearlds*.  *See Rose*, 80 F.4th at 503.

*Montanile* dismissed *Amara*'s "discussion" of "equitable relief" as dicta "not essential to resolving that case."  577 U.S. at 148 n.3; *accord Amara*, 563 U.S. at 449 (Scalia, J., concurring in the judgment) (recognizing this portion of *Amara* was "purely dicta" and not "binding" from the start).  Instead, *Montanile* reiterated, the Supreme Court's "interpretation of 'equitable

47

relief'" in older cases like "*Mertens* [and] *Great-West … remains unchanged.*"
577 U.S. at 148 n.3 (emphasis added).  Under that established "framework" for
assessing "equitable relief," remedies that courts of equity could award "only
in specialized cases" do "not count as 'equitable.'"  *Rose*, 80 F.4th at 500, 504.
As the Supreme Court put it:  "[L]egal remedies—even legal remedies that a
court of equity could sometimes award—are not 'equitable relief.'"  *Montanile*,
577 U.S. at 149.  Otherwise, allowing the "purely legal" remedies available in
those exclusive-jurisdiction cases to define the contours of "equitable relief"
would let plaintiffs relabel almost any relief as "equitable" and render any
distinction between legal and equitable remedies "meaningless."  *Mertens*, 534
U.S. at 256-58 & n.8; *accord Great-West*, 534 U.S. at 219.

   Thus, the Fourth Circuit disavowed its *Gearlds*-equivalent precedent,
on which *Gearlds* heavily relied, classifying make-whole remedies for breaches
of fiduciary duty as equitable as "flatly inconsistent" with *Montanile*.  *Rose*,
80 F.4th at 503-04 (repudiating *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176,
181 n.2 (4th Cir. 2012)); *see Gearlds*, 709 F.3d at 451-52 (opting to "follow"
*McCravy*'s "path").  As the Fourth Circuit explained, "trust remedies"—
including awards of surcharge involving make-whole money damages to
trustees—cannot "define the reach" of equitable relief under ERISA, because

48

they were not "*typically* available in equity." *Rose*, 80 F.4th at 500-01 (citations omitted).

*Amara*, in short, was aberrant dicta, not a new path. The Fourth Circuit has now course-corrected given the Supreme Court's later guidance, and repudiated the very Fourth Circuit case that *Gearlds* "followed." *Id.* at 504. This Court should avoid a stark circuit split and likewise exercise its "authority and *obligation*" to recognize that the Supreme Court in *Montanile* "disavow[ed] the mode of analysis" on which *Gearlds* relied. *Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018).[4]

3. The district court's contrary reasoning is unpersuasive. The court deemed the Supreme Court's decisions in "*Mertens, Great-West,* and *Montanile* a[s] distinguishable" from *Amara* because "none of the defendants in those cases were fiduciaries." ROA.306. But *Montanile* confirms that

---

[4] This Court and others have issued some post-*Montanile* decisions applying circuit precedent and *Amara* to classify make-whole surcharge remedies as "equitable." *E.g., Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga,, Inc.*, 892 F.3d 719, 733 (5th Cir. 2018); *Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 914-15 (11th Cir. 2022); *Sullivan-Mestecky v. Verizon Commc'ns, Inc.*, 961 F.3d 91, 102-03 (2d Cir. 2020). But there is no indication that these circuits "considered the viability of *Amara*'s rule after *Montanile*." *See Rose*, 80 F.4th at 503-04. Nor has this Court had occasion to consider the Fourth Circuit's recent decision in *Rose*—an especially important development given that this Court is "always chary to create a circuit split." *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 441 (5th Cir. 2022).

distinction is irrelevant. *Amara* focused on a defendant's fiduciary status only because being a fiduciary was "analogous to a trustee" and opened the door to consideration of exclusive-jurisdiction trust cases where courts of equity awarded "make-whole relief." 563 U.S. at 442. *Montanile* then clarified that the exclusive-jurisdiction trust cases are irrelevant, just as the Supreme Court had reasoned in its earlier cases (*Great-West* and *Mertens*). Again: relief qualifies as "equitable" only if a plaintiff seeks to recover "those categories of relief that were *typically* available in equity." *Great-West*, 534 U.S. at 219 (quoting *Mertens*, 508 U.S. at 256); *Montanile*, 577 U.S. at 142. Those specialized trust cases were atypical, so the district court's attempt to sweep those cases away fails.

The district court also erroneously relied on a smattering of briefs and opinions from arbitrations and litigation where Aetna argued that ERISA claims against it were equitable because it was an ERISA fiduciary.[5]

---

[5] *See* Arbitrator's Decision at 85-92, *Group 1 Auto., Inc. v. Aetna Life Ins. Co.*, No. 4:20-cv-1290 (S.D. Tex. Aug. 14, 2020), ECF 27-3; Mot. to Strike Jury Demand, *Minerley v. Aetna, Inc*, No. 13-cv-1377 (D.N.J. Feb. 16, 2017), ECF 106; Mot. to Dismiss, *United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, No. 8:14-cv-211 (M.D. Fla. Sept. 24, 2014), ECF 61; Mot. to Dismiss, *Simon v. Aetna Life Ins. Co.*, No. 6:18-cv-1097 (M.D. Fla. Aug. 10, 2018), ECF 9; Reply in Supp. of Mot. to Dismiss, *Peck v. Aetna Life Ins. Co.*, No. 3:04-cv-1139 (D. Conn. Nov. 4, 2004), ECF 23.

ROA.306; *see* ROA.130-38, 140-45, 148-69, 172-91, 194-203.   In the district court's view, Aetna's supposedly "inconsistent positions" supported characterizing Aramark's money-damages remedy as "equitable." ROA.306.

But Aetna's position here is not "clearly inconsistent with its previous position[s]." *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, --- F.4th ---, 2024 WL 4219295, at *5 (5th Cir. Sept. 18, 2024) (citation omitted). Some of those cases pre-date *Montanile* and none grapple with it; all pre-date the Fourth Circuit's recognition that *Montanile* abrogated precedents over-reading *Amara* to greenlight all sorts of trust-like remedies as equitable. *E.g.*, ROA.159-61, 200-03.   Others did not involve the "surcharge" remedy that Aramark and the district court embraced. *E.g.*, ROA.160.   Aetna can hardly be estopped from pointing out that intervening Supreme Court precedent calls previous approaches into question, least of all now that the Fourth Circuit has held as much.   Positions that "rest[] on an intervening change in law" are "not subject to judicial estoppel." *Saleh v. Bush*, 848 F.3d 880, 887 n.5 (9th Cir. 2017).

## III.   At a Minimum, the District Court Erred by Denying Aetna's Request for a Discretionary Stay

When denying Aetna's motion for a stay pending arbitration, the district court without explanation denied Aetna's alternative request to stay litigation

in the Eastern District of Texas and await the District of Connecticut's resolution of Aetna's FAA § 4 petition to compel arbitration. That abuse of discretion independently warrants vacating the district court's order.[6]

District courts have "incidental," "inherent" power to "stay proceedings" to promote judicial economy. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). That includes the power to "stay[] a lawsuit until after another related action has been tried." *In re Beebe*, 1995 WL 337666, at *3 (5th Cir. 1995) (per curiam). Although Aetna briefed this position, ROA.388-89, the district court simply denied Aetna's motion in full, ROA.307; *see Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (district court constructively denies motion by "ent[ering] … an order inconsistent with the granting of the relief sought").

This case was Exhibit A for the district court to stay its hand. Under the FAA, the District of Connecticut—not the Eastern District of Texas—is the appropriate court to decide the scope of the parties' delegation agreement

---

[6] This Court has appellate jurisdiction over this alternative argument under FAA § 16, which "confers appellate jurisdiction 'to review the district court's entire "order,"' and any issue 'fairly included' in that appealable order." *Hines v. Stamos*, 111 F.4th 551, 558-59 (5th Cir. 2024) (footnotes omitted); *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1042 (5th Cir. 2016) (issue is "fairly included when it was raised in the district court and the parties presented it in their appellate briefs") (collecting cases).

and any other questions about compelling arbitration. The parties undisputedly agreed to arbitrate in Hartford, Connecticut. ROA.517. And FAA § 4 requires parties to move to compel arbitration in the federal district court where arbitration would be held. *Cf. Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, S. A.*, 243 F.2d 342, 346 (2d Cir. 1957).[7] Because the FAA designates the District of Connecticut as the proper court to decide whether to order arbitration, it is "the height of judicial inefficiency" for the Eastern District of Texas and this Court to decide the same issues about the arbitration agreement, and then have that same ground re-tread by the District of Connecticut, the appropriate court to order Aramark to arbitrate. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009); *see Farr & Co.*, 243 F.2d at 346.

---

[7] *See also Todd v. S.S. Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 332 n.4 (5th Cir. 2010) ("Under the FAA, district courts may only refer cases to arbitration within their own district."); *Petition of Home Ins. Co.*, 908 F. Supp. 180, 182 (S.D.N.Y. 1995) (explaining "well-established principle that only the district court in the district where the arbitration will proceed may order arbitration"); *Amtex Sec., Inc. v. 3M Co.*, 2007 WL 2176977, at *1 (S.D. Tex. July 27, 2007) ("the Minnesota district court is the appropriate forum to determine whether [the parties] should be ordered to submit their dispute to arbitration" because arbitration agreement provided for arbitration "in St. Paul, Minnesota").

Allowing the District of Connecticut to proceed first also honors the parties' undisputedly valid choice-of-law clause. ROA.517, 519. The parties agreed that Connecticut law would govern any state-law issues, and, by agreeing to arbitration in Connecticut, the parties chose Second Circuit law to govern any federal issues, including interpretations of the FAA. *See* ROA.517, 519; *cf. Dr.'s Assocs., Inc. v. Stuart*, 85 F.3d 975, 979 (2d Cir. 1996) ("When a party agrees to arbitrate in a state, where the [FAA] makes such agreements specifically enforceable, that party must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in that state." (cleaned up)). Aramark's attempt to litigate in the Eastern District of Texas upends those agreements as well.

Below, Aramark invoked the first-filed rule to favor proceeding in the Eastern District of Texas, since Aramark sued there before Aetna sought to compel arbitration in Connecticut. But the Supreme Court already "rejected" the notion that parallel litigation "should have been allowed to proceed because it was filed" before a petition to compel arbitration. *Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 344 (5th Cir. 1986) (citing *Moses H. Cone*, 460 U.S. at 21). The reason is "obvious": in order for one party to move to compel arbitration, the other party must have "refus[ed]

to arbitrate." *Moses H. Cone*, 460 U.S. at 21; 9 U.S.C. § 4. Aetna could not try to compel arbitration in Connecticut until Aramark disregarded its contractual obligation to arbitrate by bringing suit in Texas. Applying the first-filed rule would otherwise perversely reward parties that defy arbitration agreements by allowing them to also circumvent their contractually chosen venue.

Thus, at a minimum, this Court should vacate the district court's order denying Aetna's request for a discretionary stay. In the interest of judicial economy and especially considering the District of Connecticut action, this Court should remand with instructions to grant the stay. *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 479 (5th Cir. 2018) (this Court "ha[s] the power to make such disposition of the case as justice may require" (citation omitted)). This Court could alternatively consider retaining jurisdiction during a limited remand for further explanation of the district court's unexplained denial of Aetna's request. *See, e.g.*, *id.* at 485-86; *Leipzig v. Principal Life Ins. Co.*, 481 F. App'x 865, 872 (5th Cir. 2010). Regardless, this Court should not condone Aramark's disregard of its contractual obligation to arbitrate in Connecticut.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order denying Aetna's motion to stay.

Dated: October 15, 2024                    Respectfully submitted,

/s/ Sarah M. Harris

JOHN B. SHELY                              SARAH M. HARRIS*
M. KATHERINE STRAHAN                       LIBBY A. BAIRD
DAVID W. HUGHES                            NOAH C. MCCULLOUGH[†]
CAMERON POPE                               IKENNA N. UGBOAJA
HICKS THOMAS LLP                           WILLIAMS & CONNOLLY LLP
   700 Louisiana Street                       680 Maine Avenue SW
   Suite 2300                                 Washington, DC 20024
   (713) 547-9100                             (202) 434-5000
                                              sharris@wc.com

PETER J. KOCORAS                           MELISSA RICHARDS SMITH
GREGORY H. BERMAN                          GILLAM & SMITH, LLP
THOMPSON HINE LLP                             303 South Washington Avenue
   20 North Clark Street                      Marshall, TX 75670
   Suite 3200                                 (903) 934-8450
   Chicago, IL 60602
   (312) 998-4241

                                           Counsel for Appellant
                                           *Counsel of Record.

[†] Admitted in the District of Columbia under an emergency examination waiver and practicing law under the supervision of D.C. Bar members pursuant to D.C. Court of Appeals Rule 46-A.

56

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,796 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Century Expanded BT, size 14.


/s/ *Sarah M. Harris*
SARAH M. HARRIS

OCTOBER 15, 2024

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to Federal Rule of Appellate Procedure 25(d) and Fifth Circuit Rule 25.2, I hereby certify that on October 15, 2024 true and correct copies of the foregoing **BRIEF FOR APPELLANT** were filed with the Clerk's Office for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system.

/s/ *Sarah M. Harris*
SARAH M. HARRIS

OCTOBER 15, 2024

58