# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 24-40323

ARAMARK SERVICES, INCORPORATED GROUP HEALTH PLAN;
ARAMARK SERVICES INCORPORATED, formerly known as Aramark
Corporation; ARAMARK UNIFORM SERVICES, GROUP HEALTH AND
WELFARE PLAN; ARAMARK BENEFITS COMPLIANCE REVIEW
COMMITTEE,

*Plaintiffs-Appellees,*

v.

AETNA LIFE INSURANCE COMPANY,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS IN NO. 2:23-CV-446,
HONORABLE JAMES RODNEY GILSTRAP, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFFS-APPELLEES

JENNIFER TRUELOVE
MCKOOL SMITH, P.C.
104 East Houston Street, Suite 300
Marshall, Texas 75670
(903) 923-9000
jtruelove@mckoolsmith.com

JON COREY
MCKOOL SMITH, P.C.
1717 K Street, NW, Suite 1000
Washington, DC 20006
(202) 370-8300

DAVID SCHIEFELBEIN
HAL SHIMKOSKI
MCKOOL SMITH, P.C.
1301 Avenue of the Americas,
    32nd Floor
New York, New York 10019
(212) 402-9400

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

(1)    No. 24-40323, *Aramark Services, Inc. et al v. Aetna Life Insurance Company*, USDC No. 2:23-cv-00446-JRG.

(2)    The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made, pursuant to Rule 28.2.1, so that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:** Aramark Services Inc., formerly known as Aramark Corporation; Aramark Services, Inc. Group Health Plan; Aramark Uniform Services Group Health and Welfare Plan; and Aramark Benefits Compliance Review Committee.

**Defendants-Appellants:** Aetna Life Insurance Company.

**Counsel for Plaintiffs-Appellees:** Jennifer L. Truelove, Jon Corey, David I. Schiefelbein, Hal M. Shimkoski, McKool Smith, P.C.

**Counsel for Defendant-Appellants:** Sarah M. Harris, Noah C. McCullough, Libby A. Baird, Ikenna N. Ugboaja, Williams & Connolly LLP; Gregory H. Berman, Peter J. Kocoras, Thompson Hine LLP; John B. Shely, M. Katherine Strahan, David W. Hughes, Cameron Pope, Hicks Thomas LLP; Melissa Richards Smith, Gillam & Smith, LLP.

i

**Amicus Curiae:** America's Health Insurance Plans, Inc. (AHIP).

**Attorneys for Amicus Curiae:** Michael H. McGinley, Rose Marie C. Wong, Dechert LLP.

Dated: December 19, 2024

      Respectfully submitted,

      */s/ Jennifer Truelove*
      Jennifer Truelove

      Counsel for Plaintiffs
        -Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Appellees are prepared to address Appellant's contentions at oral argument but, based on the arguments in Appellant's opening brief, do not believe that oral argument is needed to resolve Appellant's proffered contractual interpretation or its challenge to the controlling precedent that ERISA claims brought against fiduciaries are equitable. At bottom, Appellant asks this Court to rewrite the Parties' Agreement that, by its express terms, carves out claims seeking equitable relief. Under controlling Supreme Court and Fifth Circuit precedent, ERISA breach of fiduciary duty claims brought against a fiduciary are equitable.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS...................................................i

STATEMENT REGARDING ORAL ARGUMENT ...................................... iii

TABLE OF CONTENTS.....................................................................iv

TABLE OF AUTHORITIES ..............................................................vi

INTRODUCTION ............................................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED ...............................6

STATEMENT OF THE CASE ...........................................................7

    I.    Factual Background ...............................................................7

    II.    Procedural History ................................................................9

SUMMARY OF THE ARGUMENT....................................................14

STANDARD OF REVIEW ..............................................................19

ARGUMENT ................................................................................20

    I.    THE TRIAL COURT CORRECTLY DECIDED THAT ARAMARK'S CLAIMS ARE NOT SUBJECT TO MANDATORY ARBITRATION .................................................20

    II.    THE ARBITRATION PROVISION EXCLUDES ALL CONTROVERSIES OR CLAIMS SEEKING EQUITABLE RELIEF ................................................................31

    III.    ARAMARK'S ERISA CLAIMS SEEK EQUITABLE RELIEF ................................................................42

        A.    Supreme Court and Fifth Circuit Precedent Dictate that ERISA Claims Brought Against a Fiduciary are Equitable Claims...........................................43

        B.    Aramark's Claims for Monetary Relief are Equitable Under *Amara* and its Progeny ...........................53

C.    The Fourth Circuit's Outlier Decision in Rose Does Not Abrogate *Amara* or *Gearlds* ........................................... 56

D.    Aetna Previously Argued that ERISA Claims Brought Against a Fiduciary are Equitable ........................ 60

IV.   THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DECIDING AETNA'S MOTION TO STAY .................................................................................... 62

CONCLUSION .......................................................................... 65

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aetna Life Ins. Co. v. Bayona,*
  223 F.3d 1030 (9th Cir. 2000) ........................................................... 54

*Ally Align Health, Inc. v. Signature Advantage, LLC,*
  574 S.W.3d 753 (Ky. 2019) ................................................................ 26

*Archer & White Sales, Inc. v. Henry Schein, Inc.,*
  878 F.3d 488 (5th Cir. 2017) ............................................................. 28

*Archer & White Sales, Inc. v. Henry Schein, Inc.,*
  935 F.3d 274 (5th Cir. 2019) ................................................... *passim*

*Arnold v. HomeAway, Inc.,*
  890 F.3d 546 (5th Cir. 2018) ................................................ 26, 27, 28

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
  475 U.S. 643 (1986) ........................................................................... 14

*Blanton v. Domino's Pizza Franchising LLC,*
  962 F.3d 842 (6th Cir. 2020) ........................................................ 29, 30

*Borst v. Chevron Corp.,*
  36 F.3d 1308 (5th Cir. 1994) ............................................................. 58

*Bossé v. N.Y. Life Ins. Co.,*
  992 F.3d 20 (1st Cir. 2021) ............................................................... 25

*Browdy v. Hartford Life & Acc. Ins. Co.,*
  630 F. App'x 278 (5th Cir. 2015) ...................................................... 54

*Brown v. United of Omaha Life Ins. Co.,*
  661 F. App'x 852 (6th Cir. 2016) ................................................ 47, 53

*Cadle Co. v. Whataburger of Alice, Inc.,*
  174 F.3d 599 (5th Cir. 1999) ............................................................. 63

*Carter v. S. Cent. Bell,*
  912 F.2d 832 (5th Cir. 1990) ............................................................. 58

*Castillo v. Metro. Life Ins. Co.*,
    970 F.3d 1224 (9th Cir. 2020) ............................................................53

*Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*,
    756 F.3d 356 (5th Cir. 2014) ......................................................45, 49

*Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1990) ............................................................................58

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011) ...................................................................*passim*

*Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*,
    748 F.3d 249 (5th Cir. 2014) ......................................26, 27, 30, 36

*Cruz v. Visual Perceptions, LLC*,
    84 A.3d 828 (Conn. 2014) ...........................................................32, 33

*Cunningham v. Cornell Univ.*,
    No. 16-cv-6525, 2018 WL 4279466 (S.D.N.Y. Sept. 6, 2018) .......52

*Davis v. SEVA Beauty, LLC*,
    No. C17-547 TSZ, 2017 U.S. Dist. LEXIS 148434 (W.D. Wash. Sept. 13, 2017) ..................................................................................26

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
    6 F.4th 308 (2d Cir. 2021) ...........................................................24, 26

*Divane v. Nw. Univ.*, No. 16 C,
    No. 16 C 8157, 2018 WL 1942649 (N.D. Ill. Apr. 25, 2018) .........51

*Dupuy–Busching General Agency, Inc. v. Ambassador Ins. Co.*,
    524 F.2d 1275 (5th Cir. 1975) ..........................................................65

*DXP Enters., Inc. v. Goulds Pumps, Inc.*,
    No. H-14-1112, 2014 WL 5682465 (S.D. Tex. Nov. 4, 2014) .........36

*East El Paso Physicians' Med. Ctr., LLC v. Aetna Health Inc.*,
    No. 16-cv-44-KC, 2017 WL 876313 (W.D. Tex. Mar. 2, 2017)...............28, 29

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)............................................................................31

*Gabriel v. Alaska Elec. Pension Fund*,
    773 F.3d 945 (9th Cir. 2014) ........................................................ 48

*Garrett v. Lumpkin*,
    96 F.4th 896 (5th Cir. 2024) ....................................................... 58

*Garthwait v. Eversource Energy Co.*,
    No. 3:20-cv-00902, 2022 WL 17484817 (D. Conn. Dec. 7, 2022) ............... 52

*GateGuard, Inc. v. MVI Sys. LLC*,
    No.19-cv-2472, 2021 WL 4443256 (S.D.N.Y. Sept. 28, 2021). ................. 35

*Gearlds v. Entergy Servs., Inc.*,
    709 F.3d 448 (5th Cir. 2013) ................................................... *passim*

*Gimeno v. NCHMD, Inc.*,
    38 F.4th 910 (11th Cir. 2022) ................................................. 52, 59

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ........................................................... *passim*

*Group 1 Auto., Inc. v. Aetna Life Insurance Co.*,
    No. 4:20-cv-1290 (S.D. Tex. Apr. 10, 2020) ..................... 17, 40, 41, 60, 61

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
    921 F.3d 522 (5th Cir. 2019) ..................................................... 32

*Hanson v. PLLC*,
    596 F. Supp. 3d 742 (E.D. Tex. 2021) ............................................ 55

*Harmon v. Shell Oil Co.*,
    No. 3:20-cv-0021, 2023 WL 2474503 (S.D. Tex. Mar. 13, 2023) ....... 50, 51, 52

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ............................................................... 29

*In re Amerijet Intern., Inc.*,
    785 F.3d 967 (5th Cir. 2015) ..................................................... 63

*In re Checking Acct. Overdraft Litig. MDL No. 2036*,
    674 F.3d 1252 (11th Cir. 2012) ............................................... 26, 30

*In re DeRogatis*,
    904 F.3d 174 (2d Cir. 2018) ...................................................... 52

*Indian Harbor Ins. Co. v. Glob. Transp. Sys., Inc.*,
   197 F. Supp. 2d 1 (S.D.N.Y. 2002)................................................................65

*Info. Sys. Audit & Control Ass'n, Inc. v. Telecomms. Sys., Inc.*,
   No.17 C 2066, 2017 WL 2720433 (N.D. Ill. June 23, 2017)..........................35

*Innova Hospital San Antonio, Ltd. P'ship v. Blue Cross & Blue
   Shield of Ga., Inc.*,
   892 F.3d 719 (5th Cir. 2018)........................................................................52

*J2 Res., LLC v. Wood River Pipe Lines, LLC*,
   No. 4:20-cv-2161, 2020 WL 4227424 (S.D. Tex. July 23, 2020) ....................24

*Kenseth v. Dean Health Plan, Inc.*,
   722 F.3d 869 (7th Cir. 2013)...................................................................46, 47

*Kubala v. Supreme Prod. Servs., Inc.*,
   830 F.3d 199 (5th Cir. 2016)..........................................................20, 26, 29

*LeBoeuf v. Entergy Corp.*,
   No. 23-6257, 2024 WL 3742690 (E.D. La. 2024) ...........................................60

*LeBoeuf v. NVIDIA Corp.*,
   833 F. App'x 465 (9th Cir. 2021)....................................................................26

*Leipzig v. Principal Life Ins. Co.*,
   481 F. App'x 865 (5th Cir. 2010)....................................................................62

*Mann Mfg. v. Hortex, Inc.*,
   439 F.2d 403 (5th Cir. 1971)..........................................................................63

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995).........................................................................................41

*Medve Energy Ventures, LLC v. Cypress Drilling LLC*,
   No. 6:18-cv-00082, 2018 WL 10517170 (W.D. La. June 19, 2018)................38

*Menkes v. Prudential Ins. Co. of Am.*,
   762 F.3d 285 (3d Cir. 2014) ...........................................................................48

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993)...............................................................................passim

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus.
  Health Benefit Plan,*
  577 U.S. 136 (2016) ................................................................. *passim*

*Morrissey v. Curran,*
  650 F.2d 1267 (2d Cir. 1981) ............................................... 55

*Mun. Energy Agency v. Big Rivers Elec. Corp.,*
  804 F.2d 338 (5th Cir. 1986) ............................................... 64

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC,*
  770 F.3d 1010 (2d Cir. 2014) ....................................... 14, 21, 24, 25

*Nat'l Sec. Sys. v. Iola,*
  700 F.3d 65 (3d Cir. 2012) .................................................. 42

*O'Brien v. U.S. Fidelity & Guar. Co.,*
  669 A.D. 1221 (Conn. 1996) ............................................... 39

*Oracle Am., Inc. v. Myriad Grp. A.G.,*
  724 F.3d 1069 (9th Cir. 2013) .......................................... 26, 29

*Ottemann v. Knights of Columbus,*
  36 F.4th 600 (5th Cir. 2022) ............................................... 32

*Papalote Creek II, L.L.C. v. Lower Colo. River Auth.,*
  918 F.3d 450 (5th Cir. 2019) ............................................... 32

*Pereira v. Farace,*
  413 F.3d 330 (2d Cir. 2005) ............................................... 52

*Perera v. Metro. Life Ins. Co.,*
  No. 3:17-cv-195, 2017 WL 4541569 (M.D. Fla. Oct. 11, 2017) ...................... 61

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,*
  687 F.3d 671 (5th Cir. 2012) ......................................... 25, 27, 28

*Plump Eng'g, Inc. v. Westshore Design Eng'rs, P.C.,*
  No.1:18-cv-00027, 2018 WL3730168 (N.D.N.Y. Aug. 6, 2018) ......... 36, 37, 38

*Powell v. Minn. Life Ins. Co.,*
  60 F.4th 1119 (8th Cir. 2023) ............................................. 53

*Proulx v. Brookdale Living Cmtys. Inc.,*
  88 F. Supp. 3d 27 (D.R.I. 2015) ........................................... 37

*Rainwater v. Nat'l Home Ins. Co.*,
  944 F.2d 190 (4th Cir. 1991)...................................................................35

*Rose v. PSA Airlines, Inc.*,
  80 F.4th 488 (4th Cir. 2023) ............................................................*passim*

*Sarno v. Sun Life & Health Ins. Co. (U.S.)*,
  No. 22-cv-968, 2024 WL 1364341 (E.D.N.Y. Mar. 31, 2024) .......................60

*Silva v. Metro. Life Ins. Co.*,
  762 F.3d 711 (8th Cir. 2014)..................................................................47

*Spencer Trask & Co., Inc. v.*
  *Spencer Trask Collaborative Innovations, LLC*,
  No. FST-cv-166028288, 2016 WL 8115547 (Conn. Super. Ct.
  Oct. 19, 2016) ........................................................................................39

*Staropoli v. Metro. Life Ins. Co.*,
  No. 21-2500, 2023 WL 1793884 (3d Cir. Feb. 7, 2023) ..................................53

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)................................................................................32

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*,
  961 F.3d 91 (2d Cir. 2020) ........................................................53, 55, 60

*Sutter Corp. v. P & P Indus., Inc.*,
  125 F.3d 914 (5th Cir. 1997)....................................................................19

*Teets v. Great-West Life & Annuity Ins. Co.*,
  921 F.3d 1200 (10th Cir. 2019)..................................................................53

*Tittle v. Enron Corp.*,
  463 F.3d 410 (5th Cir. 2006)....................................................................19

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*,
  667 S.W.3d 694 (Tex. 2023) ....................................................................26

*Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Global*
  *Advisors, LLC*,
  102 F.4th 572 (2d Cir. 2024)....................................................................59

*U-Haul Int'l, Inc. v. Hire a Helper, LLC*,
  No. 08-cv-01801-H, 2009 WL 10671527 (S.D. Cal. Apr. 13, 2009) ...............35

*Ultra Premium Servs. v. Kompaniya,*
No. H-21-305, 2021 WL 4440323 (S.D. Tex. Aug. 20, 2021) ..................21, 27

*United Illuminating Co. v. Wisvest-Connecticut LLC,*
791 A.D.2d 546 (Conn. 2002)................................................................15, 39

*United States v. Safety Nat'l Cas. Corp.,*
No. SA-10-CA-498-OG, 2010 WL 11595787 (W.D. Tex. Sept. 24,
2010) ...........................................................................................................65

*Vellali v. Yale Univ.,*
662 F. Supp. 3d 238 (D. Conn. 2023) ........................................................52

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,*
489 U.S. 468 (1989) ...................................................................................31

## Statutes & Other Authorities:

U.S. Const. Amend. VII ..............................................................................52

9 U.S.C. § 3 .................................................................................10, 14, 62

9 U.S.C. § 4 .................................................................................................64

29 U.S.C. § 404(a)(1)(B) ...............................................................................9

29 U.S.C. § 1002(21)(A)(iii).........................................................................55

29 U.S.C. § 1132(a)(2) ...............................................................12, 31, 41, 51, 60

29 U.S.C. § 1132(a)(3) ..........................................................................*passim*

29 U.S.C. § 1104(a).......................................................................................9

29 U.S.C. § 1106(b)(1)..................................................................................9

29 U.S.C. § 1109(a).......................................................................................9

29 U.S.C. § 1106(a)(1)(D) .............................................................................9

29 U.S.C. § 1106(b)(3)...................................................................................9

*Aetna Life Ins. Co. v. Aramark Servs. Inc. et al.,*
No. 3:24-cv-00272-SRU (D. Conn. Mar. 29, 2024), ECF No. 36.................11

*Aetna Life Ins. Co. v. Aramark Servs. Inc. et al.,*
No. 3:24-cv-00272-SRU (D. Conn. Mar. 29, 2024), ECF No. 36-1 .............11

*Aetna Life Ins. Co. v. Aramark Servs. Inc., et al.,*
No. 3:24-cv-00272-SRU (D. Conn. Apr. 19, 2024), ECF No. 37 .................34

*Dispute*, BLACK'S LAW DICTIONARY (12th ed. 2024) ........................................38

*Controversy*, BLACK'S LAW DICTIONARY (12th ed. 2024)................................38

*Except*, Collins Dictionary,
https://www.collinsdictionary.com/us/dictionary/english/except ...............33

*Except*, OXFORD LEARNER'S DICTIONARY,
https://www.oxfordlearnersdictionaries.com/us/definition/
American English/except_2........................................................................33

Fed. R. Civ. Proc. 12(b)(1) ......................................................................11

Fed. R. Civ. Proc. 12(b)(6) ......................................................................11

R-7, *Commercial Arbitration Rules & Mediation Procedures*, AM.
ARB. ASS'N (Sept. 1, 2022), https://www.adr.org/sites/default/files/
Commercial_Rules_Web.pdf.................................................................21

R-49(a), *Commercial Arbitration Rules & Mediation Procedures*,
AM. ARB. ASS'N (Sept. 1, 2022), https://www.adr.org/sites/default/
files/Commercial_Rules_Web.pdf ......................................................40

## INTRODUCTION

Appellees Aramark Services, Inc. f/k/a Aramark Corporation, Aramark Services, Inc. Group Health Plan, Aramark Uniform Services Group Health and Welfare Plan (collectively with Aramark Services, Inc. Group Health Plan, the "Plans"); and Aramark Benefits Compliance Review Committee (all Aramark Appellees, collectively, "Aramark") filed a complaint against Aetna Life Insurance Company ("Aetna") (together, the "Parties") because Aetna caused Aramark to overpay for employee medical care and imposed unreasonable fees.  Aetna's misconduct cost Aramark millions of dollars. Aetna owes Aramark fiduciary obligations of loyalty and care as a fiduciary under the Employee Retirement and Income Security Act ("ERISA"), and Aetna's breaches of those duties—which are detailed in Aramark's First Amended Complaint (the "Texas Action")—caused Aramark's harm.

This appeal, however, is not about the merits of Aramark's claims.  The question before the Court is whether the Eastern District of Texas (the "Trial Court") erred in denying Aetna's Motion to Stay Proceedings Pending Arbitration (the "Motion") brought pursuant to Section 3 of the Federal Arbitration Act ("FAA").  Aetna moved for an order staying the Trial Court

1

proceeding while, simultaneously, it filed a petition to compel arbitration (the "Petition") in a different venue: the District of Connecticut.

As the Trial Court correctly held, Aetna's attempt to forum shop and avoid the first-filed Texas Action did not deprive the Trial Court of jurisdiction.  Under Section 3 of the FAA, a stay should only be granted when the court is "satisfied that the issue involved in such suit or proceeding [wa]s referable to arbitration."  In other words, Aetna's Motion required the Trial Court to assess whether Aramark's claims were subject to mandatory arbitration under the Parties' January 1, 2008 Master Services Agreement, MSA-700141 (the "Agreement").  (*See* ROA.511.)  The Agreement contains an arbitration provision in Section 15 (the "Arbitration Provision"), which provides:

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules ("Rules") …. The arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages.

2

(ROA.517.)  The Arbitration Provision contains exclusionary language (the "Exclusionary Clause") that excludes from mandatory arbitration claims seeking "temporary, preliminary, or permanent injunctive relief or any other form of equitable relief."  (ROA.517.)

The Trial Court correctly denied Aetna's Motion, finding that: (i) the Parties did *not* unmistakably or clearly delegate the question of arbitrability to an arbitrator; (ii) the "Exclusionary Clause" carved out from the scope of mandatory arbitration equitable claims; and (iii) the ERISA claims asserted against Aetna, as the Plans' fiduciary, were equitable.

First, the Arbitration Provision does not "clearly and unmistakably" delegate the question of arbitrability to an arbitrator.  Although Aetna is correct that incorporation of the American Arbitration Association ("AAA") Commercial Rules ("AAA Rules") *can* satisfy the "clear and unmistakable" standard, Aetna disregards the critical limitation on that rule: where the same sentence both incorporates the AAA Rules *and* limits the scope of arbitration, the provision does not evince a "clear and unmistakable" intent to delegate arbitrability to an arbitrator.  The syntax Aetna chose when it drafted the Arbitration Provision directly contradicts the interpretation that Aetna endorses now.

3

Second, the plain terms of the Aetna-drafted Arbitration Provision exclude from mandatory arbitration those controversies and claims seeking equitable relief.  The *main clause* of the Arbitration Provision provides that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof … shall be settled by binding arbitration[.]"  (ROA.517.)  The Exclusionary Clause modifies the main clause by identifying those claims and controversies that are *not* subject to mandatory arbitration, *e.g.*, equitable claims.  (*See* ROA.517.)  Previously, in a different case, Aetna successfully argued that the *same* language should be interpreted to mean that claims *seeking* equitable relief are not arbitrable.  It cannot credibly argue the contrary here.

Third, Aramark's ERISA claims are equitable under binding Supreme Court and Fifth Circuit precedent.  The Supreme Court's decision in *Amara* and the Fifth Circuit's decision in *Gearlds* dictate that claims against ERISA fiduciaries for breach of fiduciary duty are equitable.  Aetna's misplaced reliance on a Fourth Circuit decision that misconstrues Supreme Court precedent should be given little weight.  Courts around the country have disregarded that decision and continue to follow *Amara* and the governing

principle that ERISA claims for breach of fiduciary duty asserted against a fiduciary are equitable.

Finally, the Trial Court did not abuse its discretion by ruling on the Motion *Aetna itself filed*.  In response to Aetna's informal request that the Trial Court refrain from ruling on the Motion and defer to the District of Connecticut, Aramark argued that the Trial Court, as the first-filed court, should rule on the Motion.  The Trial Court expressly invoked the first-to-file rule in deciding the Motion.  (*See* ROA.300.)  While Aetna may not agree, the Trial Court's invocation of the first-to-file rule was not an abuse of discretion.

Aramark respectfully requests that the Court deny Aetna's appeal in its entirety.

## COUNTERSTATEMENT OF ISSUES PRESENTED

1.      Whether, in denying the FAA Section 3 Motion, the Trial Court correctly concluded that the Texas Action was not referable to arbitration because: (i) the question of arbitrability was not clearly and unmistakably delegated to the arbitrator; (ii) the Arbitration Provision does not mandate the arbitration of claims seeking equitable relief; and (iii) Aramark's ERISA claims against Aetna are equitable.

2.      Whether, as the first-filed court, the Trial Court abused its discretion when it resolved the FAA Section 3 Motion filed by Appellant.

## S<small>TATEMENT OF THE</small> C<small>ASE</small>

## I.     Factual Background

Aramark, a national provider of food services, facilities, and uniform services, employs more than 260 thousand Americans, including workers in dozens of universities, stadiums, and medical facilities across Texas. Aramark's employees depend on it for access to affordable health coverage.

Aramark's Plans cover tens of thousands of employees and their family members (the "Plan Participants").   Like most Fortune 500 companies, Aramark does not purchase traditional fully insured health insurance for its employees.   Rather, Aramark pays the cost of medical care for its employees and allocates funds for that purpose.   Aramark's Plans are "self-funded," meaning Aramark is responsible for paying all covered participants' medical costs.   Aramark pays those medical costs with contributions from employees and its own contributions.   Because Aramark self-funds the Plans, it alone bears the risk if employees' medical care costs exceed expectations.

Because employers like Aramark lack the expertise to administer (and navigate) the medical claims review, adjudication, and payment process, they engage Third Party Administrators (a "TPA" or "TPAs").   TPAs have experience with processing, adjudicating, and paying claims, and provide

7

access to their network of medical providers.  Employers typically compensate TPAs with a flat fee per participant.

In 2017, Aramark engaged Aetna to serve as a TPA of the Plans.  (*See* ROA.511.)  The Agreement contains an Arbitration Provision requiring that all claims relating to the Agreement, *other than those seeking equitable relief* be arbitrated in Connecticut:

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, *except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief*, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules ("Rules") …. The arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages.

(ROA.517 (emphasis added).)

As TPA of the Plans, "Aetna exercises discretionary authority and control respecting management of the Plans and the disposition of the Plans' assets," rendering Aetna a "functional fiduciary" under ERISA.  (ROA.22.)  As such, "Aetna owes ERISA-imposed fiduciary duties to Aramark," to the Plans, and to the Plan Participants "to preserve the Plans' assets," "disclose fully its

actions and any compensation it was taking for its services," and "discharge its obligations in accordance with the terms of the Plans' documents." (ROA.18, 43, 46; *see also* 22–25 (identifying Aetna as "a fiduciary under ERISA Section 404(a)(1)(B)" and outlining Aetna's duties "[a]s a fiduciary" under the Agreement).)  Aetna does not dispute that it is an ERISA fiduciary.

Aetna stole millions from the Plans, in gross violation of its fiduciary duties.

## II.   Procedural History

Aramark filed suit against Aetna in the Trial Court on September 27, 2023, and filed the First Amended Complaint on December 22, 2023.  (*See* ROA.17, 499.)  Aramark sought equitable relief for breach of fiduciary duty under ERISA (29 U.S.C. §§ 1104(a), 1106(b)(1), and 1109(a)) and prohibited transactions under ERISA (29 U.S.C. §§ 1106(a)(1)(D), 1106(b)(3), and 1109(a)) (together, the "Claims").  (*See* ROA.43–47.)  Aramark filed its complaint in court because the Agreement expressly provides that claims and controversies seeking "temporary, preliminary, or permanent injunctive relief

or any other form of equitable relief" are not subject to mandatory arbitration. (ROA.517.)

Two days before Aetna's March 1, 2024 deadline to respond to the First Amended Complaint,[1] Aetna filed the Petition to compel arbitration of Aramark's Claims in the United States District Court for the District of Connecticut (the "Connecticut Action"). (*See* ROA.571–79.)

Aetna responded to the First Amended Complaint in the Texas Action by seeking a stay pending arbitration pursuant to Section 3 of the FAA. (*See* ROA.564–85.) Aetna's gamesmanship put the same arbitrability questions before two separate district courts[2]: (1) whether the Arbitration Provision requires arbitrability to be decided by an arbitrator; (2) whether the "Exclusionary Clause" excludes equitable claims from mandatory arbitration; (3) whether Aramark's ERISA claims are "equitable"; and (4) whether the Court erred in exercising its discretion to stay the first-filed action. (*Id.*; ROA.571–79.)

---

[1]    Aetna filed an unopposed motion seeking, and was granted, a 45-day-extension of its time to answer until March 1, 2024. (ROA.54.)

[2]    Aetna's parallel Motion *required* the Trial Court to decide arbitrability. 9 U.S.C. § 3 (The court "shall" stay the action "on application of one of the parties" if "satisfied that the issue involved … is referable to arbitration.").

Aramark opposed both the Petition and Motion.  On March 29, 2024, Aramark filed a motion to stay, dismiss, or transfer the Petition.  (*See* Respondents' Motion to Stay, Dismiss, or Transfer in Favor of the First-Filed Action in the Eastern District of Texas Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *Aetna Life Ins. Co. v. Aramark Servs. Inc. et al.*, No. 3:24-cv-00272-SRU (D. Conn. Mar. 29, 2024), ECF No. 36.)  In so moving, Aramark cited: (i) the plain language of the Arbitration Provision's Exclusionary Clause, which does not delegate questions of arbitrability involving equitable claims to an arbitrator and carves out equitable claims from mandatory arbitration; (ii) controlling Supreme Court and Fifth Circuit precedent that establish that Aramark's ERISA claims are equitable; (iii) Aetna's previous argument that identical arbitration language meant that ERISA claims are not subject to mandatory arbitration; and (iv) the first-to-file rule, which dictates that the Texas Action should proceed over the Connecticut Action.  (*See* Respondents' Memorandum of Law in Support of Their Motion to Stay, Dismiss, or Transfer in Favor of the First-Filed Action in the Eastern District of Texas Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *Aetna Life Ins. Co. v. Aramark Servs. Inc. et al.*, No. 3:24-cv-00272-SRU (D. Conn. Mar. 29, 2024), ECF No. 36-1.)

11

On April 26, 2024, the Trial Court denied Aetna's Motion. (ROA.299–307.) Interpreting the Arbitration Provision, the Trial Court rejected Aetna's assertion that an arbitrator must resolve questions of arbitrability because "the parties did not clearly and unmistakably delegate all threshold issues of arbitrability to the arbitrator." (ROA.302.) The Trial Court rejected Aetna's assertion that the Exclusionary Clause did not carve out claims seeking equitable relief, explaining that "[t]he plain language and most natural reading of the Arbitration Provision is that the parties agreed to delegate arbitrability to the arbitrator … except those seeking any form of equitable relief, which are carved out in the same sentence." (ROA.302.) And the Trial Court rejected Aetna's arguments that Aramark's claims were not equitable, explaining that "Aramark's §§ 1132(a)(2) and (a)(3) claims under ERISA for monetary damages are properly equitable and therefore are not subject to mandatory arbitration" because Fifth Circuit precedent provides that "compensatory money damages under § 1132(a)(3) are a potential equitable remedy." (ROA.305.) The Trial Court further ruled that "[t]he parties do not dispute that the case before this Court was filed before Aetna filed its action in the District of Connecticut, and is the first filed case." (ROA.300.)

12

On May 2, 2024, Aetna filed its Notice of Appeal.  (ROA.309.)  On August 2, 2024, the District of Connecticut stayed the Petition pending this Court's decision.  (ROA.727–31.)

## SUMMARY OF THE ARGUMENT

The Trial Court correctly denied Aetna's Motion seeking a Section 3 stay because Aramark's claims are not arbitrable. The FAA does not require parties to arbitrate claims they have not agreed to arbitrate. Nor does it prevent parties from excluding certain claims from arbitration. *See, e.g., AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

First, arbitrability was not clearly and unmistakably delegated to an arbitrator. Under Supreme Court precedent, courts must decide arbitrability unless the agreement evinces a "clear and unmistakable" intent to delegate that question to the arbitrator. *See AT&T*, 475 U.S. at 649. Any ambiguity as to the Parties' intent must be construed *against* delegation.

The Agreement does not reflect a clear and unmistakable intent to delegate arbitrability to an arbitrator. While incorporation of the AAA Rules can satisfy this standard, where an arbitration provision contains carve-out language that arguably covers the at-issue dispute, it is not unmistakably clear that the parties intended to delegate arbitrability to an arbitrator. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031–32 (2d Cir. 2014).

14

The Arbitration Agreement and Exclusionary Clause mirror those at issue in *Archer*.  As in *Archer*, the Exclusionary Clause is in the same sentence incorporating the AAA Rules, suggesting that the carve-out also applies to the delegation clause.  At a minimum, the delegation clause is not unmistakably clear.  Aetna cites no bases for reversing *Archer*.

Second, the Arbitration Provision expressly carves out claims seeking equitable relief from mandatory arbitration.  The only reasonable reading of the Arbitration Provision is that the Exclusionary Clause modifies the phrase "controvers[ies] or claim[s]" such that, read together, the Arbitration Provision carves out from mandatory arbitration claims that seek equitable relief.

Aetna's contention that the Exclusionary Clause only limits the remedies the arbitrator can grant is without support.  Aetna's proffered interpretation would render the Exclusionary Clause superfluous, an outcome directly at odds with basic principles of contract interpretation.  *See United Illuminating Co. v. Wisvest-Connecticut LLC*, 791 A.D.2d 546, 552 (Conn. 2002) ("The law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous.").  And if any doubt exists, in a different matter interpreting the very same language, Aetna itself

15

has argued successfully for Aramark's proffered interpretation. (*See* ROA.130.)

Third, under controlling Supreme Court and Fifth Circuit precedent, Aramark's ERISA claims for breach of fiduciary duty seek equitable relief sounding in surcharge—a traditional equitable remedy under trust law. The Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), and the Fifth Circuit's decision in *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448 (5th Cir. 2013), hold that claims against ERISA fiduciaries for breach of fiduciary duty, including those seeking monetary relief, are equitable. There is no dispute that, under ERISA, Aetna owes fiduciary duties to the Plans.

Aetna's overreliance on *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), and *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), is misplaced. Those cases involve claims against non-fiduciaries and separate "tracing" issues specific to the equitable nature of liens. A clear majority of Circuit Courts that have examined this issue agree that ERISA claims brought against fiduciaries are equitable under *Amara* and its progeny.

16

Further, the outlier decision relied on by Aetna—*Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023)—misreads relevant Supreme Court precedent.  As the dissent in *Rose* explains, *Amara* is still binding for the proposition that ERISA claims for breach of fiduciary duty *against a plan fiduciary* seek equitable relief.  *Rose*, 80 F.4th at 505 (Heytens, J., concurring in part and dissenting in part).  Indeed, *Amara* is the only Supreme Court case to address the equitable nature of such claims and it held such claims were equitable.

Aetna previously championed the *Amara* consensus view, including but not limited to, in *Group 1 Automotive, Inc. v. Aetna Life Insurance Co.*, No. 4:20-cv-1290 (S.D. Tex. Apr. 10, 2020), where Aetna argued ERISA claims are equitable and not arbitrable.  (*See* ROA.130.)  Aetna took that position in *Group 1 after* the Supreme Court's decision in *Montanile*, which Aetna now claims overruled *Amara*.

Lastly, the Trial Court did not abuse its discretion in deciding Aetna's Motion rather than deferring to the District of Connecticut.  In its briefing to the Trial Court, Aetna sought to have the Trial Court refrain from ruling on the Motion until after the District of Connecticut ruled on its Petition.  The Trial Court rejected that plea and invoked the first-to-file rule.  (*See* ROA.300.)

As the first-filed court, it had discretion to rule on the Motion, and properly did so.

Aramark respectfully requests that the Court deny Aetna's appeal.

## STANDARD OF REVIEW

1.     The Order denying Aetna's Motion pursuant to FAA § 3 and the Trial Court's findings that (i) Aramark's claims are not arbitrable; (ii) arbitrability was not clearly and unmistakably delegated to the arbitrator; (iii) claims seeking equitable relief are not subject to mandatory arbitration; and (iv) Aramark's ERISA claims seek equitable relief are reviewed *de novo*.  *See Tittle v. Enron Corp.*, 463 F.3d 410, 417 (5th Cir. 2006).

2.     The Trial Court's invocation of the first-to-file rule and decision to rule on the Motion are reviewed for abuse of discretion.  *See Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997) (failure to apply the first-to-file rule in support of motion to dismiss, transfer, or stay arbitration in favor of first-filed action in Oklahoma was an abuse of discretion).

## ARGUMENT

## I. THE TRIAL COURT CORRECTLY DECIDED THAT ARAMARK'S CLAIMS ARE NOT SUBJECT TO MANDATORY ARBITRATION

Because the Agreement does not clearly and unmistakably evince an intent to delegate the question of arbitrability to an arbitrator, the Trial Court correctly decided arbitrability. As this Court previously held, "[u]nless the parties *clearly and unmistakably* provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Archer*, 935 F.3d at 279 (emphasis added and internal quotations omitted). Who decides arbitrability turns on whether the arbitration agreement "clearly and unmistakably" evinces the parties' "'intent to have the arbitrator decide whether a given claim must be arbitrated.'" *Id.* (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016)). The Trial Court correctly held it does not.

Aetna argues an arbitrator should decide arbitrability because the Arbitration Provision incorporates the AAA Rules. But Aetna misapprehends the controlling case law. The AAA Rules provide "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to

the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."  R-7, *Commercial Arbitration Rules & Mediation Procedures*, AM. ARB. ASS'N (Sept. 1, 2022), https://www.adr.org/sites/default/files/Commercial_Rules_Web.pdf.  While the adoption of the AAA Rules (and R-7 in particular) can, under some circumstances, evince the requisite intent, the analysis does not end there.

In this Circuit, if there is *any ambiguity* regarding the parties' intent to delegate arbitrability to an arbitrator, the trial court must resolve arbitrability.  *See Archer*, 935 F.3d at 282 ("The parties could have unambiguously delegated th[e] question [of arbitrability], but they did not, and we are not empowered to re-write their agreement."); *Ultra Premium Servs. v. Kompaniya*, No. H-21-305, 2021 WL 4440323, at *3, *4 (S.D. Tex. Aug. 20, 2021) ("'[T]he question of arbitrability is a judicial determination for the court'" because the parties did not "clearly and unmistakably intend[] to delegate arbitrability to the arbitrator for claims for preliminary injunctive relief."); *see also NASDAQ*, 770 F.3d at 1031–32 (court resolves arbitrability because of "ambiguity as to the parties' intent to have questions of arbitrability … decided by an arbitrator").

The Arbitration Provision limits the scope of mandatory arbitration by expressly carving out controversies or claims seeking equitable relief. The key sentence of the Arbitration Provision reads:

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, *except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief*, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator *in accordance with the AAA's Commercial Arbitration Rules ("Rules")* …. The arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages.

(ROA.517 (emphasis added).) The Exclusionary Clause's location in the same sentence that incorporates the AAA Rules is dispositive. *See Archer*, 935 F.3d at 281. The Trial Court explained, "[t]he plain language and most natural reading of the Arbitration Provision is that the parties agreed to delegate arbitrability to the arbitrator in accordance with the AAA rules for all disputes except those seeking any form of equitable relief, *which are carved out in the same sentence*." (ROA.302 (emphasis added).) Taken together, the Arbitration Provision does not "'evince[ ] a clear and unmistakable intent to delegate arbitrability.'" (ROA.302–03 (citing *Archer*, 935 F.3d at 281–82).)

22

The Trial Court properly relied on this Court's decision in *Archer*, which rejected the very argument Aetna makes here: that an arbitration clause delegates the question of arbitrability to an arbitrator, regardless of carve-out language.    The carve-out provision in *Archer* excluded "actions seeking injunctive relief" in the same sentence that incorporates the AAA Rules:

> Any dispute arising under or related to this Agreement (*except for actions seeking injunctive relief* and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [ (AAA) ].

*Archer*, 935 F.3d at 277 (emphasis added).  "[T]he placement of the carve-out [] is dispositive;" "[t]he most natural reading," based on "the ordering of words," is "that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules." *Id.* at 281.  "The plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-out." *Id.* (emphasis in original).  The Court thus concluded the arbitration clause did not "evince[] a 'clear and unmistakable' intent to delegate arbitrability" as to claims within the carve-out. *Id.* at 282.

*Archer* is not an outlier. Courts consistently hold that where, as here, an arbitration clause combines exclusionary language with incorporation of the AAA Rules, "delegation" is not "unmistakably clear." In *NASDAQ*, the Second Circuit interpreted an arbitration clause with exclusionary language:

> *Except as may be provided in the NASDAQ OMX Requirements*, all claims, disputes, controversies and other matters in question between the Parties to this Agreement … shall be settled by final and binding arbitration….

*NASDAQ*, 770 F.3d at 1016 (emphasis added). The Second Circuit explained the "broad arbitration clause is subject to a qualifying provision that *at least arguably covers* the present dispute." *Id.* at 1031 (emphasis added). Accordingly, the court held "[t]he district court properly decided the question of arbitrability because the parties never clearly and unmistakably expressed an intent to submit that question to arbitration." *Id.* at 1035 (emphasis added); *see also DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 322 (2d Cir. 2021) ("[W]here there is a qualifying provision … that arguably excludes the present dispute from the scope of the arbitration agreement, that provision creates ambiguity regarding the parties' intent to delegate arbitrability to the arbitrator.") (citing *NASDAQ*, 770 F.3d at 1031); *J2 Res., LLC v. Wood River Pipe Lines, LLC*, No. 4:20-cv-2161, 2020 WL 4227424, at *11 (S.D. Tex. July

24

23, 2020) (explaining that delegation and arbitration clauses that "share the same qualifying language" require courts to resolve whether a particular claim should be arbitrated) (citing *Archer*, 935 F.3d at 277).

Aetna relies upon case law that predates this Court's ruling in *Archer* and is otherwise inapposite. Aetna cites *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir. 2012) for the proposition that "[i]ncorporating the AAA Rules constitutes 'clear and unmistakable' evidence that the parties also tasked arbitrators with resolving threshold questions about whether particular issues are subject to arbitration." (Appellant's Br. at 28 (citing *Petrofac*, 687 F.3d at 675).) Aramark does not dispute that an arbitration provision incorporating the AAA Rules *can* constitute a clear and unmistakable intent to have the arbitrator resolve arbitrability. *See Archer*, 935 F.3d at 280–81. But the actual arbitration language controls. Because the *Petrofac* agreement had no carve-out provision, *Petrofac*, and other opinions that interpret arbitration provisions without a carve-out provision, are inapplicable. *See id.*; *see also, e.g.*, *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 29–30 (1st Cir. 2021) (*Archer* and *NASDAQ* were "factually distinguishable" because they had "no express delegation clause, only an incorporation of AAA arbitration rules," and contained a "carve-out provision for certain actions and

disputes"); *Kubala*, 830 F.3d at 204 (no carve-out provision); *LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 466 (9th Cir. 2021) (no carve-out provision in the delegation clause sentence); *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 549, 553 (5th Cir. 2018) (same); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075–76 (9th Cir. 2013) (same); *In re Checking Acct. Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1254 (11th Cir. 2012) (same); *Davis v. SEVA Beauty, LLC*, No. C17-547 TSZ, 2017 U.S. Dist. LEXIS 148434, at *5–*8 (W.D. Wash. Sept. 13, 2017) (same); *Ally Align Health, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 755 (Ky. 2019) (same); *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 729–30 (Tex. 2023) (Busby, J., dissenting) (*Archer* and *DDK Hotels* "are distinguishable because they involved a different kind of agreement: an arbitration clause with a carve-out").

In *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, another case that pre-dates *Archer*, the Fifth Circuit held that "express incorporation" of the "AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." 748 F.3d 249, 262–63 (5th Cir. 2014). The *Archer* opinion addressed *Crawford* and found the carve-out was

materially different because it appeared in a separate sentence from the delegation clause:

> Any and all disputes in connection with or arising out of the Provider Agreement by the parties will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association ….
>
> Arbitration shall be the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement; provided, however, that nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law …

*Id.* at 256; *see Archer*, 935 F.3d at 281. In so ruling, the Court rejected the *Archer* defendants' argument "that *Crawford* controls and the only difference between that arbitration agreement and the one here is syntax—the ordering of words." *Archer*, 935 F.3d at 281. The Fifth Circuit explained that syntax "is precisely the point—the placement of the carve-out here is dispositive." *Id.* Unlike in *Archer*, "[t]here was no exclusionary language in the same sentence as the delegation clause [in *Crawford*]." *Ultra Premium*, 2021 WL 4440323, at *4.

Aetna's reliance on *Arnold* fairs no better. In *Arnold*, this Court applied *Petrofac* and *Crawford* to hold that an arbitration provision incorporating the

27

AAA Rules evinced a clear intent to delegate the question of arbitrability. 890 F.3d at 553. While the provision included a carve-out for "small claims court if they qualify," the carve-out was not in the same sentence as the delegation clause *nor did the plaintiff contend his claims fell within the carve-out. Id.* (emphasis added). The court went on to recognize that incorporation of the AAA Rules alone is not dispositive. Citing its decision in *Archer*,[3] the Court explained "[w]e do not foreclose that a contract might incorporate the AAA rules but nonetheless otherwise muddy the clarity of the parties' intent to delegate." *Id.* The Court was simply not persuaded that the provision in *Arnold* was "such a contract." *Id.*

Aetna's reliance on *East El Paso Physicians' Medical Center, LLC v. Aetna Health Inc.*, No. 16-cv-44-KC, 2017 WL 876313, at *1 (W.D. Tex. Mar. 2, 2017), is similarly misplaced. Decided prior to *Archer*, the *East El Paso* court relied on *Petrofac* to hold that Aetna's arbitration provision requires

---

[3]    After *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488 (5th Cir. 2017) was reversed on other grounds and remanded back to the Fifth Circuit, the Court reaffirmed its decision in *Archer*, 935 F.3d 274, holding that incorporation of the AAA Rules does not evince an unambiguous intent to delegate arbitrability over claims carved out of the delegation clause. To be clear, on remand, this Court did not apply the wholly groundless standard in its decision in *Archer*, 935 F.3d 274.

arbitrability to be decided by the arbitrator.  *See East El Paso*, 2017 WL 876313, at \*4–\*5.  *Archer*'s ruling on carve-out provisions effectively overruled the holding in *East El Paso*.  The trial court in *East El Paso* also applied the now abrogated "wholly groundless" standard, *i.e.*, that delegation clauses are enforced unless the claim of arbitrability is wholly groundless.  The Supreme Court overruled this standard in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("We conclude that the 'wholly groundless' exception is inconsistent with the text of the [FAA] and with our precedent.").

Unable to find support in this Circuit, Aetna cherry-picks a handful of out-of-circuit cases to challenge *Archer*.  But again, most of Aetna's cited authority is inapposite because it does not involve carve-out provisions, *see, e.g.*, *Kubala*, 830 F.3d at 204, or does not involve carve-out provisions in the same sentence as the delegation clause, *see e.g.*, *Oracle*, 724 F.3d at 1075–76.

Moreover, other out-of-circuit cases relied upon by Aetna expressly endorse *Archer*.  For example, in *Blanton v. Domino's Pizza Franchising LLC*, the Sixth Circuit analyzed an arbitration clause with a provision carving out certain claims "from the agreement in general, not from the provision that incorporates the AAA Rules."  962 F.3d 842, 848 (6th Cir. 2020).  The court distinguished that provision from the syntax of the provision in *Archer*,

explaining that if the arbitration agreement in *Blanton* had instead "said that 'the arbitration *(except as to antitrust claims against non-signatories)* will be conducted in accordance with then-current [AAA Rules],'" then one might conclude, as in *Archer*, that it incorporates the AAA rules and delegates arbitrability for all disputes except those under the carve-out.  *Id.* (quoting *Archer*, 935 F.3d at 281) (emphasis in original).

Similarly, Aetna cites cases supporting *Archer*'s holding that including a carve-out in the delegation clause is dispositive.  In the case *In re Checking Account Overdraft Litigation*, the parties expressly agreed that "[a]ny issue regarding whether a particular dispute or controversy is … subject to arbitration will be decided by the arbitrator."  674 F.3d at 1254.  Similar to the provision in *Crawford*, the sentence *after* the delegation clause contained carve-out language.  *Id.*  The court explained that the carve-out did not apply to the delegation clause in the preceding sentence because such an interpretation would require "rewrit[ing] the beginning of the delegation provision from 'Any issue' to 'Any issue, except an issue involving whether the relief request is not expressly stated as a dollar amount."  *Id.* at 1256.

Because the Exclusionary Clause carves out equitable claims, and does so in the same sentence that incorporates the AAA Rules, the delegation

clause does not "clearly and unmistakably" evince the Parties' intent to delegate arbitrability to an arbitrator. *See Archer*, 935 F.3d at 281–82.

## II. THE ARBITRATION PROVISION EXCLUDES ALL CONTROVERSIES OR CLAIMS SEEKING EQUITABLE RELIEF

The FAA "'does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.'" *Archer*, 935 F.3d at 282 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).    Contrary to Aetna's assertions, there is no presumption of arbitrability where the language of the agreement is unambiguous.  "[I]t is the language of the contract that defines the scope of disputes subject to arbitration," not public policy.[4]    *EEOC v.*

---

[4]    For this reason, the *Amicus Curiae* Brief of AHIP should be disregarded.  Dkt. No. 79-2, at 13–15.  AHIP urges this Court to disregard the Arbitration Provision language in favor of public policy.  AHIP is simply wrong.    Notwithstanding the FAA's policy favoring arbitration where arbitration language is unambiguous, that unambiguous language must control.  Here, the Arbitration Provision dictates that arbitrability be resolved by the court and that claims and controversies seeking equitable relief are not subject to mandatory arbitration.  (*See* ROA.300 ("Aramark's §§ 1132(a)(2) and (a)(3) claims under ERISA for monetary damages are properly equitable and therefore are *not subject to mandatory arbitration*.") (emphasis added).) In arguing otherwise, the *Amicus* brief tellingly makes no mention of this Court's ruling in *Archer*, which is controlling Fifth Circuit precedent that

31

*Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[C]ourts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties."). A policy favoring arbitration "cannot serve to stretch a contractual clause beyond the scope intended by the parties." *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, 918 F.3d 450, 454 (5th Cir. 2019) (internal quotations omitted).

The plain and unambiguous language of the Arbitration Provision establishes that the Parties intended to limit the scope of "controvers[ies] or claim[s]" that are subject to mandatory arbitration. (ROA.517.) "[O]rdinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). Contracts are to be interpreted according to their "plain and unambiguous" terms. *Cruz v. Visual Perceptions, LLC*, 84 A.3d 828, 834 (Conn. 2014); *see Ottemann v. Knights of Columbus*, 36 F.4th 600, 605 (5th Cir. 2022) ("If a contract's language is unambiguous, its

---

focused its analysis on the *contract language* in holding that, *inter alia*, arbitrability was not clearly and unmistakably delegated to an arbitrator.

interpretation is a matter of law and 'the words of the contract must be given their natural and ordinary meaning.'") (quoting *Cruz*, 84 A.3d at 834).

Aetna asks this Court to ignore the plain language of the Agreement through a contrived reading of the Exclusionary Clause that disregards basic tenets of English. The Exclusionary Clause functions like an appositive. The *main clause* of the arbitration provision provides that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof … shall be settled by binding arbitration[.]" (ROA.517.) The Exclusionary Clause modifies the main clause by creating an exception.[5] The "except for" clause identifies certain controversies and claims—those seeking equitable relief—that fall outside the arbitration requirement and can be pursued in Court. (*See* ROA.517.)

---

[5]    The Exclusionary Clause starts with the preposition "except," meaning "with the exclusion of". *Except*, Collins, https://www.collinsdictionary.com/us/dicti onary/english/except. The word "except," when "used before you mention something [] makes a statement not completely true" or "introduce[s] the only thing or person that a statement does not apply to." *Except*, OXFORD LEARNER'S DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/american_ english/except_2; *Except*, Collins, https://www.collinsdictionary.com/us/dicti onary/english/except.

Aetna acknowledged this linguistic construct in the Connecticut Action when it wrote:

> The Arbitration Provision states "Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief …." *The second part of the Arbitration Provision—the Equitable Relief Provision—makes clear that the first part applies "except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief."*

(Petitioner's Response in Opposition to Respondents' Motion to Stay, Dismiss, or Transfer at 13, *Aetna Life Ins. Co. v. Aramark Servs. Inc., et al.*, No. 3:24-cv-00272-SRU (D. Conn. Apr. 19, 2024), ECF No. 37 (emphasis added).) Other than attempting to rebrand the Exclusionary Clause, Aetna's submission does not meaningfully dispute that the Exclusionary Clause modifies the main clause.

Conceding the Exclusionary Clause must have some meaning, Aetna attempts to narrow its application to "remedies" the arbitrator can grant. But the main clause does not discuss remedies; it discusses "controvers[ies] or

claim[s]."[6]  (ROA.517.)  So, the Exclusionary Clause does not modify the remedies an arbitrator can grant; it necessarily modifies the subject of the main clause—"controvers[ies] or claim[s]" subject to mandatory arbitration. (ROA.517.)  Aetna's proffered interpretation finds no support under basic English grammar rules.

The cases Aetna cites do not support its conjured interpretation.  The arbitration agreement in *Information Systems Audit & Control Association, Inc. v. Telecommunications Systems, Inc.* merely provided that all disputes must be arbitrated "[w]ithout prejudice to either Party's right to seek equitable relief."  No. 17 C 2066, 2017 WL 2720433, at *1, *5 (N.D. Ill. June 23, 2017).  Similarly, the clause in *GateGuard, Inc. v. MVI Systems LLC* read:

> Notwithstanding anything to the contrary contained herein … any dispute, claim or controversy arising out of or relating to the [agreement] … will be settled by binding arbitration, except that GateGuard alone retains the right to seek injunctive or other equitable relief in a court of competent jurisdiction …

---

[6]  Accordingly, cases cited by Aetna involving provisions limiting an arbitrator's power to grant certain forms of relief are not relevant.  *See, e.g.*, *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 194–95 (4th Cir. 1991) (addressing arbitrator's "authority to award monetary damages"); *U-Haul Int'l, Inc. v. Hire a Helper, LLC*, No. 08-cv-01801-H, 2009 WL 10671527, at *2–*3 (S.D. Cal. Apr. 13, 2009) (interpreting clause stating "[t]he arbitrator shall at no time award injunctive relief").

No. 19-cv-2472, 2021 WL 4443256, *2 (S.D.N.Y. Sept. 28, 2021). These two provisions, like the provision in *Crawford*,[7] do not carve out certain types of claims subject to mandatory arbitration. They are distinguishable. Unlike the language in *Archer* and here, "notwithstanding" language "does not explicitly except claims for equitable relief from the scope of the broad arbitration clause." *DXP Enters., Inc. v. Goulds Pumps, Inc.*, No. H-14-1112, 2014 WL 5682465, at *4 (S.D. Tex. Nov. 4, 2014). As a result, courts find such provisions "do not sufficiently show that claims for [equitable relief] are nonarbitrable." *Id.* at *7.

Aetna's other cases are inapposite. For example, while the arbitration agreement in *Plump Engineering, Inc. v. Westshore Design Engineers, P.C.* "exclude[d] 'claims for injunctive relief,'" it did not "exclude 'actions' or 'disputes' asserting claims for injunctive relief." No. 1:18-cv-00027, 2018 WL 3730168, at *6 (N.D.N.Y. Aug. 6, 2018). The plaintiff in *Plump* asserted several claims seeking legal relief and, for each claim, also requested injunctive relief precluding defendants from committing additional violations

---

[7]     "[N]othing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law …." *Archer*, 935 F.3d at 280 n.26 (citing *Crawford* provision).

or benefiting from the violations alleged. *Id.* at *4–*5. The court acknowledged the difference between "claims" and "relief," but never endorsed Aetna's argument that an underlying claim is arbitrable even if the requested relief is not. *See id.* at *6. Instead, the court rejected the proposition that "a claim for injunctive relief renders unarbitrable all other claims for non-injunctive relief" and compelled arbitration over the underlying substantive claims, each of which *also sought* non-injunctive relief. *Id. Plump* is distinguishable.

Unlike the carve-out in *Plump* and other such agreements that do not exclude "disputes" or "actions" for equitable relief,[8] the Exclusionary Clause here excludes both "claim[s]" *and* "controvers[ies]" seeking equitable relief. (ROA.517.) The term "controvers[ies]" used in the Arbitration Provision is synonymous with the terms "disputes" and "actions" found in other

---

[8]     Similarly, in *Proulx v. Brookdale Living Communities Inc.*, the court interpreted a provision excluding claims "for injunctive or other equitable relief." 88 F. Supp. 3d 27, 33 (D.R.I. 2015). While the Court compelled arbitration over claims seeking legal relief, it also held that, "[b]ased on the plain language of the Agreement, it is clear that Plaintiff's claims for equitable relief are excluded from the arbitration provision." *Id.* at 33–34.

agreements.[9]  Therefore, as in *Archer*, the Court should look to whether any part of the controversy seeks equitable relief.  *See Archer*, 935 F.3d at 283 ("The mere fact that the arbitration clause permits Archer to avoid arbitration by adding a claim for injunctive relief does not change the clause's plain meaning.").

Even assuming, *arguendo*, the Exclusionary Provision applies only to "claims" and not "controversies," Aramark's ERISA claims seek only equitable relief.  This is a key distinction from *Plump*, in which each of the claims also (and primarily) sought legal relief.  As detailed in Section III, *infra*, Aramark's four ERISA claims are for equitable relief such that, even under the most restrictive reading of the Arbitration Provision, none of them are arbitrable.

---

[9]    *See Medve Energy Ventures, LLC v. Cypress Drilling LLC*, No. 6:18-cv-00082, 2018 WL 10517170, at *6 (W.D. La. June 19, 2018) (carve-out for "disputes" for intentional fraud brought the entire action outside the scope of arbitration provision).  The court's holding relied on the definition of "dispute" in Black's Law Dictionary, which is "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit."  *See id.*; *Dispute*, BLACK'S LAW DICTIONARY (12th ed. 2024).  Black's Law Dictionary defines "controversy" as "[a] disagreement or a *dispute*."  *Controversy*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

Nor does Aetna's citation to "[o]ther parts" of the Agreement support its proffered interpretation. (Appellant's Br. at 30.)  Aetna urges the Court to read the phrase, "[t]he arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages," as "the flip side" of the Exclusionary Clause. (*Id.* at 30–31.)  But to do so would disregard a basic principle of contract interpretation that "militates against interpreting a contract in a way that renders a provision superfluous."  *United Illuminating*, 791 A.D.2d at 552.  A contract should be read to give effect to all of its provisions. *See O'Brien v. U.S. Fidelity & Guar. Co.*, 669 A.D. 1221, 1224 (Conn. 1996) ("When interpreting a contract, we must … give operative effect to every provision in order to reach a reasonable overall result."); *Spencer Trask & Co., Inc. v. Spencer Trask Collaborative Innovations, LLC*, No. FST-cv-166028288, 2016 WL 8115547, at *3 (Conn. Super. Ct. Oct. 19, 2016) ("The court is obligated to read a contract … in such a manner as to give effect to all of the provisions" and to not "render[ ] language surplusage.").[10] As Aetna acknowledges, the last sentence of the Arbitration Provision already

---

[10]    Aetna cites no authority for its assertion that the Exclusionary Clause should be interpreted to mean the same thing as other provisions in the Agreement.

limits the arbitrator's powers to award monetary relief from the broad authority to "grant any remedy or relief" provided for in the AAA Rules. *See* R-49(a), *Commercial Arbitration Rules & Mediation Procedures*, AM. ARB. ASS'N (Sept. 1, 2022), https://www.adr.org/sites/default/files/Commercial_Rules_Web.pdf ("The arbitrator may grant *any remedy or relief* that the arbitrator deems just and equitable and within the scope of the agreement of the parties[.]") (emphasis added). Thus the only way to give meaning and effect to the Exclusionary Clause is to reject Aetna's argument, and read it to exclude from mandatory arbitration those *claims* and *controversies* for equitable relief.

Foundational grammar rules and contractual interpretation rules compel the conclusion that the Exclusionary Clause excludes from mandatory arbitration those claims or controversies seeking equitable relief.

Aetna's newly proffered reading of the Exclusionary Clause is both a recent revelation and a complete flip-flop. Group 1 Automotive ("Group 1") filed an arbitration demand accusing Aetna of violating its fiduciary duties under ERISA and sought monetary relief, just as Aramark has here. (*See* ROA.130.) Aetna moved to dismiss Group 1's ERISA breach of fiduciary duty claims on the grounds that those claims sought "*equitable relief*" and were "*not*

40

*arbitrable*" under the arbitration provision. (ROA.130 (emphasis added).) The arbitrator agreed with Aetna, finding that "equitable claims are not arbitrable" under the arbitration agreement and concluded that "[b]ecause Group 1's claim for breach of fiduciary duty [under ERISA § 1132(a)(2)] seeks equitable relief, it is not arbitrable under the parties' agreement." (ROA.131–33.) The arbitration clause in the *Group 1* agreement is nearly identical to the Arbitration Provision before this Court:[11]

| Arbitration Provision | *Group 1* Arbitration Clause |
|---|---|
| Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, ***except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief,*** shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association … (ROA.517.) | Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof ***except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief***, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association …(ROA.131.) |

---

[11]     Both represent the standard language Aetna uses in its arbitration provisions. This is just another reason why the language should be construed as Aramark contends. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("[R]espondents cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it.").

Aetna cannot have it both ways. Nor should the Court countenance Aetna's effort to obtain a tactical advantage with a complete about-face on a clause that Aetna itself drafted. The meaning of the Exclusionary Clause is clear. The Court should decline Aetna's request to re-write it.

## III. ARAMARK'S ERISA CLAIMS SEEK EQUITABLE RELIEF

Under controlling Supreme Court and Fifth Circuit precedent, ERISA claims for breach of fiduciary duty seek equitable relief. In *Amara*, the Supreme Court held ERISA claims for breach of fiduciary duty brought against a plan fiduciary were equitable. *See* 563 U.S. at 442. The Fifth Circuit followed suit in *Gearlds*. 709 F.3d at 449, 452. *Amara* and its progeny are well-known to Aetna. In other matters it has consistently and successfully relied on those very cases to argue that ERISA claims are equitable. (*See, e.g.*, ROA.143 ("Plaintiff's ERISA claims are equitable ….") (citing *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 79 n.10 (3d Cir. 2012) ("ERISA § [1132](a)(3) authorizes only 'equitable relief ….'")).)

In a futile effort to avoid this controlling authority—not to mention the majority of Circuit Courts that follow *Amara*—Aetna presses a tortured application of *Mertens*, *Great-West*, and *Montanile*. These cases are facially distinguishable from *Amara* and *Gearlds* and inapplicable to Aramark's

claims because the "defendants in those cases were [not] fiduciaries, *as Aetna is in this case*." (ROA.306 (emphasis added).)

A.  Supreme Court and Fifth Circuit Precedent Dictate that ERISA Claims Brought Against a Fiduciary are Equitable Claims.

Under controlling Supreme Court and Fifth Circuit precedent, ERISA claims brought against plan fiduciaries are equitable. Prior to *Amara*, the Supreme Court decided two cases involving ERISA claims brought against *non-fiduciaries*: *Mertens* and *Great-West*. In *Mertens*, plan beneficiaries brought claims against a non-fiduciary actuary. *See* 508 U.S. at 250. The beneficiaries claimed the defendant was liable for knowingly aiding breaches of fiduciary duties committed by the plan fiduciary, even though the defendant was not a fiduciary. *Id.* at 251. The Court rejected this argument, holding that Congress intended "equitable relief" under § 1132(a)(3) to include "those categories of relief that were *typically* available in equity." *Id.* at 256 (emphasis in original).

The Court agreed non-fiduciaries could be liable in equity for aiding breach of fiduciary duty. Such relief was not available under ERISA against non-fiduciaries because ERISA defines a plan fiduciary "in *functional* terms of control and authority over the plan." *Id.* at 262 (emphasis in original).

43

ERISA eliminated "the common law's joint and several liability" for damages owed to the plan "on the part of persons who had no real power to control what the plan did." *Id.* Accordingly, monetary damages against *non-fiduciaries* were not equitable remedies available under § 1132(a)(3). *Id.* at 262–63.

Nearly ten years later, in *Great-West*, the Supreme Court was presented with an appeal by a third-party insurer of an ERISA plan that paid insurance proceeds to one of the insureds in connection with a car accident. 534 U.S. at 207–09. After the insured was awarded settlement proceeds in a separate personal injury lawsuit, which were placed in the possession of his attorney and in trust, the insurer sought reimbursement pursuant to a subrogation clause. *Id.* at 207. The Court addressed whether the insurer's claim was for equitable restitution, a remedy that was available "in certain cases at law, and in certain other in equity." *Id.* at 212. At equity, restitution was available through a "constructive trust or an equitable lien" to recover property that could "be traced to particular funds or property in the defendant's possession." *Id.* at 213. The Court held that the restitution claim sought legal relief, not equitable relief because the settlement proceeds were not in the insured's possession. *Id.* at 214. The Court distinguished equitable remedies under trust law, explaining that, although remedies against a beneficiary for money

44

due to the trust could traditionally be recovered against the beneficiary's interest in the trust, trustees had no "separate equitable cause of action [*against beneficiaries*] for payment from other moneys." 534 U.S. at 220.

*Amara* came before the Supreme Court in 2011 and presented a materially different question: whether ERISA claims brought against a *fiduciary* are equitable claims. 563 U.S. at 439. The *Amara* Court held ERISA claims for breach of fiduciary duty against a plan fiduciary sound in trust law, which is traditionally equitable. *Id.* at 442. Because the equitable remedy of "surcharge" traditionally "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary," the Court held that "the types of remedies the court entered here fall within the scope of the term 'appropriate equitable relief' in § [1132](a)(3)." *Id.*

The Court further clarified that merely because the requested relief was "money payment does not remove it from the category of traditionally equitable relief." *Id.* at 441. Rather, courts of equity "possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* at 441; *see also Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel.*

*Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 361 (5th Cir. 2014) ("[T]here are some instances in which equitable relief *can* result in monetary compensation for a plaintiff.") (citing *Amara*, 563 U.S. at 441) (emphasis in original).

In concluding ERISA breach of fiduciary duty claims against fiduciaries are equitable, the Supreme Court distinguished its rulings in *Mertens* and *Great-West* because they did not involve claims for breach of fiduciary *against plan fiduciaries*. *Amara*, 563 U.S. at 439 (explaining that, unlike *Great-West*, "a suit by a beneficiary against a plan fiduciary … is the kind of lawsuit that, before the merger of law and equity, respondents could have brought only in a court of equity, not a court of law"); *id.* at 442 (holding "insofar as an award of make-whole relief is concerned, the fact that the defendant in *this* case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference") (emphasis added).[12]

In 2013, the Fifth Circuit adopted *Amara*'s ruling on equitable surcharge in *Gearlds*. *See* 709 F.3d at 450. The plaintiff in *Gearlds* sought "to

---

[12]    *See also Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 878 (7th Cir. 2013) (explaining that *Amara* held that claims against fiduciaries "differed from both [*Mertens* and *Great-West*]").

recover the amount of insurance benefits that he [] lost as a result of the defendants' alleged breach [of fiduciary duty] and misrepresentations." *Id.* at 451.

As here, the plaintiff in *Gearlds* "did not expressly plead or argue 'surcharge,'" but instead requested "compensation for lost benefits and '[a]ny and all other damages and/or relief, equitable or otherwise, to which [he] may be entitled under federal law.'" *Id.* at 452. In reversing the district court's dismissal, the court held that "*Amara*'s pronouncements about surcharge as a potential remedy under § [1132](a)(3) should be followed." *Id.* The Court adopted *Amara*'s "critical" holding that the "defendant's position as a fiduciary was analogous to a trustee." *Id.* at 451; *see also Brown v. United of Omaha Life Ins. Co.*, 661 F. App'x 852, 860 (6th Cir. 2016) (plaintiff is "entitled to equitable relief under § [1132](a)(3) … such as surcharge") (citing *Amara*, 563 U.S. at 440–42); *Kenseth*, 722 F.3d at 878–79 (*Amara* "clarified that equitable relief may come in the form of money damages when the defendant is a trustee in breach of a fiduciary duty."); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 720–22 (8th Cir. 2014) (§ 1132(a)(3) claim seeking life insurance benefits was not "compensatory" because "*Amara* changed the legal landscape by clearly spelling out the possibility of an equitable remedy under

47

ERISA for breaches of fiduciary obligations by plan administrators"); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2014) (vacating district court judgment holding that "monetary relief was not available under *Mertens*" and remanding to decide whether the action was "'a suit by a beneficiary against a plan fiduciary,' for 'a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment,'" and "thus constituted 'appropriate equitable relief'") (quoting *Amara* at 563 U.S. at 439, 441) (internal citations omitted); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 n.11 (3d Cir. 2014) ("'[O]ther appropriate equitable relief' in § [1132](a)(3) may consist of 'monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.'") (quoting *Amara*, 563 U.S. at 441).

Three years after *Gearlds*, the Supreme Court decided *Montanile*, which, like *Mertens* and *Great-West* before it, involved ERISA claims *against a non-fiduciary*. 577 U.S. at 139. As in *Great-West*, the petitioner in *Montanile* was a plan fiduciary seeking to enforce a subrogation clause against a beneficiary (not a fiduciary) who had received a tort settlement. *Id.* Unlike in *Great-West*, the beneficiary had possession of the settlement funds but had already spent the money on non-traceable purchases such as food and travel.

48

*Id.* Without addressing equitable trust law, the Court reaffirmed *Mertens* and *Great-West* and held that the plan fiduciary did not have an equitable claim against the beneficiary's general funds. *Id.* at 145.[13]

In *Montanile*, the Court did not overrule or distinguish *Amara*. *Montanile* has no applicability to cases *against fiduciaries*, the "critical" distinction between *Amara* and earlier Supreme Court jurisprudence. The *Montanile* Court only briefly addressed *Amara* to refute the petitioner's argument that *Amara* should be read to overrule *Mertens* and *Great-West* in favor of a "broad interpretation of 'equitable relief' under § [1132](a)(3)," including claims against non-fiduciaries. *Id.* at 148 n.3. As the Supreme Court explained, *Amara* "reaffirmed" *Great-West*'s holding that for claims against a non-fiduciary, "relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were 'particular funds or

---

[13]    Unlike the equitable remedies available in *Amara* and *Gearlds*, the equitable lien in *Montanile* was contractual and did not implicate ERISA's roots in trust law. *See Cent. States*, 756 F.3d at 365 ("ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets.")

property in the defendant's possession.'"  *Montanile*, 577 U.S. at 148 n.3 (internal quotations removed).

The Southern District of Texas recently addressed these cases in *Harmon v. Shell Oil Co.*, No. 3:20-cv-0021, 2023 WL 2474503 (S.D. Tex. Mar. 13, 2023).   In *Harmon*, plaintiffs filed a complaint against their former employer asserting breaches of fiduciary duty arising under ERISA.  *Id.* at *1.  The question before the court—the right to a jury trial—hinged on whether the claims sought legal relief (jury trial) or equitable relief (no jury trial).  *Id.*  The plaintiffs sought a jury trial, arguing the claims were not equitable under *Montanile* because the ERISA claims did not target "specifically identifiable funds."  *Id.* at *2.  The District Court, citing *Gearlds*, rejected Plaintiffs' argument, explaining that the *Montanile* line of cases is inapplicable:

> [T]he [*Montanile*] line of precedent does not apply here.  In lawsuits involving ERISA claims against *fiduciaries*—like this case—it appears that it is of no import to the Supreme Court whether monetary remedies are targeted at specifically identifiable funds or at general assets.   Instead, the appropriate question asks whether the monetary remedies sought are for a breach of duty by a fiduciary.

*Id.* (citing *Amara*, 563 U.S. at 442) (emphasis in original).   As the Court explained, "[t]his case is in accordance with *Amara* because the monetary remedy sought by plaintiffs—recovery of losses to the Plan caused by Defendants' alleged breach of fiduciary duties—is analogous to a suit against a trustee for breach of duty." *Id.* at *3.

Although *Amara* did not address ERISA claims arising under § 1132(a)(2), it found such claims were likewise equitable.  The *Harmon* court explained that *Amara*'s reasoning does not hinge on the language of § 1132(a)(3).  *See id.* at *3.  "[N]owhere does *Amara* suggest that relief that is equitable under [§ 1132](a)(3) might be legal under [§ 1132](a)(2)." *Id.*  This is the view "in line with that of a majority of district courts considering ERISA claims against fiduciaries." *Id.* (collecting cases); *see also Divane v. Nw. Univ.*, No. 16 C 8157, 2018 WL 1942649, at *2 (N.D. Ill. Apr. 25, 2018) (holding "the relief plaintiffs seek in this § [1132](a)(2) suit is *equitable*") (emphasis added).

*Harmon* is not an outlier.  Since the *Montanile* decision, courts across the country continue to follow *Amara* and to hold ERISA claims brought

51

against plan fiduciaries seek equitable relief.[14]  *See, e.g.*, *Innova Hospital San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 733 (5th Cir. 2018) ("After the Supreme Court's decision in Amara, a 'surcharge'—a type of monetary remedy against a trustee—is a potential § 1132(a)(3) remedy under our precedent.") (citing *Gearlds*, 709 F.3d at 452); *In re DeRogatis*, 904 F.3d 174, 199 (2d Cir. 2018) ("The Supreme Court has interpreted this provision as making available 'those categories of relief that … were typically available in equity'" including "a monetary 'surcharge' to recompense 'a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment.'"); *Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 915 (11th Cir. 2022) ("[T]he Supreme Court's discussion in *Amara* is correct:

---

[14]     A minority view accepted by the Second Circuit espouses that requests for monetary relief are only equitable if they seek specific funds. *See Vellali v. Yale Univ.*, 662 F. Supp. 3d 238, 244 (D. Conn. 2023); *Garthwait v. Eversource Energy Co.*, No. 3:20-cv-00902, 2022 WL 17484817, at *2 (D. Conn. Dec. 7, 2022); *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2018 WL 4279466, *4 (S.D.N.Y. Sept. 6, 2018). Other courts have declined to follow this minority view because, *inter alia*, they rely on an outdated, inapplicable Second Circuit case, *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005), a non-ERISA and pre-*Amara* Seventh Amendment decision. *See, e.g.*, *Harmon*, 2023 WL 2474503, at *3 (holding that *Cunningham* and other dissenting cases "fail to convince me that *Amara* is not dispositive on this matter").

equitable surcharge is a typical equitable remedy that may be imposed on a fiduciary for a breach of fiduciary duty.").[15]

B.    Aramark's Claims for Monetary Relief are Equitable Under *Amara* and its Progeny.

Aramark's Claims seek equitable relief.   As in *Amara,* Aramark's ERISA claims against Aetna "concern[ ] a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)."  *Amara,* 563 U.S. at 439; *c.f.* ROA.24 (alleging that Aetna is a fiduciary of the Plans and owes fiduciary duties under ERISA akin to those a trustees owes a trust).  ERISA "typically *treats*" plan fiduciaries "as a trustee" and plans "as a trust."  *See Amara,* 563 U.S. at 439 (emphasis added).  Following this reasoning, plan assets must be administered on behalf of beneficiaries pursuant to fiduciary duties akin to those held by trustees and Aramark may seek equitable monetary remedies

---

[15]    *See also, e.g.,* *Powell v. Minn. Life Ins. Co.,* 60 F.4th 1119, 1123 (8th Cir. 2023); *Staropoli v. Metro. Life Ins. Co.,* No. 21-2500, 2023 WL 1793884, at *4 (3d Cir. Feb. 7, 2023); *Sullivan-Mestecky v. Verizon Commc'ns Inc.,* 961 F.3d 91, 102 (2d Cir. 2020); *Castillo v. Metro. Life Ins. Co.,* 970 F.3d 1224, 1229 (9th Cir. 2020); *Teets v. Great-West Life & Annuity Ins. Co.,* 921 F.3d 1200, 1224 (10th Cir. 2019); *Brown,* 661 F. App'x at 860.

against Aetna for breach of fiduciary duties to make "a trust or beneficiary" whole. *Id.* at 444.

Aetna does not dispute it is an ERISA fiduciary and owes fiduciary obligations to Aramark. (*See* ROA.303, 306 (Trial Court noted "Aetna's status as an ERISA fiduciary" is "undisputed") (citing ROA.548–69, 100–23).)[16] Aetna is a functional fiduciary under ERISA. As a functional fiduciary, "Aetna exercises discretionary authority and control respecting management of the Plans and the disposition of the Plans' assets," wholly independent of its contractual duties under the Parties' Agreement.[17] (ROA.22.)

---

[16]     *See also, e.g.*, *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000) ("We agree with Aetna that the company qualifies as a fiduciary for purposes of the statute. 'When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA "fiduciary" under 29 U.S.C. § 1002(21)(A)(iii).'").

[17]     Aramark alleges that Aetna breached its fiduciary duties by using its position as TPA to "enrich itself" with Plan funds through a variety of schemes including by, *inter alia*, cross-plan offsetting, improperly processing claims under the Plan terms, taking more from the Plans than it pays to providers, and by using exclusion lists to hide its wrongdoing. (*See* ROA.18, 29–43); *see also Browdy v. Hartford Life & Acc. Ins. Co.*, 630 F. App'x 278, 283–84 (5th Cir. 2015) ("Conduct typically constituting a plan administrator's breach of fiduciary duty includes deceptive practices or misrepresentations," including "falsehoods committed in order to save money at a beneficiary's expense.") (referencing *Amara*, 563 U.S. at 421).

Although Aramark "did not expressly plead or argue 'surcharge,'" doing so was not necessary to state a claim seeking equitable relief. *Gearlds*, 709 F.3d at 452. As in *Gearlds*, Aramark seeks "recovery of any and all losses" and "benefits or profits Aetna made as a result of its breach of its fiduciary duty," and "all such other equitable or remedial relief as may be appropriate." (ROA.44–47.) These allegations are sufficient to state a "plausible claim" for equitable relief under *Amara*. *See, e.g.*, *Gearlds*, 709 F.3d at 452 (holding as to surcharge, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used"); *Sullivan-Mestecky*, 961 F.3d at 102–03 (§ 1132(a)(3) claims "plausibly pled" breach of fiduciary duty, so they are "sufficient to support the equitable remedy of surcharge"); *Hanson v. PLLC*, 596 F. Supp. 3d 742, 753 (E.D. Tex. 2021) ( "Plaintiffs seek equitable relief" against alleged plan administrators, so "Plaintiffs have at least stated a plausible claim for relief" under ERISA.); *Morrissey v. Curran*, 650 F.2d 1267, 1282 (2d Cir. 1981) ("[W]e see no reason not to permit a surcharge, when warranted by the facts, against one occupying any fiduciary status.").

C.    The Fourth Circuit's Outlier Decision in *Rose* Does Not Abrogate *Amara* or *Gearlds*.

In the face of controlling precedent, Aetna urges this Court to disregard controlling Supreme Court precedent and overturn *Gearlds* based on the Fourth Circuit's decision in *Rose*.  In *Rose*, the Fourth Circuit determined that the critical distinction between equitable and legal claims turned on whether the claim sought "general" or "specific" funds, irrespective of whether the ERISA claims were brought against a fiduciary.  *See* 80 F.4th at 502.

*Rose* is the outlier among Circuit Courts and directly at odds with Supreme Court precedent.  The majority in *Rose* wrongly held (1) *Amara* departed from the Court's precedents on equitable relief in *Mertens* and *Great-West*, and (2) that *Montanile* then "rejected the turn that it contemplated in *Amara*" by "labeling *Amara*'s reasoning 'dicta' and expressly" reaffirming its "interpretation of 'equitable relief in *Mertens* [and] *Great-West*.'"  *Rose*, 80 F.4th at 503 (internal quotations omitted).  The *Rose* court is wrong on both counts.

First, *Amara* did not take a "turn" away from *Mertens* or *Great-West*.  As explained above, *Mertens*, *Great-West*, and *Montanile* are fundamentally distinct from ERISA cases like *Amara* and *Gearlds* involving breach of

fiduciary duty claims *brought against plan fiduciaries*. (*See* ROA.306 ("Aetna's status as an ERISA fiduciary shows this case to be analogous to *Amara* and not to *Mertens*, *Great-West*, and *Montanile*.").) The discussion in those cases distinguishing between "specific" and "general" funds is simply inapplicable if the defendant is a fiduciary. The dissent in *Rose* agreed, noting that a plaintiff asserting breach of fiduciary duty against a plan fiduciary "need not show the fruits of a defendant's wrongdoing are traceable to particular funds remaining in that defendant's possession to state a claim under ERISA." *Rose*, 80 F.4th at 505 (Heytens, J., concurring in part and dissenting in part). Instead, the plaintiff "need only plead and prove the defendant was a fiduciary and that any money sought represents 'make-whole relief' for a 'violation of a duty imposed upon that fiduciary.'" *Id.* (citing *Amara*, 563 U.S. at 442).

Second, *Montanile* did not overrule *Amara*. As the dissent in *Rose* explained, "*Montanile* did not say *Amara* had been inconsistent with the Court's previous decisions. Nor did it say the Court was now adopting an approach contrary to *Amara*." *Id.* at 506. The footnote in *Montanile* discussing *Amara* merely notes that *Amara* reaffirmed *Mertens* and *Great-West*'s holdings regarding "constructive trust" and "rejected a litigant's broad reading of *Amara* that would have 'all but overrul[ed]' *Mertens* and *Great-*

57

*West.*" *Id.* *Montanile* never addressed equitable remedies available under trust law. Similarly, *Gearlds*, which cites cases favorable to *Amara*,[18] is not "irreconcilable with" *Montanile*, was not implicitly overruled, and remains controlling law. *Carter v. S. Cent. Bell*, 912 F.2d 832, 840 (5th Cir. 1990) (explaining the standard for not following precedent).

Third, the *Montanile* Court's characterization of *Amara* as *dicta* is immaterial. The *Gearlds* court specifically addressed the defendant's argument that *Amara*'s holding was *dictum* and held "[e]ven assuming it is *dictum* … we give serious consideration to this recent and detailed discussion of the law by a majority of the Supreme Court." *Gearlds*, 709 F.3d at 452. The Fifth Circuit frequently cites *Gearlds* for the proposition that it is bound by "recent and detailed" Supreme Court *dicta*. *See, e.g.*, *Garrett v. Lumpkin*, 96 F.4th 896, 902 n.4 (5th Cir. 2024). In short, even if the Supreme Court's

---

[18]     Even before *Gearlds*, the Fifth Circuit had long held that ERISA claims are equitable. *See Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) (plaintiff was not entitled to a jury trial because "ERISA law is closely analogous to the law of trusts, an area within the exclusive jurisdiction of the courts of equity" and plaintiff's monetary claim "is analogous to an action for disgorgement of improper profits," which "sounds in equity") (citing *Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570–71 (1990)).

58

discussion of equitable surcharge in *Amara* is *dicta*, it is still correct and should be followed. *Gimeno*, 38 F.4th at 915.

Fourth, notwithstanding the *Rose* decision, courts around the country continue to hold that ERISA claims brought against a fiduciary are equitable under *Amara*. For example, in *Trustees of New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, the Second Circuit recently analyzed whether claims for disgorgement brought by trustees of an ERISA plan against a fiduciary investment advisor of the plan were equitable. 102 F.4th 572, 583–84 (2d Cir. 2024). After considering *Mertens*, *Great-West*, *Amara*, and *Montanile*, the court concluded that *Amara* "decisively answers these questions in favor of the Trustees." *Id*. at 603. The court explained that *Amara* took "great pains to distinguish claims of fiduciary breach against plan fiduciaries from its prior decisions, which had imposed certain limits on claims brought against non-fiduciaries [*Mertens*] or plan beneficiaries [*Great-West*]." *Id*. Because the trustees sought "to enforce an ERISA fiduciary's obligations to the Plan," the Second Circuit found "no persuasive basis to distinguish the present case from *Amara*" and held that the "the 'make-whole relief' sought by the plaintiffs was equitable, regardless of whether the relief satisfied the asset-tracing requirements discussed in

*Mertens.*" *Id.* at 603–04.[19] Aetna has identified no reason to disregard controlling Supreme Court precedent or otherwise to upset a decade of precedent in this Circuit.

### D. Aetna Previously Argued that ERISA Claims Brought Against a Fiduciary are Equitable.

If there nonetheless remain any questions as to whether Aramark's claims are equitable, this Court need look no further than Aetna's prior assertions that ERISA Claims brought against a fiduciary were equitable. In *Group 1*, discussed *supra*, Aetna argued that under an Arbitration Provision with the same language, § 1132(a)(2) ERISA claims sought equitable relief. (*See* ROA.130–138.) Relying on Aetna's citation of *Amara*, the arbitrator in *Group 1* agreed with Aetna, explaining that "[t]he overwhelming number of Courts that have considered whether a claim for restoration of plan losses or funds against a fiduciary seeks an equitable or legal remedy have determined

---

[19] *See also, e.g.*, *LeBoeuf v. Entergy Corp.*, No. 23-6257, 2024 WL 3742690, at *8 (E.D. La. 2024) ("[E]quitable relief is possible through a surcharge in the form of money damages, *see Cigna v. Amara*, 563 U.S. 421 (2011)."); *Sarno v. Sun Life & Health Ins. Co. (U.S.)*, No. 22-cv-968, 2024 WL 1364341, at *2 (E.D.N.Y. Mar. 31, 2024) ("'[S]urcharge' is equitable 'relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty.'") (quoting *Sullivan-Mestecky*, 961 F.3d at 102 and *Amara*, 563 U.S. at 422).

that such a claim is equitable in nature." (ROA.133.) *Group 1* is hardly an outlier—on no fewer than four other occasions, *Aetna* successfully argued that ERISA claims seek equitable relief. (*See, e.g.*, ROA.140, 143 (arguing ERISA claims under 29 U.S.C. § 1132(a)(3) are "equitable and therefore not triable by jury"); ROA.148, 159 (characterizing § 1132(a)(3) claim as an "*equitable* claim under ERISA") (emphasis in original); ROA.172, 191 (arguing that courts in the Eleventh Circuit have "'held time and time again that relief under ERISA is limited to equitable remedies and there is no right to a trial by jury'") (citing *Perera v. Metro. Life Ins. Co.*, No. 3:17-cv-195, 2017 WL 4541569, *2 (M.D. Fla. Oct. 11, 2017)); ROA.194, 200 (arguing that claims arising under § 1132(a)(3) are "limited to equitable actions").)

None of these cases involved a request for monetary relief that could be traced to specific, identifiable funds, as Aetna now argues is required for an ERISA claim to seek equitable relief. Moreover, Aetna has taken the position that these claims are equitable *after* the Supreme Court's decision in *Montanile*—Aetna's pretext for justifying its tactical flip-flop. Whether or not Aetna is estopped from taking an inconsistent position, the Court should reject Aetna's about-face. As the Trial Court summarized: "ERISA claims seeking money damages are either equitable or they are not, and Aetna should not be

61

able to take inconsistent positions on this issue across different cases."
(ROA.306.)

## IV.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DECIDING AETNA'S MOTION TO STAY

Aetna argues the Trial Court abused its discretion by ruling on the
Motion and summarily denying its alternative request that the Trial Court
defer to the District of Connecticut—the second-filed court.  The Trial Court
did not disregard Aetna's request.  Unlike the *Leipzig v. Principal Life
Insurance Co.*, 481 F. App'x 865, 872 (5th Cir. 2010) decision cited by Aetna,
the Trial Court explained its basis for ruling on the Motion.  In response to
Aetna's request for a stay, Aramark argued that deference to the District of
Connecticut was inappropriate because the first-filed court should resolve
arbitrability.  (ROA.117–122.)  The Trial Court agreed, noting that "[t]he
parties do not dispute that the case before this Court was filed before Aetna
filed its action in the District of Connecticut, and is the first filed case."
(ROA.300.)  Indeed, as the first-filed court, the Trial Court was well within its
rights to rule on Aetna's Motion, which required that the Trial Court issue a
ruling on arbitrability.  *See* 9 U.S.C. § 3 (The court "shall" stay the action "on

62

application of one of the parties" if "satisfied that the issue involved … is referable to arbitration.").

As the first-filed court, the Trial Court did not abuse its discretion by ruling on arbitrability and is, indisputably, the proper court to determine "whether subsequently filed cases involving substantially similar issues should proceed." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) (internal quotations omitted).  Courts are expected to follow the first-to-file rule unless there are "compelling circumstances" warranting departure. *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)  None of the arguments raised in Aetna's briefing below supported a finding of "compelling circumstances," and Aetna raises none in its appeal.   Absent such circumstances, a first-filed court is well within its discretion to enjoin the second-filed action, let alone to rule on a motion presented by the complaining party.  *See In re Amerijet Intern., Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) (holding that district court "did not err in enjoining the Florida lawsuit"

because the "Texas case was clearly the first-filed suit") (citing *Mun. Energy Agency v. Big Rivers Elec. Corp.*, 804 F.2d 338, 343 (5th Cir. 1986)[20]).

Nor did the Trial Court act imprudently or somehow create a risk of inconsistent judgments as Aetna claims. To be certain, it was *Aetna* who created a risk of inconsistent judgments when it filed the Petition in the District of Connecticut, seeking relief that could have been sought from the Trial Court. And even though Aetna's litigation tactic ensured two courts would expend judicial resources answering the same question, that does not mean that there must be inconsistent judgments. The District of Connecticut has stayed its decision on the Petition pending the outcome of this Appeal. (ROA.727–31.) If, as Aetna argues, a court lacks discretion to issue a ruling that results in inconsistent judgments, then the District of Connecticut must respect this Court's decision.

---

[20]    Aetna mischaracterized *Municipal Energy*'s holding to suggest the first-filed rule does not apply whenever Section 3 and Section 4 petitions are filed in separate courts. *Municipal Energy* simply established that a court may exercise its discretion not to apply the first-filed rule if an exception to the first-filed rule applies. *See Mun. Energy*, 804 F.2d at 344 (allowing Section 3 and Section 4 petitions to proceed in separate courts because the first-filed declaratory judgement action was filed within five days of when the plaintiff therein unilaterally terminated the parties' contract). The "anticipatory suit" exception at issue in *Municipal Energy* does not apply here.

Aetna's attempt to deflect blame by arguing that it was required to move to compel in Connecticut is not compelling.  The Fifth Circuit has long permitted "a district court [to] compel arbitration outside of its own district in the district specified in the arbitration agreement." *Indian Harbor Ins. Co. v. Glob. Transp. Sys., Inc.*, 197 F. Supp. 2d 1, 2 (S.D.N.Y. 2002) (citing *Dupuy–Busching General Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir. 1975)).  Because Aetna *could have* moved to compel arbitration in Texas, it had no other reason to file its Petition in the District of Connecticut than outright forum shopping—the exact wrong the first-to-file rule is designed to prevent.  *See United States v. Safety Nat'l Cas. Corp.*, No. SA-10-CA-498-OG, 2010 WL 11595787, at *2 (W.D. Tex. Sept. 24, 2010).

## CONCLUSION

For the reasons stated herein, Aramark respectfully requests that the Court deny Aetna's appeal in its entirety.

Dated: December 19, 2024

/s/ Jennifer Truelove
Jennifer Truelove
TX Bar No. 24012906
MCKOOL SMITH, P.C.
jtruelove@mckoolsmith.com
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jon D. Corey
D.C. Bar No. 491311
jcorey@mckoolsmith.com
MCKOOL SMITH, P.C.
1717 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 370-8300
Facsimile: (202) 370-8344

David I. Schiefelbein
N.Y. Bar No. 4767398
dschiefelbein@mckoolsmith.com
Emily B. Tate
N.Y. Bar No. 5769153
etate@mckoolsmith.com
MCKOOL SMITH, P.C.
1301 Avenue of the Americas, 32nd
Floor
New York, NY 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

*Attorneys for Plaintiffs-Appellees*
*Aramark Services, Inc. f/k/a*
*Aramark Corporation, Aramark*

66

*Services, Inc. Group Health Plan,*
*Aramark Uniform Services Group*
*Health and Welfare Plan, and*
*Aramark Benefits Compliance*
*Review Committee*

**CERTIFICATE OF SERVICE**

I, Jennifer Truelove, counsel for Appellees and a member of the Bar of this Court, certify that on December 19, 2024, a copy of Brief for Plaintiffs-Appellees was filed with the Clerk through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ Jennifer Truelove
Jennifer Truelove

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 28.3 and Rules 32(a)(7)(B) and 32(f) of the Federal Rules of Appellate Procedure, I certify that Brief for Plaintiffs-Appellees contains 12,963 words according to the word-processing system used to prepare this document, and complies with the applicable type-volume and length limitations.

This document complies with the typeface and typestyle requirements of Rules 32(a)(5) and 32(a)(6) of the Federal Rules of Appellate Procedure as it has been prepared in a proportionally-spaced typeface using Microsoft Word for Office 365 in 14-point CenturyExpd BT font.

*/s/ Jennifer Truelove*
Jennifer Truelove