No. 24-40323

# In the United States Court of Appeals for the Fifth Circuit

ARAMARK SERVICES, INCORPORATED GROUP HEALTH PLAN;
ARAMARK SERVICES INCORPORATED, FORMERLY KNOWN AS
ARAMARK CORPORATION; ARAMARK UNIFORM SERVICES,
GROUP HEALTH AND WELFARE PLAN; ARAMARK BENEFITS
COMPLIANCE REVIEW COMMITTEE,
PLAINTIFFS-APPELLEES,

*v.*

AETNA LIFE INSURANCE COMPANY,
DEFENDANT-APPELLANT.

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS, NO. 2:23-CV-446-JRG
THE HONORABLE RODNEY GILSTRAP*

## REPLY BRIEF FOR APPELLANT AETNA LIFE INSURANCE COMPANY

JOHN B. SHELY
M. KATHERINE STRAHAN
DAVID W. HUGHES
CAMERON POPE
HICKS THOMAS LLP
  *700 Louisiana Street*
  *Suite 2300*
  *Houston, TX 77002*
  *(713) 547-9100*

SARAH M. HARRIS
CHARLES L. MCCLOUD*
LIBBY A. BAIRD
NOAH C. MCCULLOUGH[†]
IKENNA N. UGBOAJA
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *lmccloud@wc.com*

*Counsel for Appellant*
*Counsel of Record

*Additional Counsel on Inside Cover*

PETER J. KOCORAS
GREGORY H. BERMAN
THOMPSON HINE LLP
  20 North Clark Street
  Suite 3200
  Chicago, IL 60602
  (312) 998-4241

MELISSA RICHARDS SMITH
GILLAM & SMITH, LLP
  303 South Washington Avenue
  Marshall, TX 75670
  (903) 934-8450

[†] Admitted in the District of Columbia under an emergency examination waiver and practicing law under the supervision of D.C. Bar members pursuant to D.C. Court of Appeals Rule 46-A.

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................1

ARGUMENT .................................................................................................3

I.    The Agreement Requires Arbitrators, Not Courts, to Decide Whether Aramark Seeks Equitable Relief ........................................3

    A.    The Agreement Here Unambiguously Delegates to Arbitrators the Power to Resolve Whether Relief is Legal or Equitable ......................................................................4

    B.    *Archer* Does Not Dictate a Contrary Result ..................................9

II.    Aramark Seeks Legal Relief Subject to Arbitration ...........................14

III.    The District Court Erred by Denying a Discretionary Stay ................21

CONCLUSION...............................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
  935 F.3d 274 (5th Cir. 2019)................................................................2, 9

*Arnold v. HomeAway, Inc.*, 890 F.3d 546 (5th Cir. 2018)...................................3

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)................................10

*Bd. of Trs. of AGMA Health Fund v. Aetna Life Ins. Co.*,
  2024 WL 4893269 (S.D.N.Y. Nov. 26, 2024)....................................24

*Brown v. United of Omaha Life Ins. Co.*,
  661 F. App'x 852 (6th Cir. 2016)........................................................19

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999)...............................................................24

*Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224 (9th Cir. 2020) .........................19

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) ...........................................*passim*

*Dupuy–Busching General Agency, Inc. v. Ambassador Ins. Co.*,
  524 F.2d 1275 (5th Cir. 1975).............................................................23

*East El Paso Physicians' Medical Center, LLC v. Aetna Health Inc.*,
  2017 WL 876313 (W.D. Tex. Mar. 2, 2017)........................................11, 12, 13

*Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013) ...................18, 20

*Gimeno v. NCHMD, Inc.*, 38 F.4th 910 (11th Cir. 2022) ................................19

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).........15, 17

*Harmon v. Shell Oil Co.*, 2023 WL 2474503 (S.D. Tex. Mar. 13, 2023) ...........20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019)..........................................................................*passim*

*In re Amerijet Int'l, Inc.*, 785 F.3d 967 (5th Cir. 2015)....................................25

Page

Cases—continued:

*In re DeRogatis*, 904 F.3d 174 (2d Cir. 2018) .......................................19

*Information Systems Audit & Control Association, Inc. v.*
    *Telecommunication Systems, Inc.*,
    2017 WL 2720433 (N.D. Ill. June 23, 2017)....................................12

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of*
    *Ga., Inc.*, 892 F.3d 719 (5th Cir. 2018)..........................................19

*LeBoeuf v. Entergy Corp.*, 2024 WL 3742690 (E.D. La. 2024) ........................20

*Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971)................................24

*McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012) .......................18

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) .....................................14, 16, 17

*Montanile v. Board of Trustees of the National Elevator Industry*
    *Health Benefit Plan*, 577 U.S. 136 (2016) .............................................*passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...............................................................................13, 24

*Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*,
    804 F.2d 338 (5th Cir. 1986).........................................................24

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
    117 F.4th 628 (5th Cir. 2024) .........................................................21

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
    687 F.3d 671 (5th Cir. 2012).......................................................3, 10

*Powell v. Minn. Life Ins. Co.*, 60 F.4th 1119 (8th Cir. 2023) ..........................19

*Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023),
    *cert. denied*, 144 S. Ct. 1346 (2024) .........................................*passim*

*Saleh v. Bush*, 848 F.3d 880 (9th Cir. 2017)........................................21

Page

Cases—continued:

*Sarno v. Sun Life & Health Ins. Co. (U.S.),*
  2024 WL 1364341 (E.D.N.Y. Mar. 31, 2024)..................................19

*Staropoli v. Metro. Life Ins. Co.,*
  2023 WL 1793884 (3d Cir. Feb. 7, 2023)....................................19

*Stokes v. Sw. Airlines,* 887 F.3d 199 (5th Cir. 2018).........................18

*Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Invs., L.P.,*
  905 A.2d 1214 (Conn. App. Ct. 2006) ........................................5

*Sullivan-Mestecky v. Verizon Commc'ns Inc.,*
  961 F.3d 91 (2d Cir. 2020) ..................................................19

*Teets v. Great-W. Life & Annuity Ins. Co.,*
  921 F.3d 1200 (10th Cir. 2019)..............................................20

*Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.,*
  601 F.3d 329 (5th Cir. 2010)...........................................21, 23

*Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob.*
  *Advisors, LLC,* 102 F.4th 572 (2d Cir. 2024) ..............................19

*Walther v. Lone Star Gas Co.,* 952 F.2d 119 (5th Cir. 1992)...................22

## STATUTES

9 U.S.C. § 4 ............................................................22, 23, 24

Employee Retirement Income Security Act of 1974 (ERISA) ...............*passim*

Federal Arbitration Act (FAA).........................................*passim*

## OTHER AUTHORITIES

AAA, Commercial Arbitration Rules and Mediation Procedures R-49
  (Sept. 1, 2022) .........................................................7, 10

1 D. Dobbs, *Law of Remedies* § 4.3 (2d ed. 1993).............................15

v

Page

Other Authorities—continued:

Restatement (Second) of Contracts § 203.............................................................5

## INTRODUCTION

This Court should honor the Federal Arbitration Act's strong federal policy encouraging arbitration. The parties agreed to arbitrate this dispute in Connecticut, not to litigate in Texas. Aramark cannot escape its agreement by alleging that its complaint involves non-arbitrable equitable relief. The parties' undisputedly valid arbitration agreement broadly refers "any controversy or claim" relating to the parties' Master Services Agreement to arbitration, "except for … equitable relief." The parties also agreed that arbitrators, not courts, would decide whether relief qualifies as legal (and can be resolved in arbitration) or equitable (and non-arbitrable). The parties' incorporation of American Arbitration Association (AAA) Rules, along with other language in the agreement, reinforces that delegation.

Aramark does not dispute that its contrary reading of the arbitration agreement would nonsensically require courts to decide whether claims involve equitable relief, yet require arbitrators to decide whether relief is legal (*i.e.*, involves money damages). That reading would be completely self-contradictory, since relief is either equitable or legal; courts cannot decide that relief is equitable without also deciding it is not legal, and vice versa. Nor does Aramark explain why the parties would have agreed to such a self-defeating

agreement. Aramark instead rests on a supposed per se rule that any carve-out from an arbitration provision renders the provision too ambiguous for arbitrators to interpret in the first instance. This Court has never adopted such a rule, least of all in *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019), a case that involved a materially different arbitration agreement.

Regardless, even if courts decide whether Aramark's claims here seek equitable relief, the answer is a straightforward no. Aramark seeks money damages arising from Aetna's alleged breach of fiduciary duties under the parties' contract. That is classic legal relief that the parties agreed to arbitrate. Aramark is wrong that dicta from the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), creates a special rule whereby money damages become equitable relief if sought against putative fiduciaries. The Supreme Court repudiated that approach in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), as the Fourth Circuit recently recognized in *Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1346 (2024). This Court should adopt the Fourth Circuit's sound reasoning and avoid a circuit split.

Finally, the district court's decision should be vacated regardless because the court should have at least issued a discretionary stay to allow the District of Connecticut to rule on Aetna's motion to compel arbitration. Only that court can grant Aetna that relief, since the parties agreed to arbitrate only in Connecticut. Aramark rests on the first-filed rule to portray the district court below as the proper court to act first. But giving Aramark priority for filing its complaint first would counterintuitively reward parties who defy arbitration agreements. By definition, the party defying the arbitration agreement always files first in court; only after an arbitration agreement is breached can the other party move to compel arbitration. This Court should not countenance that abusive result.

## ARGUMENT

### I.     The Agreement Requires Arbitrators, Not Courts, to Decide Whether Aramark Seeks Equitable Relief

This Court looks to the specific language of each agreement to decide whether the parties clearly and unmistakably agreed to have arbitrators resolve threshold disputes over the scope of arbitration. *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018). Here, the parties agreed to arbitrate under AAA Rules "any controversy or claim arising out of

3

or related to" the Agreement, "except for … any … form of equitable relief." ROA.517. All agree that AAA Rules broadly delegate disputes over arbitrability to arbitrators. Br. 31-33; Aramark Br. 3, 14, 20-21.

The clear import of this specific language—reinforced by other clauses—is that arbitrators decide whether to *classify* relief as legal or equitable, but just cannot award equitable relief. By insisting that courts may classify the relief sought, Aramark makes a hash of this agreement and ignores critical features that distinguish *Archer*.

### A.    The Agreement Here Unambiguously Delegates to Arbitrators the Power to Resolve Whether Relief is Legal or Equitable

1. Critically, Aramark sidesteps dispositive language unique to *this* agreement that eliminates any doubt that arbitrators, not courts, decide whether parties seek arbitrable legal relief or non-arbitrable equitable relief. Above and beyond incorporation of AAA rules, a provision at the tail end of the arbitration provision—"The arbitrator may award only monetary relief," and only "compensatory damages"—*requires* arbitrators to decide whether relief is monetary or equitable. Br. 30-31. Aramark does not dispute that reading.

Aramark's contrary reading of the agreement thus produces an untenable contradiction. Under the "except" clause, Aramark contends, only

4

courts can decide whether a claim is for equitable relief, or instead for monetary relief. But under the "only monetary relief" clause, arbitrators—not courts—decide whether requested relief is indeed monetary (and, if so, whether it is permissible compensatory damages, or something else). Basic principles of contract law preclude readings that produce such "illogical" results. *Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Invs., L.P.*, 905 A.2d 1214, 1226 (Conn. App. Ct. 2006) (collecting cases); *see* Restatement (Second) of Contracts § 203(a).

Aramark (at 39-40) responds that the "except" clause would be superfluous unless it excluded arbitration of the merits of all *claims* seeking equitable relief, not just whether a plaintiff is entitled to equitable relief. In Aramark's view (at 33), the "except" clause "functions like an appositive," identifying certain controversies and claims that cannot be resolved in any way by arbitrators because of the equitable relief sought. By contrast, Aramark says (at 39-40), the "only monetary relief" clause "already limits the arbitrator's powers to award monetary relief."

That interpretation has numerous flaws. For starters, none of this addresses the basic problem with Aramark's position. Regardless whether the "except" clause is limited to equitable relief or extends to any claim seeking

equitable relief, Aramark believes courts must resolve whether equitable relief is involved. But Aramark also concedes that arbitrators, not courts, decide whether relief is monetary (or instead equitable) under the "only monetary relief" clause. Thus, only Aramark's interpretation produces an inexplicable contradiction whereby courts would decide as a threshold matter whether claims involve equitable relief, yet arbitrators would decide whether claims involve legal relief. Aramark does not dispute that those inquiries are two sides of the same coin, since relief is either legal or equitable.

Regardless, Aramark's interpretation is incorrect on its own terms. The plain text of the agreement excepts from arbitration "temporary, preliminary, or permanent injunctive relief or any other form of equitable relief," not *claims* for such relief or actions seeking such relief. ROA.517.

Further, there is no superfluity under Aetna's reading. The "except" clause deprives arbitrators of authority to award equitable relief. The "only monetary relief" clause then not only limits arbitrators to awarding monetary relief, but also limits arbitrators to awarding *specific* monetary relief, *i.e.*, compensatory damages. The latter clause thus narrows the scope of permissible monetary relief that arbitrators can award, above and beyond barring arbitrators from awarding equitable relief. And, again, under Aetna's

6

reading, both clauses work harmoniously by empowering arbitrators to decide in the first instance whether relief is monetary or equitable.

2.  Aramark's interpretation also makes no practical sense.  Aramark offers no response to the obvious explanation for why the parties incorporated AAA rules plus an exception in the initial sentence of the arbitration provision. AAA Rules give arbitrators broad authority by default, including the authority to grant legal or equitable relief.  *See* AAA R-49(a)-(b).  Aetna's reading makes sense of the "except" clause for equitable relief:  that clause surgically removes one limited power from arbitrators' otherwise vast default authority under AAA rules.  Br. 31-32.

Aramark never explains why the parties would have disempowered arbitrators from deciding whether relief is equitable or legal just by saying that the parties will not arbitrate "equitable relief."  The two concepts are logically distinct:  arbitrators first classify relief as legal or equitable, then refrain from arbitrating equitable relief.  *See* AHIP Br. 9-11, 15-17.

More broadly, Aramark's interpretation of the arbitration agreement would be anomalous and chaotic.  Under Aramark's view, in any arbitration where one party amended its complaint and sought additional relief, the other party could halt arbitration midway through by going to court and asserting

that only courts can decide whether the new relief is legal or equitable. Not only that, under Aramark's view, the merits of the underlying claim (*e.g.*, whether there was a contractual breach) would suddenly no longer be arbitrable. Given that requested relief often shifts during arbitral proceedings, Aramark's destabilizing interpretation of how this agreement would work is illogical—and Aramark tellingly never defends it. By contrast, Aetna's explanation makes perfect sense. Arbitrators can resolve the merits of claims and award damages, and the prevailing party can then seek equitable relief in the appropriate court. Br. 32-33 & nn. 1-2.

3.     Aramark (at 40-42) accuses Aetna of having "flip-flop[ped]" from its position in a motion to dismiss arbitral claims brought by Group 1 Automotive. But Aetna did not argue in those proceedings that the arbitrator lacked authority to classify whether the relief at issue was legal or equitable. On the contrary, that is precisely what the arbitrator did for the relief requested in that case. ROA.131-33. While Aetna did seek dismissal of a substantive claim because it had considered the requested remedy to be non-arbitrable, Aramark stops short of contending that this results in judicial estoppel.

## B.    *Archer* Does Not Dictate a Contrary Result

1.  Relying on this Court's decision in *Archer*, Aramark devotes much of its brief to arguing that *any* arbitration agreement with an exclusionary clause in the same sentence is by definition too ambiguous to delegate threshold questions about the scope of the exclusionary clause to the arbitrator.  *E.g.*, Aramark Br. 21-31.

But *Archer* did not create such a per se rule.  Rather, *Archer* hinged on the specific, distinguishable language of the arbitration agreement there, which stated that "[a]ny dispute arising under or related to [the] Agreement (except for *actions* seeking injunctive relief and *disputes* related to [certain subject matter]), shall be resolved by binding arbitration" in accordance with AAA Rules.  935 F.3d at 277 (emphasis added).  In ruling that the parties did not clearly and unmistakably agree to arbitrate the arbitrability of that lawsuit, the Court emphasized that the agreement excepted "actions seeking injunctive relief" rather than "*claims* for injunctive relief."  *Id.* at 283 (emphasis in original).  Because "this particular action … [fell] within that exception," it was unclear whether the parties intended to delegate *its* arbitrability.  *Id.*

By contrast, the agreement here excludes only equitable *relief* from arbitration, not whole actions in which such relief is sought. Br. 34-37. Thus, arbitrators must resolve all substantive claims regardless of the type of relief sought, then parties can pursue equitable relief in court. *Supra* p. 8.

2.    Regardless, Aramark is incorrect (at 24-26, 30-31) that any arbitration agreement with an exclusion or exception from arbitration is too unclear to delegate threshold disputes over the applicability of the exclusion to arbitrators. That per se rule defies the Supreme Court's and this Court's repeated admonition to look at each agreement on its own terms, including other relevant provisions. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Petrofac*, 687 F.3d at 674-75.

Further, that per se rule would upend countless arbitration agreements. Virtually all arbitration agreements have some limits on their scope—often within the same sentence as the delegation clause. Br. 37-39. Take the AAA's model "Standard Arbitration Clause," which prescribes arbitration of "[a]ny … claim *arising out of or relating to this contract, or the breach thereof*" under AAA Rules—in other words, arbitration of all claims, *except* those unrelated to the contract or its breach. *See* AAA Rules at 8. By Aramark's reasoning,

parties to such an agreement may evade arbitration at the outset by simply characterizing the legal claim at issue as not "arising" under the relevant contract. Again, Aramark does not defend this consequence, even though Aramark's rule would threaten delegation clauses in countless agreements. Br. 38-39.

Courts reviewing delegation clauses with similar, same-sentence exceptions have nevertheless found the parties' intent to arbitrate arbitrability to be clear and unmistakable. In *East El Paso Physicians' Medical Center, LLC v. Aetna Health Inc.*, for example, the court interpreted an arbitration agreement identical in phrasing to the one in Aetna and Aramark's Master Services Agreement. 2017 WL 876313, at *1, *4 (W.D. Tex. Mar. 2, 2017). The court—presumably unbothered by the placement of the equitable carve-out—concluded that the parties' intent to delegate arbitrability was clear and unmistakable because their agreement had incorporated AAA Rules. *Id.* at *3-4.

As discussed, *Archer* did not "effectively overrule[]" *East El Paso*, *contra* Aramark Br. 29. The delegation clause in *Archer* contained a carve-out for *actions* seeking injunctive relief, whereas the *East El Paso* arbitration agreement (like the one here) contained a carve-out for only equitable relief.

11

Moreover, *East El Paso* assessed whether there was clear and unmistakable evidence of an agreement to arbitrate arbitrability separately from the question whether the assertion of arbitrability was "wholly groundless" (such that the case may proceed despite the delegation clause). 2017 WL 876313, at *3-5. The Supreme Court's rejection of the "wholly groundless" exception to delegations in *Henry Schein* only affects the latter part of *East El Paso*. *Contra* Aramark Br. 29.

Likewise, the arbitration clause at issue in *Information Systems Audit & Control Association, Inc. v. Telecommunication Systems, Inc.*, also contained an exception permitting the parties to pursue equitable relief in court in the same sentence adopting AAA Rules. 2017 WL 2720433, at *1-2 (N.D. Ill. June 23, 2017). The court nonetheless noted that, by adopting those rules, the agreement likely delegated questions of arbitrability under the precedent of "the vast majority of courts." *Id.* at *2. The court proceeded to address whether the parties' dispute was arbitrable only because neither party had argued that the arbitrator should resolve it. *Id.* at *3.[1]

---

[1] Aramark (at 35) attempts to distinguish *Information Systems* on the ground that it "merely provided that all disputes must be arbitrated '[w]ithout prejudice to either Party's right to seek equitable relief,'" and that such language does not show that claims for equitable relief are non-arbitrable. It

Aramark's interpretation of the carve-out here would vitiate the delegation clause in *East El Paso* and every clause like it. Parties could evade arbitration simply by labeling their requested relief as equitable, defeating the strong federal policy favoring enforcement of arbitration agreements and rendering arbitration agreements toothless. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); AHIP Br. 6-8, 13-15.

3.    To the extent that *Archer* is controlling, Aetna respectfully preserves for further review the argument that *Archer* is incorrect. Br. 39-40. A growing number of courts have held that the existence of a carve-out provision does not render parties' intent to delegate issues of arbitrability any less clear or unmistakable. Br. 40 & n.3. That reading undermines broad delegation clauses and confuses questions regarding the *scope* of arbitration with the question of *who decides* what is arbitrable in the first place. *See* AHIP Br. 8-17. The Court must first determine whether the arbitrator is exclusively empowered to decide issues of arbitrability. Then it may determine whether the lawsuit falls within the scope of arbitration if and only if the answer to that

---

is unclear, however, why that distinction is relevant. The agreement clearly allows parties to pursue equitable relief in court, and yet the court suggests it would still be appropriate to refer any question as to whether relief is equitable to an arbitrator.

question is no.  An exception to the scope of arbitration (such as the carve-out in *Archer*) is simply not relevant to the *antecedent* question of who decides arbitrability.  *Id.* at 16-17.

## II.    Aramark Seeks Legal Relief Subject to Arbitration

Even if courts decide the issue, Aramark seeks legal relief, so this case must be arbitrated.  Aramark demands compensatory money damages from Aetna's general funds over an alleged breach of fiduciary duties—classic legal relief.  Aramark responds that, because its claims involve fiduciary duties, even claims for monetary relief are equitable under *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).  As the Fourth Circuit recently recognized, the Supreme Court in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), abrogated that approach.  *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 503-04 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1346 (2024).  This Court should reject Aramark's invitation to split with the Fourth Circuit on an important, oft-recurring ERISA question.

1.  ***Typically Available Remedies.***  Aramark does not dispute the baseline legal test:  whether relief for ERISA claims qualifies as equitable depends on whether the relief was "*typically* available" in premerger equity courts.  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255-56 (1993); *see* Br. 41-42;

14

Aramark Br. 43.  If pre-1938 courts of equity did not typically award the relief, it is legal—and subject to arbitration under the parties' agreement.

Nor does Aramark dispute that, if the typically-available-in-equity test applies, its remedies constitute legal relief subject to arbitration.  Indeed, Aramark (at 44) recognizes that "monetary damages" do not typically qualify as "equitable remedies."  And Aramark has demanded "any and all losses resulting from" Aetna's supposed "breach[]" of "its fiduciary duties" and "any and all benefit or profits" that Aetna realized.  ROA.43-48.

Such money damages are the "classic form of *legal* relief."  *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted).  Courts of equity could typically award monetary relief only if a plaintiff sought *specific* funds that they "in good conscience" owned but the defendant wrongfully possessed. 1 D. Dobbs, *Law of Remedies* § 4.3(1), at 587-88 (2d ed. 1993); Br. 42-43.  But Aramark never argues that the relief it seeks would satisfy those parameters, nor identifies specific funds that Aetna purportedly wrongly retained.

2.  **Amara *and Fiduciaries*.**  Like the district court, ROA.305-06, Aramark (at 42-43, 53) contends that "*Amara* and its progeny" create a special rule for claims against fiduciaries, whereby relief that would otherwise qualify

15

as legal becomes equitable in this context. In Aramark's telling, *Amara* broadly held that if relief resembles the "surcharge remedy" that courts of equity could award in trust cases, then it qualifies as "equitable relief" under ERISA. 563 U.S. at 442; *see* Aramark Br. 45-47. Under that theory, because courts of equity in specialized "breach of trust" cases could award legal remedies like "make-whole relief" (or so-called "surcharge remedies") that were typically beyond equity's scope, such relief is "equitable" for ERISA purposes. *Amara*, 563 U.S. at 442; *see* Aramark Br. 45-46. That position is incorrect.

Start with the basic legal problem: the Supreme Court in *Montanile* repudiated the idea that special rules govern relief involving fiduciaries. Br. 47-50. *Montanile* clarified that "legal remedies—even legal remedies that a court of equity could sometimes award—are not 'equitable relief.'" 577 U.S. at 149. *Montanile* thus reiterated the Supreme Court's explanation in earlier cases that classifying "purely legal" remedies available in certain cases against fiduciaries as "equitable relief" would make any distinction between legal and equitable remedies "meaningless." *Mertens,* 534 U.S. at 256-58 & n.8 (citation omitted); *see Montanile*, 577 U.S. at 148 n.3. As the Fourth Circuit concluded, "*Amara*'s approach is antithetical" to *Montanile* because *Amara* rests on the

16

idea that legal remedies that courts of equity could award in special cases *are* equitable relief. *See Rose*, 80 F.4th at 503-04. This Court should similarly recognize that *Montanile* "put *Amara*[] ... to rest." *Id.* at 504.

Aramark (at 57-58) contends that *Montanile* "never addressed" whether the "remedies available under trust law" qualify as "equitable" and thus could not have "overrule[d] *Amara*." Not so. *Montanile* reiterated that the Supreme Court's "interpretation of 'equitable relief' in *Mertens* [and] *Great-West* ... *remains unchanged*." 577 U.S. at 148 n.3 (emphasis added). And under that established framework, "'trust remedies'" for "make-whole, compensatory relief" are "'simply inapposite' because they were *special* to trust cases, not *typical* of cases brought in equity more broadly." *Rose*, 80 F.4th at 501, 503 (quoting *Great-W.*, 534 U.S. at 219). Aramark (at 48-50) is thus wrong to dismiss the Supreme Court's decisions in *Mertens* and *Great-West* as having "no applicability" to cases like this one where plaintiffs demand "monetary remedies" that courts of equity could only award in "trust law" cases.

Aramark's remaining arguments all rest on a mistaken view of stare decisis. If, as Aetna contends, *Montanile* abrogated the special fiduciaries-only test that courts drew from *Amara*, that later Supreme Court opinion

17

governs, and this Court "change[s]" its precedent accordingly. *Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018) (citation omitted); *see* Br. 48-49.

Aramark (at 51-55, 57-58) maintains that *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448 (5th Cir. 2013), remains binding. *Gearlds* broke with prior circuit precedent, adopted the fiduciaries-are-special reading of *Amara*, and held that awards of make-whole damages for breaches of fiduciary duty count as equitable relief even though analogous claims against non-fiduciaries would be legal relief. 709 F.3d at 450-52. Because *Montanile* abrogates that reading of *Amara*, *Montanile* abrogates this Court's decision in *Gearlds* too. The Fourth Circuit thus abandoned its *Gearlds*-equivalent precedent, on which *Gearlds* heavily relied. *Rose*, 80 F.4th at 503-04 (repudiating *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012)); *see Gearlds*, 709 F.3d at 451-52 ("follow[ing]" *McCravy*'s "path"). This Court should do the same. Br. 48-49.

Aramark (at 51-53, 59-60) contends that other circuits "continue to follow *Amara*." But none "considered the viability of *Amara*'s rule after *Montanile*." *Rose*, 80 F.4th at 504; *see* Br. 49 n.4.

Take the Second Circuit, which Aramark (at 59) portrays as standing by *Amara* "notwithstanding … *Rose*." In fact, the Second Circuit never even

18

cited *Rose*, let alone addressed whether *Montanile* abrogated *Amara*. The Second Circuit simply assumed that its earlier reading of *Amara* endured without confronting intervening developments. *See Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 602-05 (2d Cir. 2024). And the other cases that Aramark highlights (at 52-53 & n.9, 60 & n.19) from the Second Circuit and its district courts do not even cite *Montanile*. *See Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 102-03 (2d Cir. 2020); *In re DeRogatis*, 904 F.3d 174, 199-200 (2d Cir. 2018); *Sarno v. Sun Life & Health Ins. Co. (U.S.)*, 2024 WL 1364341, at *2-3 (E.D.N.Y. Mar. 31, 2024).

Aramark's other examples fare no better. Aramark (at 51-53 & n.15) claims that this Court has joined the Third, Sixth, Eighth, Ninth, and Eleventh Circuits in "follow[ing] *Amara*" "[s]ince the *Montanile* decision," but none of Aramark's cases cite *Montanile* at all.[2] As for the Tenth Circuit, Aramark's cited case (at 53 n.15) involves disgorgement—which all agree can be an

---

[2] *See Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 732-34 (5th Cir. 2018); *Staropoli v. Metro. Life Ins. Co.*, 2023 WL 1793884, at *4 (3d Cir. Feb. 7, 2023); *Brown v. United of Omaha Life Ins. Co.*, 661 F. App'x 852, 859-61 (6th Cir. 2016); *Powell v. Minn. Life Ins. Co.*, 60 F.4th 1119, 1123 (8th Cir. 2023); *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1228-30 (9th Cir. 2020); *Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 914-16 (11th Cir. 2022).

equitable remedy—and merely discusses *Amara* for the proposition that equitable relief can sometimes "take[] the form of a money payment." *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1224, 1230 (10th Cir. 2019) (citation omitted); *see* Br. 43-44. And while Aramark (at 50-51) makes much of a Southern District of Texas decision that followed *Amara*, that court believed itself bound by *Gearlds*—an error this Court should correct here.[3]  *See Harmon v. Shell Oil Co.*, 2023 WL 2474503, at *2 (S.D. Tex. Mar. 13, 2023) (citing *Gearlds*, 709 F.3d at 451-52).

In sum, only the Fourth Circuit has grappled with the question confronting this Court regarding how to classify damages sought against fiduciaries post-*Montanile*. And the Fourth Circuit held that "*Amara*'s approach" to equitable relief was "inconsistent with the Supreme Court's dictates" in *Montanile*. *See Rose*, 80 F.4th at 504. This Court should avoid creating a circuit split, hew to the Supreme Court's latest word on ERISA remedies, and hold that Aramark seeks legal, not equitable, relief. Br. 40-41, 47-49.

---

[3] Aramark's other citation to a district-court decision within this circuit does not even mention *Montanile*. *See LeBoeuf v. Entergy Corp.*, 2024 WL 3742690, at *8 (E.D. La. 2024) (cited at Aramark Br. 60 n.15).

3. ***Prior Aetna Arguments.***　Finally, Aramark (at 60-61) cites instances where Aetna argued that ERISA claims against it were "equitable" because it was an ERISA fiduciary.　The import of this argument is unclear.　Aramark does not press judicial estoppel, nor could it.　Positions that "rest[] on an intervening change in law" are "not subject to judicial estoppel." *Saleh v. Bush*, 848 F.3d 880, 887 n.5 (9th Cir. 2017); Br. 51.

Regardless, Aetna's position here is not "clearly inconsistent with its previous position[s]." *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 638 (5th Cir. 2024) (cleaned up).　Some of Aramark's cited cases pre-date *Montanile.*　All pre-date the Fourth Circuit's recognition that *Montanile* abrogated precedents that classify monetary relief as equitable when fiduciaries are involved.　Br. 50-51.　In none of those cases did Aetna interpret *Montanile*, let alone offer a conflicting reading.

## III.　The District Court Erred by Denying a Discretionary Stay

At a minimum, the district court abused its discretion by constructively denying Aetna's request for a discretionary stay so that the District of Connecticut could rule on Aetna's motion to compel arbitration.　Br. 51-54. "Under the FAA, district courts may only refer cases to arbitration within their own district." *Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.*, 601

F.3d 329, 332 n.4 (5th Cir. 2010) (citing 9 U.S.C. § 4). Here, because the parties agreed to arbitrate in Connecticut, only the District of Connecticut can compel arbitration in accordance with the parties' agreement. Forcing Aetna to litigate in Texas also upends the parties' agreement to have Second Circuit law govern any federal issues, including interpretations of the FAA. Contrary to Aramark's aspersions (at 2, 65), it is hardly forum-shopping to insist that a court in the parties' chosen forum, with undisputed authority to compel arbitration, apply the parties' chosen law.

Aramark (at 62) agrees that the district court below denied Aetna a discretionary stay, but remarkably denies that this ruling was unreasoned. Aramark portrays the district court's observation that Aramark's complaint was "the first filed case" as the court's supposed basis for denying the discretionary stay. But Aramark is quoting the district court's summary of the procedural history, not legal reasoning. ROA.300. The district court's opinion never mentioned Aetna's discretionary stay request, let alone articulated any basis for denying it. *See* ROA.299-307. The district court's failure to offer any "explanation of its rationale" negates whatever "deference" its decision might ordinarily receive. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 128 (5th Cir. 1992).

Aramark (at 65) denies that the District of Connecticut is the sole court empowered to compel arbitration. But Aramark's lone authority for that proposition is a 2002 New York district court opinion citing a 1975 decision of this Court. Aramark Br. 65 (citing *Dupuy–Busching General Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir. 1975)). Aramark ignores this Court's unambiguous 2010 statement that "district courts may only refer cases to arbitration within their own district." *Todd*, 601 F.3d at 332 n.4. Nor does Aramark respond to the wealth of other cases supporting that proposition, which flows from FAA § 4's plain text, which mandates that arbitral proceedings take place "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4; *see* Br. 52-53.

If there are any doubts whether district courts within this Circuit can compel arbitration outside their jurisdiction, that alone weighs in favor of a discretionary stay in favor of a court clearly empowered to grant that relief. Any other result would reward parties who breach arbitration agreements, flout their chosen forum and choice of law, and bring lawsuits in forums that may lack the power to require the breaching party to honor the arbitration agreement.

Regardless, the first-filed rule does not justify proceeding in the Eastern District of Texas. *Contra* Aramark Br. 63-64. Applying the first-filed rule is nonsensical in the arbitration context and would perversely encourage parties to defy arbitration agreements and their agreed-upon venues. Br. 54-55. By definition, for one party to move to compel arbitration, the other party must have "refus[ed] to arbitrate." *Moses H. Cone*, 460 U.S. at 21; 9 U.S.C. § 4.

Courts have thus held that the "first-filed rule does not apply" when the "second-filed" case is a "petition to compel arbitration." *Bd. of Trs. of AGMA Health Fund v. Aetna Life Ins. Co.*, 2024 WL 4893269, at *2-4 (S.D.N.Y. Nov. 26, 2024) (collecting cases and granting discretionary stay); *see Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 344 (5th Cir. 1986). Aramark's inflexible approach would impugn this judicial consensus and undermine the strong federal policy encouraging enforcement of arbitration agreements—including choice of venue provisions. Tellingly, none of Aramark's first-filed cases involve arbitration.[4]

---

[4] *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 602, 606 (5th Cir. 1999) (applying first-filed rule to a RICO case that presented "substantially similar issues" to a "pending bankruptcy matter"); *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 405-06, 408 (5th Cir. 1971) (concluding that the court with "prior

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order denying Aetna's motion to stay.

---

jurisdiction" should resolve whether related patent-infringement actions should be consolidated); *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976-77 (5th Cir. 2015) (concluding district court "did not err in enjoining" breach-of-contract action that "substantially overlap[ped]" with an earlier-filed case).

Dated: January 16, 2025                    Respectfully submitted,

                                           /s/ Charles L. McCloud

JOHN B. SHELY                              SARAH M. HARRIS
M. KATHERINE STRAHAN                       CHARLES L. MCCLOUD*
DAVID W. HUGHES                            LIBBY A. BAIRD
CAMERON POPE                               NOAH C. MCCULLOUGH†
HICKS THOMAS LLP                           IKENNA N. UGBOAJA
   700 Louisiana Street                    WILLIAMS & CONNOLLY LLP
   Suite 2300                                 680 Maine Avenue SW
   (713) 547-9100                             Washington, DC 20024
                                              (202) 434-5000
                                              lmccloud@wc.com


PETER J. KOCORAS                           MELISSA RICHARDS SMITH
GREGORY H. BERMAN                          GILLAM & SMITH, LLP
THOMPSON HINE LLP                             303 South Washington Avenue
   20 North Clark Street                      Marshall, TX 75670
   Suite 3200                                 (903) 934-8450
   Chicago, IL 60602
   (312) 998-4241                          Counsel for Appellant

                                           *Counsel of Record.

† Admitted in the District of Columbia under an emergency examination waiver and practicing law under the supervision of D.C. Bar members pursuant to D.C. Court of Appeals Rule 46-A.

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.     This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,066 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Century Expanded BT, size 14.

<u>/s/ *Charles L. McCloud*</u>
CHARLES L. MCCLOUD

JANUARY 16, 2025

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Appellate Procedure 25(d) and Fifth Circuit Rule 25.2, I hereby certify that on January 16, 2025, true and correct copies of the foregoing **REPLY BRIEF FOR APPELLANT** were filed with the Clerk's Office for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system.


/s/ <i>Charles L. McCloud</i>
CHARLES L. MCCLOUD

JANUARY 16, 2025