# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 18, 2025
Lyle W. Cayce
Clerk

No. 24-40323

Aramark Services, Incorporated Group Health Plan; Aramark Services Incorporated, *formerly known as* Aramark Corporation; Aramark Uniform Services, Group Health and Welfare Plan; Aramark Benefits Compliance Review Committee,

*Plaintiffs—Appellees*,

*versus*

Aetna Life Insurance Company,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:23-CV-446

Before Higginbotham, Jones, and Southwick, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

This appeal brings two threshold questions: whether the court or the arbitrator will decide arbitrability, and whether the Plaintiffs seek equitable relief. The district court found that arbitrability lay within its proper ambit—as the parties were not clear and unmistakable in their decision—and that Plaintiffs seek equitable, not legal, relief. We AFFIRM.

# I

## A

This case centers on the scope of an arbitration clause in a Master Services Agreement ("MSA") between Aramark Services, Incorporated and Defendant-Appellant Aetna Life Insurance Company.[1] Aramark provides food, uniform, and facility services to universities, school systems, prisons, healthcare facilities, and other businesses nationwide. In 2017, it contracted with Aetna through the MSA to provide third-party administrator services for self-funded health benefit plans that Aramark maintains.[2] In its role as third-party administrator, Aetna serves as the intermediary between Aramark and health care providers who treat and care for Aramark employees and their family members. Aetna collects a monthly fee and in exchange provides access to its network of providers and adjudicates claims for payment that those providers submit. Aetna is also responsible for handling "calls and other correspondence from Plan Participants," creating reports for Aramark, and aiding in the design of Aramark's Plans.

---

[1] The additional Plaintiff-Appellees to this action are Aramark Services, Incorporated Group Health Plan; Aramark Uniform Services, Group Health and Welfare Plan; and Aramark Benefits and Compliance Review Committee (the "Plans" and the "Committee"). The Plans are group health plans organized and operated under the Employee Retirement Income Security Act of 1974 ("ERISA"). For brevity and clarity, Aramark throughout refers to all Plaintiffs—the company, the Committee, and the Plans.

[2] The Agreement became effective on January 1, 2018. Like other Fortune 500 companies, Aramark opts not to purchase traditional fully-insured health insurance for its employees, but instead pays the cost of medical care for its employees. Because Aramark lacks the requisite expertise to navigate the medical claims review, adjudication, and payment process, it engaged Aetna as third-party administrator. Aramark maintains nearly a quarter of a million employees.

Under the Agreement, Aetna is tasked with evaluating claims for payments submitted by doctors and hospitals. Since the Agreement came into effect, Aetna has collected over $200 million from Aramark to pay medical service providers for services rendered to employees and their families participating in the Plans.[3]

**B**

On September 27, 2023, Aramark filed suit against Aetna in the Eastern District of Texas, alleging that Aetna had breached its fiduciary duty as a third-party plan administrator and that Aetna had engaged in prohibited transactions under ERISA.[4] Aramark alleges that, since 2017, Aetna has paid millions of dollars of provider claims that should not have been paid, retained millions of dollars in undisclosed fees, and engaged in claims-processing related misconduct to Aramark's detriment. In particular, Aramark alleges that Aetna had approved improper or fraudulent claims for Aetna subcontractors, provided inadequate subrogation services, made certain post-adjudication adjustments to claims to Aramark's detriment, and commingled Plan funds with Aetna's funds. Then in December 2023, Aramark filed an amended complaint. Two days prior to the deadline for a response, Aetna filed a petition to compel arbitration of Aramark's claims in a Connecticut federal district court.[5] Two days later, Aetna filed a motion to stay the Texas proceedings in the Eastern District of Texas pending arbitration pursuant to Section 3 of the Federal Arbitration Act ("FAA").

---

[3] Aramark Services, Incorporated "sponsors and is the principal funding source for the Plans, which are welfare benefit plans organized and operated under ERISA."

[4] *See* 29 U.S.C. §§ 1104(a), 1106(b)(1), 1109(a) (fiduciary duty); 29 U.S.C. §§ 1106(a)(1)(D), 1106(b)(3), and 1109(a) (prohibited transactions).

[5] Aetna had received an unopposed 45-day extension to respond in the Texas suit.

Aramark opposed both the petition to compel arbitration and motion to stay. The district court denied Aetna's motion to stay the proceedings on April 26, 2024. The district court rejected Aetna's argument that the parties had delegated to the arbitrator the power to resolve threshold issues of arbitrability, concluding that it was not "clear and unmistakable" that the Exclusionary Clause delegated all threshold issues of arbitrability to the arbitrator. It found that by the MSA's plain language, the most natural reading was that "the parties agreed to delegate arbitrability to the arbitrator in accordance with AAA rules for all dispute except those seeking any form of equitable relief, which are carved out in the same sentence." The district court was not persuaded that the carve-out "evinces a clear and unmistakable intent to delegate arbitrability" because "the parties could have unambiguously and expressly delegated the carve-out to the arbitrator."

Having concluded the threshold issue of arbitrability, it also found that Aramark's ERISA claims, under 29 U.S.C. §§ 1132(a)(2) and (3), were equitable and thus not properly subject to mandatory arbitration. And, the district court noted that neither party disputed that the case before it in Texas was the first to be filed. Aetna filed its notice of appeal in May 2024; three months later, the Connecticut federal district court stayed its case pending this appeal.[6]

## C

The provision at issue of the MSA—Section 15—provides that:

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, *except for temporary, preliminary, or permanent injunctive relief or*

[6] *See infra* II-C for discussion of the procedural posture of the quasi-parallel litigation, with the motion to stay filed in Texas brought under FAA § 3, and the petition to compel arbitration in Connecticut brought under FAA § 4.

> *any other form of equitable relief*, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules ("Rules"). The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to the exclusion of state laws inconsistent therewith or that would produce a different result, and judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. . . . The arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages.[7]

Section 18(E) of the MSA specifies that "[t]he Agreement shall be governed by and interpreted in accordance with applicable federal law, including ERISA. To the extent such federal law does not govern, the Agreement shall be governed by Connecticut law."

## II

We review a denial of a motion to stay litigation pending arbitration *de novo*.[8] And, we review the district court's invocation of the first-to-file rule and subsequent decision to rule on the motion to stay for an abuse of discretion.[9] Aetna argues that the district court committed three errors: (A) the district court misinterpreted the MSA by finding arbitrability is justiciable; (B) as Aramark is seeking legal, and not equitable, relief,

---

[7] We refer to the italicized exclusionary language as the "Exclusionary Clause." The Exclusionary Clause is un-italicized in the original.

[8] *Rainier DSC 1, LLC v. Rainier Cap. Mgmt., LP*, 828 F.3d 356, 360 (5th Cir. 2016) (per curiam).

[9] *See Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997).

jurisdiction in federal court is untenable; and (C) the district court abused its discretion in constructively denying a discretionary stay. We disagree.

**A**

**1**

Turning to arbitrability, our inquiry "proceeds in two steps."[10] First, we determine "whether the parties entered into *any arbitration agreement at all*."[11] Second, we turn to the question of contract interpretation "and ask[] whether *this* claim is covered by the arbitration agreement."[12]

While both steps are questions for the Court,[13] the parties to an agreement can agree to delegate to an arbitrator the threshold power of determining whether a particular claim is arbitrable.[14] Indeed, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."[15] That is, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal courts to enforce, and the FAA operates on this

---

[10] *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 278 (5th Cir. 2019), *cert. granted*, 141 S. Ct. 107 (2020), *and dismissed as improvidently granted*, 141 S. Ct. 656 (2021).

[11] *Archer*, 935 F.3d at 278 (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)).

[12] *Id.* (quoting *Kubala*, 830 F.3d at 201).

[13] *Id.* (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).

[14] *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

[15] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citing *Howsam*, 537 U.S. at 83-85).

additional arbitration agreement just as it does on any other."[16] "If there is a valid delegation, the court must grant the motion to compel [arbitration]."[17]

This said, the Supreme Court has noted that "[t]here is one caveat" to the usual business of contract interpretation—namely, that courts apply a heightened standard when determining whether the parties agreed to arbitrate arbitrability.[18] "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is '*clear and unmistakable*' evidence that they did so."[19] And, "[u]nless the parties clearly and unmistakably prove otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[20]

**2**

The first inquiry—whether Aetna and Aramark entered into an arbitration agreement at all—is undisputed. There is a written agreement and neither party contests its validity.[21] It is clear that Aetna and Aramark are parties to a valid arbitration agreement.

**3**

---

[16] *Id.* at 70.

[17] *Archer*, 935 F.3d at 279.

[18] *Id.* at 69 n.1; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Henry Schein*, 586 U.S. at 69.

[19] *First Options*, 514 U.S. at 944.

[20] *Archer*, 935 F.3d at 279 (citing *AT&T v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)).

[21] *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) ("[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party ... alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract.").

The second question—whether this claim is covered by the arbitration agreement and thus who will decide the arbitrability of Aramark's claims—is contested. We first turn to *Archer & White Sales v. Henry Schein*,[22] where a small dental equipment distributor, Archer & White, brought state and federal antitrust claims against Henry Schein, a dental equipment manufacturer, in federal district court.[23] The controversy centered on an arbitration provision similar to the provision here at issue.[24] *Archer & White* resolved a circuit split and eliminated the "wholly groundless" exception as inconsistent with the FAA.[25] On remand, we held that courts must give effect to the contractual provisions found within the four corners of the contract—and must not reach results in tension with the plain text of the contract.[26]

Here, Aetna contends that the district court erred in rejecting the contention that "the parties have delegated to the arbitrator threshold issues of arbitrability." Aetna reads the MSA as "clearly and unmistakably" exempting *only* the awarding of equitable remedies from an arbitrator's power. Observing that the arbitration provision incorporates the rules of the American Arbitration Association ("AAA"), Aetna asserts that their incorporation is the requisite evidence cementing a finding that threshold

---

[22] 935 F.3d 274.

[23] *Henry Schein*, 586 U.S. at 65-66.

[24] *Id.*

[25] *Id.* at 68.

[26] *Archer*, 935 F.3d at 283 ("While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, *or reach a result inconsistent with the plain text of the contract*, simply because the policy favoring arbitration is implicated." (quoting *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002) (emphasis added and internal citations omitted))).

issues of arbitrability are left to arbitrators.[27] On remand, this Court in *Archer* found that the presence of a carve-out provision and its placement meant that the incorporation of AAA rules was not dispositive when an arbitration clause contains a carve-out.[28] Here, the carveout provision is also within the same sentence.

Aetna also highlights the last sentence of the arbitration provision, that "[t]he arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages." Aetna interprets this to imply that arbitrators are tasked with deciding whether a claim is equitable or legal—yet can only award monetary, and not equitable, relief.

Aramark responds that Aetna "misapprehends" the relevant caselaw attending the adoption of the AAA rules post-*Henry Schein*. Aramark points out that the incorporation of AAA rules *can* constitute a clear and unmistakable intent for arbitrators to resolve arbitrability but does not end the inquiry.[29] Thus, Aramark finds Aetna's citations that involve cases

---

[27] Aetna cites a 2017 district court decision in the Western District of Texas that interprets another one of Aetna's arbitration agreements and found *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir. 2012), to control. *See East El Paso Physicians' Medical Center, LLC v. Aetna Health Inc.*, No. 16-cv-44-KC, 2017 WL 876313, at *1 (W.D. Tex. Mar. 2, 2017). *Petrofac* stands for the proposition that incorporation of the AAA rules is "clear and unmistakable" evidence of a delegation to arbitrators of threshold arbitrability. *Petrofac*, 687 F.3d at 675. But *Petrofac*'s arbitration provision did *not* include a carve-out provision.

[28] *Archer*, 935 F.3d at 280-81.

[29] *Id.* at 279-82 (explaining and distinguishing *Petrofac* and *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014)). In *Crawford*, this Court held that "express incorporation" was controlling and concluded that the presence of a carveout did not swing against a finding of "clear and unmistakable" intent to delegate arbitrability to the arbitrator. 748 F.3d at 262-63. *Archer* addressed *Crawford* and found that the syntax of the arbitration clause, wherein the carveout provision was nestled within the larger arbitration clause, lead to a different result. 935 F.3d at 281. Here, the provision at issue features the same syntactical organization as seen in *Archer*, and not in *Crawford.*

without carve-out provisions—or carve-out provisions outside the general delegation sentence—are inapplicable. As for the monetary relief portion of the arbitration provision, Aramark invokes the canon against surplusage—that redundancy is disfavored.

Given the Supreme Court's opinion and remand in *Henry Schein*, with its attendant wiping away of the "wholly groundless" exception, the primacy of an arbitration provision's plain language is undisputed.[30] Here, the placement of the Exclusionary Clause mirrors the placement in *Archer*. Thus, both the family of cases pre-*Archer* with no carve-outs *and* cases where the carveout is in another portion or sentence of the agreement are distinguishable.

The district court observed that the main dispute here rests on whether the provision escapes *Archer* and clears the hurdle of "clear and unmistakable."[31] Aramark argues that the more natural reading of the MSA's arbitration provision is that arbitrability of any dispute, except one seeking any form of equitable relief, is for an arbitrator to decide. The carveout, in Aramark's reading, directly modifies both portions of the phrase "controversy or claim."[32]

[30] Even prior to remand of *Archer*, the Fifth Circuit recognized that even with incorporation of the AAA rules, the "clarity of the parties' intent to delegate" could be "mudd[ied]." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018).

[31] *See* 935 F.3d at 277.

[32] In this reading, "Any controversy *for any form of equitable relief* or claim *for any form of equitable relief* arising out of or relating to this Agreement . . . shall be subject to arbitration[.]" Black's Law Dictionary defines "controversy" as "[a] disagreement or a dispute[,]" or "a justiciable dispute." *Controversy*, BLACK'S LAW DICTIONARY (10th ed. 2014). Claim is defined as "the assertion of an existing right; any right to payment or to an equitable remedy" and "a legal remedy to which one asserts a right[.]" *Claim*, BLACK'S LAW DICTIONARY (10th ed. 2014). Aramark contends that even if the Exclusionary Clause applies only to "claims" and not "controversies," all of Aramark's

Aramark continues, noting that to read the arbitration provision otherwise would render the monetary relief language surplusage. Under the choice of law provision found in Section 18(E) of the MSA, Connecticut contract law and its attendant interpretive principles would apply in untangling the present dispute.[33] Aramark turns to Connecticut law to underscore that superfluity is disfavored and that interpretations giving operative effect to all contractual provisions are favored to achieve a reasonable overall result.[34]

Pointing to the "monetary relief" clause, Aramark argues that Aetna's reading is the "flip side" of the Exclusionary Clause, rendering it

---

proffered claims are equitable in nature and so do not preclude federal court review. Aramark is using the "Series-Qualifier Canon," which holds that, "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012) (detailing the Canon). In this way, the Exclusionary Clause, as a phrasal noun, would apply to both "cases" and "controversies." *See generally Facebook v. Duguid*, 592 U.S. 395 (2021) (applying and discussing the Series-Qualifier Canon). Here, the natural, grammatical reading of the Exclusionary Clause is as a modifier to both nouns in the previous phrase, especially given the lack of an intervening determiner. *See United States ex rel. Vaughn v. United Biologics, L.L.C.*, 907 F.3d 187, 195 (5th Cir. 2018); SCALIA & GARNER 148.

[33] "The Agreement shall be governed by and interpreted in accordance with applicable federal law, including ERISA. To the extent such federal law does not govern, the Agreement shall be governed by Connecticut law." *See also Archer*, 935 F.3d at 283 (operating under a North Carolina choice-of-law provision).

[34] *See United Illuminating Co. v. Wisvest-Connecticut LLC*, 791 A.2d 546, 552 (Conn. 2002) ("The law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous."); *O'Brien v. U.S. Fidelity & Guar. Co.*, 669 A.2d 1221, 1224 (Conn. 1996) ("When interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result."); *see also* SCALIA & GARNER at 174-79.

redundant.[35] This last sentence of MSA Section 15 already acknowledges the arbitrator's power to award monetary relief, a power that is drawn from the broad authority to "grant any remedy or relief," including legal and equitable remedies, that is permissible under the AAA rules.[36] Aramark argues that this reading, which gives meaning to both clauses, is one that reads claims and controversies for equitable relief to be non-delegable *and* for monetary relief to exclude compensatory damages.[37]

In sum, "relief" can modify "claim" and "controversy." The Supreme Court of Connecticut has established that ambiguous language is construed against the drafter (in this case, Aetna): "Where the language is unambiguous, we must give the contract effect according to its terms. Where the language is ambiguous, however, we must construe those ambiguities against the drafter."[38] In other words, Connecticut adopts the principle of

---

[35] In relevant part, "[t]he arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages."

[36] *See* R-49(a), *Commercial Arbitration Rules & Mediation Procedures*, Am. Arb. Ass'n (Sept. 1, 2022), https://www.adr.org/sites/default/files/Commercial_Rules_Web.pdf ("The arbitrator may grant *any remedy or relief* that the arbitrator deems just and equitable and within the scope of the agreement of the parties[.]") (emphasis added).

[37] Aetna responds that in *Archer*, the carveout used the word "actions" and not "relief" or "remedies"—and that the words "controversy" or "case" remain unmodified by the Exclusionary Clause. Aetna also advances the argument that courts with jurisdiction over whether equitable relief is involved is in tension with arbitrators exercising threshold jurisdiction to determine whether a claim is legal or not. This argument steps past the reality that parties may delegate arbitrability—and can also assign the determination of whether claims are equitable to courts.

[38] *Cantonbury Heights Condominium Assoc., Inc. v. Local Land Development, LLC*, 873 A.2d 898, 904-05 (Conn. 2005) (citations omitted); *see also Hartford Elec. Applicators of Thermalux, Inc. v. Alden*, 363 A.2d 135, 139 (Conn. 1975) ("When there is ambiguity, we must construe contractual terms against the drafter.").

*contra proferentem*.[39] We are persuaded that by the plain language of the agreement, the Exclusionary Clause applies to both controversy and claim.

We ask first whether this threshold issue of arbitrability has been delegated to an arbitrator in a "clear and unmistakable" manner, and conclude that it was not.[40] The Supreme Court in *Henry Schein* reiterated that the language the parties agreed to controls.[41] By the terms of this contract, the threshold arbitrability question was given to courts, not arbitrators.

**B**

**1**

We now turn to whether Aramark's ERISA claims against Aetna are equitable or legal, and we hold that they are equitable. In doing so, we assume both parties are ERISA fiduciaries.[42]

---

[39] *See also* SCALIA & GARNER at 427 (explaining that by this doctrine, "doubts and ambiguities are to be construed unfavorably to the drafter.").

[40] "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is '*clear and unmistakable*' evidence that they did so." *First Options*, 514 U.S. at 944. *Archer* represents a change in interpretation of these clauses—and that change is likely why Aetna argues for its reversal and inapplicability.

[41] 586 U.S. at 69-73 (rejecting multiple policy-laden arguments brought by Archer & White).

[42] *See* 29 U.S.C. § 1002(21)(A)(iii). In essence, Aramark alleges that Aetna allowed overpayment of claims and payment of fraudulent claims, among other errors, all to the detriment of Aramark—who self-funds the health plans Aetna is paid to administer. As the district court noted, Aramark and Aetna "do not appear to dispute that they are both ERISA fiduciaries." On appeal, Aetna does not contest its fiduciary status, except for asserting that it will "vigorously dispute" these allegations in the future. At this procedural juncture, and given the lack of briefing on the issue, we decline to address this contention at this early stage. A finding that Aetna was acting as a fiduciary in its role as a third-party administrator is reviewable for a future panel, with a more fulsome view of the merits from the parties' vigorous advocacy and argumentation. *See Castro v. United States*, 540 U.S.

Aramark alleges that Aetna, as an ERISA fiduciary, breached its duty under 29 U.S.C. §§ 1132(a)(2) and (3), 1106(b)(1), and 1109(a).[43] And, Aramark alleges that Aetna, as an ERISA fiduciary, exercises discretionary authority and control respecting management of the Plans and disposition of Plan assets independent of its contractual duties under the MSA.[44] Aetna counters that Aramark's claims under ERISA seek monetary damages, a "classic form of legal relief."[45] Aetna cites Supreme Court precedents and a Fourth Circuit case to argue that equitable relief is available under ERISA only if the plaintiff is seeking specific funds in the defendant's possession that belong to the plaintiff.[46] Aetna concludes that because Aramark's complaint does not mention specific and identifiable funds, their claims remain legal in

375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment) (noting that our adversarial system means that parties "are responsible for advancing the facts and arguments entitling them to relief."). While "[t]he party presentation principle is supple, not ironclad[,]" it is also not formless. *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020). Here, Aetna has forfeited this argument by failing to brief this line of inquiry at all. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

[43] In relevant part, 29 U.S.C. § 1132(a)(2) provides that the Secretary or any participant, beneficiary, or fiduciary may bring a civil action for appropriate relief under § 1109 (which relates to liability for breach of fiduciary duty). Section 1132(a)(3) empowers a participant, beneficiary, or fiduciary to "obtain other appropriate equitable relief."

[44] Here, Aetna's alleged breaches of duty include self-enrichment through a variety of schemes and falsehoods. *See Browdy v. Hartford Life & Acc. Ins. Co.*, 630 F. App'x 278, 283-84 (5th Cir. 2015) ("Conduct typically constituting a plan administrator's breach of fiduciary duty includes deceptive practices or misrepresentations," including "falsehoods committed in order to save money at a beneficiary's expense." (referencing *Amara*, 563 U.S. at 421)).

[45] *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).

[46] *See Mertens v. Hewitt Assoc.,* 508 U.S. 248 (1993); *Great-West*, 534 U.S. 204; *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016); *Rose v. PSA Airlines*, 80 F.4th 488, 496, 507 (4th Cir. 2023).

nature. In response, Aramark claims Aetna's cases are inapposite because they address ERISA claims against non-fiduciaries.

**2**

A review of the relevant decisions frames the disagreement. We will turn to this matrix to situate the present dispute within their framework.

The Supreme Court's decisions in *Mertens*, *Great-West*, and *Sereboff* explain that ERISA plaintiffs cannot recover money from *non-fiduciaries*. In *Mertens*, the Court examined "whether ERISA authorizes suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty."[47] The Court denied relief because it found the requested remedy equated to "compensatory damages."[48] It took as a given that ERISA holds the *fiduciary* "personally liable for damages . . . for restitution . . . and for 'such other equitable or remedial relief as the court may deem appropriate.'"[49] But absent like statutory language for *non-fiduciaries*, the Court declined to impose damages liability on a non-fiduciary for aiding and abetting an ERISA trustee's breach.

*Great-West* and *Sereboff* followed, also addressing non-fiduciaries. In both, insurers paid their subscribers' medical expenses following an accident, then sued the subscribers for reimbursement from a later legal settlement. The court saw this remedy as restitution, as the insurer sought specific funds from a nonfiduciary—"the proceeds from the settlement of respondents' tort action," in *Great-West*,[50] and "that portion of the tort settlement due

[47] *Mertens*, 508 U.S. at 251.

[48] *Id.* at 255 (emphasis deleted).

[49] *Id.* at 252 (quoting 29 U.S.C. § 1109(a)).

[50] *Great-West*, 534 U.S. at 214.

Mid Atlantic," in *Sereboff*.[51] But, of course, there are different forms of restitution. In equitable restitution, the plaintiff wants something specific that the defendant has in its possession, while in legal restitution, the plaintiff seeks the value of what was lost. *Great-West* and *Sereboff* illustrate the difference, holding that against a non-fiduciary, ERISA only permits recovering equitable restitution.

In *Great-West*, the specific settlement funds the insurer sought were gone; the insured had already spent them. The Court explained that "[t]he kind of restitution that petitioners seek . . . is not equitable—the imposition of a constructive trust or equitable lien on particular property [still in the insured's possession]—but legal" because the insured already dissipated the settlement proceeds.[52] As ERISA does not permit *legal* restitution, the Court denied relief. *Sereboff* showed the other side of the coin. There, the Court awarded "that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan," because it had been "set aside and 'preserved [in the Sereboffs'] investment accounts.'"[53] In other words, the plaintiff sought transfer of specific funds that remained available, a remedy that resembled *equitable* restitution.

There was uncertainty of the reach of these holdings. In *Amschwand*, our court found monetary remedies were unavailable against an ERISA *fiduciary*.[54] *Amschwand* held that, as the plaintiff sought no identifiable funds,

---

[51] *Sereboff*, 547 U.S. at 363.

[52] *Great-West*, 534 U.S. at 214.

[53] *Sereboff*, 547 U.S. at 362-63 (citations omitted).

[54] *Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007), *abrogated by Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013).

the case did not align with the traditional equitable restitution remedy.[55] But the Supreme Court's later decision in *Amara* told us that *Amschwand* was wrong.

The *Amara* Court discussed what to do with "a suit by a beneficiary *against a plan fiduciary* (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)."[56] As the Supreme Court noted, equity courts recognized that an errant trustee could cause distinct harms. Equity courts specifically "possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."[57] Different from the restitution remedies at issue in *Mertens*, *Great-West*, *Sereboff*, and *Amschwand*, "this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'"[58] The *Amara* Court explained that "the types of remedies the [district] court entered here fall within the scope of the term 'appropriate equitable relief' in § 502(a)(3)"[59] because they resembled equitable surcharge. And it clarified that "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief."[60]

Following *Amara*, our court repudiated *Amschwand* and course-corrected in *Gearlds*.[61] There, "the plaintiff [was] suing a plan fiduciary and

---

[55] *Amschwand*, 505 F.3d at 347-48.

[56] *Amara*, 563 U.S. at 439 (emphasis added).

[57] *Id.*

[58] *Id.* at 442.

[59] *Id.*

[60] *Id.* at 441.

[61] *Gearlds*, 709 F.3d at 452.

the relief sought [would make] the plaintiff whole for losses caused by the defendant's breach of a fiduciary duty."[62] Looking to *Amara*, this court held that "[b]ased on the depth of the Court's treatment of the issue, we are persuaded . . . that *Amara*'s pronouncements about surcharge as a potential remedy under § 502(a)(3) should be followed."[63] We therefore held that a complaint seeking money from an ERISA fiduciary "is viable in light of *Amara*."[64]

Finally, in *Montanile*, the Supreme Court turned again to issues of money damages against a nonfiduciary under ERISA. As in *Great-West*, the Court held "that, when a [nonfiduciary] participant dissipates [a] whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502(a)(3) because the suit is not one for 'appropriate equitable relief.'"[65]

*Montanile* also explained that *Amara* did not overrule *Mertens* and *Great-West*, and the Court reiterated that its "interpretation of 'equitable relief' in *Mertens*, *Great–West*, and *Sereboff* remains unchanged."[66] This came as no surprise: *Amara*, which treated *fiduciary* defendants, did not overrule *Mertens* and *Great-West* because those cases addressed a distinct issue (the remedy against *non-fiduciary* defendants). The Court in *Amara* explicitly reiterated that "the fact that the defendant in this case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference."[67]

---

[62] *Id.* at 450.

[63] *Id.* at 452.

[64] *Id.*

[65] *Montanile*, 577 U.S. at 139.

[66] *Id.* at 148 n.3.

[67] *Amara*, 563 U.S. at 442.

This is a clear statement that the defendant's fiduciary status dictates what equitable relief is available.

*Montanile* said nothing about ERISA fiduciaries. It also said nothing about *Amara*'s discussion of the equitable surcharge remedy. *Montanile* therefore joined the *Mertens*, *Great-West*, and *Sereboff* line of cases in which the defendant was not a fiduciary, leaving *Amara* to guide when they were. The Court in *Montanile* observed that its "discussion of § 502(a)(3) in [*Amara*] was not essential to resolving that case."[68] But our decision in *Gearlds* flowed directly from *Amara*'s treatment of fiduciary defendants; because *Montanile* did not reject (or even discuss) the reasoning from *Amara* that we adopted in *Gearlds*, we remain bound by *Gearlds* in this case.[69]

**3**

Aetna does not contest that it is an ERISA fiduciary for purposes of this appeal. But, citing the Fourth Circuit's interpretation in *Rose*, it argues that *Montanile* collapsed any distinction between fiduciary defendants and non-fiduciary defendants. We disagree for the reasons just offered. We are not bound by our sister circuit's precedent, and in any event, we already rejected Aetna's position when we abrogated our prior decision in *Amschwand* by way of *Gearlds*. As we have explained, *Montanile* offers us no reason to reconsider.

Aetna is an ERISA trustee accused of breaching its fiduciary duties. The district court thus found Aramark's §§ 1132(a)(2) and (3) claims to be

---

[68] *Montanile*, 577 U.S. at 148 n.3.

[69] A "'Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion "establishes a rule of law inconsistent with" that precedent.'" *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (first quoting *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302-03 (5th Cir. 2018)) (then quoting *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010)).

equitable under *Amara* and *Gearlds*, and it noted that Aetna previously argued ERISA claims brought under § 1132(a)(2) for money damages were equitable. We agree with the district court. Following *Gearlds*, we find Aramark is seeking "make-whole relief" for a "violation of a duty imposed upon that fiduciary."[70] We therefore hold Aramark's claims to lie in equity.[71]

**C**

Finally, Aetna argues that the district court abused its discretion in denying Aetna's request for a discretionary stay. The following timeline is undisputed:

- 09/27/2023: Aramark sues Aetna in the Western District of Texas
- 12/22/2023: Aramark amends its complaint
- 02/24/2024: Aetna files a petition to compel arbitration (§4) in the District of Connecticut
- 03/01/2024: Aetna files a motion in the Western District of Texas to stay proceedings pending arbitration (§3)

As the undisputed first-filed court, the district court had a duty to stay the suit if it was satisfied that the issue was referrable to arbitration under the MSA.[72] Compelling circumstances, contrary to Aetna's assertions, are not

---

[70] *Amara*, 563 U.S. at 442.

[71] Just as the plaintiff in *Gearlds*, Aramark did not expressly plead or argue surcharge, but rather requested "compensation for lost benefits and '[a]ny and all other damages and/or relief, equitable or otherwise, to which [he] may be entitled to under federal law." *Id.*

[72] *See* 9 U.S.C. § 3 (In "any courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with

present here. Aetna chose to split its FAA §§ 3 and 4 claims between courts. And, this Court has allowed district courts to compel arbitration in a district outside of its own district and in the district specified in the arbitration agreement.[73] Aetna's claim that the MSA controlled *where* to file the arbitration case is unpersuasive. By the MSA, Connecticut law applies and arbitration will be in Hartford, CT—not that any and all filings must be in Connecticut.

We find no abuse of discretion by the district court. Confronted with a complaint and §§ 3 and 4 dueling motions, the district court explained its reasoning and ruled on the threshold question of arbitrability.[74] The district court explained its view that this dispute fell outside the bounds of arbitration, and thus denied a stay pending arbitration of the *very claims* it thought to be ineligible for arbitration.

## III

Finding arbitrability not to have been clearly and unmistakably delegated to an arbitrator under the terms of the MSA—and finding

---

such arbitration."); *see also Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999).

[73] *See Dupuy–Busching General Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir. 1975). Similar to this case, the party seeking to avoid arbitration (Aramark) brought suit in Texas federal court, and the party looking to arbitrate (Aetna) asserted its right to stay proceedings; *see also Mun. Energy Agency v. Big Rivers Elec. Corp.*, 804 F.2d 338, 344 (5th Cir. 1986).

[74] *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22 (1983) ("The Act provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4. Both of these sections call for an expeditious and summary hearing, with only restricted inquiry into factual issues."). Here, our able district court was quick on the draw—and filed an opinion on April 26, 2024.

Aramark's claims to be equitable in nature—the district court did not err, nor did it abuse its discretion. We AFFIRM.

Edith H. Jones, *Circuit Judge*, concurring in part and dissenting in part:

I concur in my colleagues' decision that the issue in this case was not required to be submitted to an arbitrator's authority. I respectfully dissent, however, from the conclusion that Aramark may sue Aetna, the administrator of Aramark's employee health benefit plan, for money damages pursuant to Section 502(a)(3) of ERISA. 29 U.S.C. § 1132(a)(3). The majority's perfunctory reliance on court precedent mistakenly reads both Supreme Court authority and the limits of "typical" equitable remedies.

Section 502(a)(3) authorizes suits "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the [ERISA] plan, or (B) to obtain other *appropriate equitable relief* . . . ." *Id.* (emphasis added). This provision allows relief to inure to individual beneficiaries who bring claims. *Varity Corp. v. Howe*, 516 U.S. 489, 507–15, 116 S. Ct. 1065, 1075–79 (1996).[1] A series of Supreme Court cases has discussed the nature of equitable relief that may be awarded in Section 502(a)(3) suits. Thirty years ago, the Court set out the principle that "[m]oney damages are, of course, the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S. Ct. 2063, 2068 (1993). The plaintiff, a plan beneficiary, contended that a non-fiduciary could be sued for money damages because "money damages were available in those [equity] courts against the trustee and against third persons who knowingly participated in the trustee's breach." *Id.* at 256, 113 S. Ct. at 2068 (citations omitted). The Supreme Court disagreed, holding that "whatever relief a court of equity is empowered to provide in the particular case at issue" was irrelevant. *Id.* at 256, 113 S. Ct. at 2069.

[1] Aetna and Aramark are fiduciaries to the beneficiaries, but whether Aetna is a fiduciary to Aetna as the plan funder under the MSA, remains to be decided. I agree with the majority's footnote 42 in this regard.

Instead, Section 502(a)(3)'s reference to "equitable relief" referred only to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Id.* The Court canvassed equity authorities and treatises for its conclusion. And it compared Section 502(a)(3) with ERISA Section 409(a), 29 U.S.C. 1109(a), which specifically authorizes legal and equitable relief against fiduciaries, though the damages accrue only to the plan rather than individual beneficiaries. *Id.* at 257–58, 258 n.8, 113 S. Ct. at 2069–70, 2070 n.8. To avoid surplusage in companion provisions, the Court held, it follows that "'[e]quitable' relief [in Section 502(a)(3) must mean *something* less than *all* relief." *Id.* at 258 n.8, 113 S. Ct. at 2070 n.8.

With one exception writ in dicta, the Court has strictly followed the *Mertens* principle. In *Great-West Life & Annuity Ins. Co. v. Knudson*, the plan authorized subrogation against plan beneficiaries who recovered their costs from a third party. 534 U.S. 204, 207, 122 S. Ct. 708, 711 (2002). The petitioners argued that Section 502(a)(3) authorized courts to enjoin "respondents' failure to reimburse the Plan." *Id.* at 210, 122 S. Ct. at 713. The Court rejected this characterization of equitable relief, holding that an injunction to compel payment of money was "not typically available in equity," and equitable restitution—as opposed to restitution at law—was available in equity only when the plaintiff could trace the funds or property in a defendant's possession. *Id.* at 211, 213, 122 S. Ct. at 713–14. Petitioners' inability to trace doomed their claim.

A few years later, the Court approved a fiduciary's claimed lien (authorized by the plan) on an anticipated settlement between a beneficiary and a third party. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361–63, 126 S. Ct. 1869, 1873–74 (2006) (holding that because the fiduciary was "seek[ing] to recover a particular fund" via a lien allowed by the plan on a beneficiary's third-party recovery, its claim sought equitable restitution); *see*

*also Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250, 120 S. Ct. 2180, 2189 (2000) (authorizing claims for restitution of the [identifiable] property . . . or disgorgement of [identifiable] proceeds").

This court faithfully applied these authorities in determining that, under Section 502(a)(3), a plan beneficiary had no equitable claim for payment of life insurance benefits that she would have received but for the fiduciary's breach of its duties. *Amschwand v. Spherion Corp.*, 505 F.3d 342, 343 (5th Cir. 2007). Adhering to *Mertens* and *Great-West,* this court held that the nature of the relief sought must be "typically equitable," and the cause of action giving rise to a claim must also be generically equitable. *Id.* at 346. *Amschwand* rejected the proposition that the Supreme Court's holdings were distinguishable simply because the suit was brought by a beneficiary against a fiduciary rather than the other way around. *Id.* at 346–47. Citing other cases, this court agreed that the identity of the defendant does not change the language of Section 502(a)(3). *Id.* at 347. Moreover, "*Mertens* and its progeny state that [Section] 502(a)(3) relief is affirmatively *not* grounded in 'the special equity-court powers available to trusts.'" *Id.* (quoting *Great-West*, 534 U.S. at 219, 122 S. Ct. at 718). Finally, whether characterized as make-whole or restitutionary relief, Amschwand was essentially claiming money damages for breach of her insurance contract with Spherion. *Id.* at 347–48. *Amschwand* reflected the general contemporary interpretation of the Supreme Court's Section 502(a)(3) cases.[2]

Confusion arose following the Supreme Court's dicta in *CIGNA Corp. v. Amara*, 563 U.S. 421, 426–28, 131 S. Ct. 1866, 1871–72 (2011), in which a beneficiary sued fiduciary CIGNA over changes in its retirement

---

[2] *See generally Coan v. Kaufman*, 457 F.3d 250 (2d. Cir. 2006); *Knieriem v. Grp. Health Plan, Inc.*, 434 F.3d 1058, 1063 (8th Cir. 2006); *Callery v. U.S. Life Ins. Co.*, 392 F.3d 401 (10th Cir. 2004); *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003 (9th Cir. 1998).

benefits plan. After sustaining one claim against CIGNA but rejecting another, the district court opted to "reform" the plan, allegedly pursuant to ERISA Section 502(a)(1)(B),[3] and it ordered CIGNA to "enforce the plan as reformed." *Id.* at 433–35, 131 S.Ct. at 1875–76. The Court held that such relief was not authorized by Section 502(a)(1)(B), but it might be allowed as "other appropriate equitable relief" under Section 502(a)(3). *Id.* at 438–42, 131 S. Ct. at 1878–80. After highlighting equity courts' remedies of reformation and estoppel, the Court added that "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief" because it resembles the "surcharge" remedy that equity courts could award against trustees in trust disputes. *Id.* at 441–42, 131 S. Ct. at 1880. The Court then distinguished *Amara* from *Mertens* because *Amara* was a suit against a fiduciary, whereas the defendant in *Mertens* was a non-fiduciary. *Id.* at 442, 131 S. Ct. at 1880. The Court ordered a broad remand, and the majority completed this discussion with a disclaimer: it did not fully understand which remedy the district court had imposed or which it might impose on remand under Section 502(a)(3), nor was the Court deciding "which remedies are appropriate on the facts of this case." *Id.* at 442–43, 131 S. Ct. at 1880.

Justice Scalia pointed out the Court's admission that its discussion of remedies was dicta:

> The District Court need not read any of it—and, indeed, if it takes our suggestions to heart, we may very well reverse. Even if we adhere to our dicta that contract reformation, estoppel,

[3] ERISA Section 502(a)(1)(B) states that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

> and surcharge are "'distinctively equitable' remedies," it is far from clear that they are available remedies in this case. The opinion for the Court does not say (much less hold) that they are and disclaims the implication.

*Id.* at 449, 131 S. Ct. at 1884 (Scalia, J., concurring in judgment) (citations omitted).

The Court's dictum, likening money damages to a surcharge remedy by equity courts in trust litigation, is in serious tension with *Mertens* and progeny, which eschewed broadening equity remedies beyond those "typical" in equity. Notably, *Amara* has not been cited for this proposition in any later Supreme Court case.[4]

Nonetheless, this court took *Amara*'s dictum to implicitly overrule *Amschwand,* and it consequently allowed a Section 502(a)(3) monetary remedy in a suit against a fiduciary. *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013). As the majority opinion notes, some lower courts held likewise.

This aspect of *Amara* has, however, been short-lived as Supreme Court cases go. In *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, the Court reverted to the *Mertens* rule, emphasizing that what makes relief equitable under Section 502(a)(3) is whether it was *typically* available in equity. 577 U.S. 136, 147–49, 136 S. Ct. 651, 660–61 (2016). In

[4] Instead, it has only cited *Amara* for (1) its discussion of Section 501(a)(1)(B), *see Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 100, 108, 134 S. Ct. 604, 606–07, 612 (2013), (2) its discussion of plan interpretation, *see US Airways, Inc. v. McCutchen*, 569 U.S. 88, 92 n.1, 102, 133 S. Ct. 1537, 1543 n.1, 1549 (2013), (3) the general proposition that people tend to be risk averse, *see Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 206, 136 S. Ct. 1979, 1987 (2016), and (4) the test from *Mertens*, *Great-West*, and *Sereboff* that *Amara* purported to apply, *see Liu v. SEC*, 591 U.S. 71, 79, 140 S. Ct. 1936, 1942 (2020).

that case, the court considered treatises from the era of the divided bench and concluded that an equitable lien (sought by a fiduciary) against a defendant's general assets was only available in actions at law, not equity. *Id.* at 144–45, 136 S. Ct. at 658. In a footnote, the Court rebuked what it described as the fiduciary's argument that *Amara* "all but overrrul[ed]" *Mertens* and *Great-West:*

> But *CIGNA* reaffirmed that "traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were 'particular funds or property in the defendant's possession.'" In any event, the Court's discussion of § 502(a)(3) in *CIGNA* was not essential to resolving that case, and . . . our interpretation of "equitable relief" in *Mertens*, *Great–West*, and *Sereboff* . . . remains unchanged.

*Id.* at 148 n.3, 136 S. Ct. at 660 n.3. *Montanile* does not distinguish *Amara* factually based on the identity of the *Amara* defendant as a fiduciary. Moreover, rarely has the Supreme Court so thoroughly distanced itself from "dicta" in a previous case. To have purported to "overrule" this point in *Amara*, after all, would not have comported with *Amara* itself, which recognized its statements as dicta and mere ruminations. A court cannot "overrule" its own dicta, which were never precedential to begin with.

Following *Montanile*, one circuit court has repudiated its precedent that relied on *Amara* to bestow essentially compensatory "make-whole relief" or a "surcharge" in a Section 502(a)(3) suit against a plan fiduciary. *See Rose v. PSA Airlines*, 80 F.4th 488, 503–04 (4th Cir. 2023) (rejecting *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012)). Following a comprehensive historical discussion, *Rose* persuasively explained why, under the *Mertens* line of cases, "typical" equitable relief did not include surcharge

or monetary relief other than from traceable funds. *Id.* at 500–04. The court in *Rose* concluded that *Montanile* "rejected the turn that it contemplated in" *Amara*'s dicta, as the Court "expressly declared that the 'interpretation of "equitable relief" in *Mertens* [and] *Great-West . . . remains unchanged.*'" *Id.* at 503 (quoting *Montanile*, 577 U.S. at 148 n.3, 135 S. Ct. at 660 n.3) (alteration in original). The Sixth Circuit recently agreed with *Rose*. *See Aldridge v. Regions Bank*, 144 F.4th 828, 849 (6th Cir. 2025).

Similarly, this court should repudiate *Gearlds*, which was implicitly overruled by *Montanile*, and return to our precedent articulated in *Amschwand*. We must recognize that the dicta in *Amara* rests on a fig leaf, a nonstatutory distinction based on the identity of the defendant, and is inconsistent with the analysis of "typical equity relief" otherwise adopted by the Supreme Court. To the extent that other circuits still fasten on *Amara*, awarding impermissible monetary relief, I respectfully suggest they are wrong.

As applied in this case, Aramark's complaint repeatedly claims compensatory money damages based, *inter alia*, on Aetna's breach of the Master Service Agreement and its mal-administration of the health benefit plans. Absent support from *Gearlds* and a misinterpretation of *Montanile*, there is no foundation for Aramark's recovery of money damages.[5]

---

[5] One other point bears mentioning. In *Varity Corp. v. Howe*, the Supreme Court explained that equitable relief under Section 502(a)(3) is generally available only in the absence of legal relief. 516 U.S. 489, 515, 116 S. Ct. 1065, 1079 (1996). At first glance, it appears that monetary relief *may be* available to Aramark under ERISA Section 409(a) and 502(a)(2). But even though Section 502(a)(2) authorizes "legal relief," Aramark chooses to rely on that provision's additional "equitable" remedies against Aetna as a claimed fiduciary. That is wordplay. Aramark doesn't want relief under Section 502(a)(2) in any event, I suspect, because such relief redounds to "a plan," *not*, as Aramark wishes, to itself as the plan's funder.

If Aetna is a fiduciary as to its MSA with Aramark, Aramark should not recover monetary compensation from Aetna pursuant to Section 502(a)(3). For the above reasons, such relief is not "typical equitable relief" and is therefore impermissible, as held repeatedly by the Supreme Court. I would reverse the district court's contrary conclusion.