**No. 24-40323**

# In the United States Court of Appeals
# for the Fifth Circuit

ARAMARK SERVICES, INCORPORATED GROUP HEALTH PLAN; ARAMARK
SERVICES INCORPORATED, FORMERLY KNOWN AS ARAMARK CORPORATION;
ARAMARK UNIFORM SERVICES, GROUP HEALTH AND WELFARE PLAN;
ARAMARK BENEFITS COMPLIANCE REVIEW COMMITTEE,

*Plaintiffs - Appellees,*

*v.*

AETNA LIFE INSURANCE COMPANY,

*Defendant - Appellant.*

*On appeal from a decision of the U.S. District Court for the Eastern District
of Texas, No. 2:23-cv-446, Hon. James Rodney Gilstrap*

## EN BANC OPENING BRIEF FOR APPELLANT
## AETNA LIFE INSURANCE COMPANY

JOHN B. SHELY
M. KATHERINE STRAHAN
CAMERON POPE
HICKS THOMAS LLP
   *700 Louisiana Street*
   *Suite 2300*
   *Houston, TX 77002*
   *(713) 547-9100*

LISA S. BLATT
CHARLES L. MCCLOUD
NOAH C. MCCULLOUGH
IKENNA N. UGBOAJA
WILLIAMS & CONNOLLY LLP
   *680 Maine Avenue SW*
   *Washington, DC 20024*
   *(202) 434-5000*
   *lmccloud@wc.com*

   *Attorneys for Defendant-Appellant
   Aetna Life Insurance Company*

*Additional counsel on inside cover*

PETER J. KOCORAS
GREGORY H. BERMAN
THOMPSON HINE LLP
 20 North Clark Street
 Suite 3200
 Chicago, IL 60602
 (312) 998-4241

MELISSA RICHARDS SMITH
GILLAM & SMITH, LLP
 303 South Washington Avenue
 Marshall, TX 75670
 (903) 934-8450

# CERTIFICATE OF INTERESTED PERSONS

**No. 24-40323, *Aramark Services Incorporated Group Health Plan et al. v. Aetna Life Insurance Company***

I, Charles L. McCloud, counsel for Defendant-Appellant Aetna Life Insurance Company, and a member of the Bar of this Court, certify that the following listed persons and entities, as described in Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case.

Plaintiffs-Appellees:
Aramark Services Incorporated
  Group Health Plan
Aramark Services Incorporated,
  formerly known as Aramark
  Corporation
Aramark Uniform Services, Group
  Health and Welfare Plan
Aramark Benefits Compliance
  Review Committee

Counsel for Plaintiffs-Appellees:
Jennifer Lee Trulove
Jon Corey
David Schiefelbein
Hal M. Shimkoski
MCCOOL SMITH, P.C.

Defendant-Appellant:
Aetna Life Insurance Company

Counsel for Defendant-Appellant:
Lisa S. Blatt
Charles L. McCloud
Noah C. McCullough
Ikenna N. Ugboaja
WILLIAMS & CONNOLLY, LLP

John B. Shely
Mary K. Strahan
Cameron Pope
HICKS THOMAS, LLP

Gregory H. Berman
Peter J. Kocoras
THOMPSON HINE, LLP

Melissa Richards Smith
GILLIAM & SMITH, LLP

| Amicus Curiae | Counsel for Amicus Curiae |
|---|---|
| America's Health Insurance Plan | Michael H. McGinley |
| | DECHERT, LLP |

Aetna Life Insurance Company is 100% owned by Aetna Inc., which is 100% owned by CVS Pharmacy, Inc., which is 100% owned by CVS Health Corporation ("CVS Health"), a Delaware corporation and publicly traded company. CVS Health has no parent company, and no other publicly held corporation owns 10% or more of its stock.

/s/ Charles L. McCloud
CHARLES L. MCCLOUD
*Counsel for Defendant-Appellant*

Dated: May 28, 2026

## STATEMENT REGARDING ORAL ARGUMENT

In its order granting Aetna's petition for rehearing en banc, the Court directed that this case will be reheard with oral argument. The Court also noted that oral argument will be scheduled sometime during the month of September 2026.

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT.................................................................vii
STATEMENT OF THE ISSUE......................................................................vii
INTRODUCTION ............................................................................................1
STATEMENT OF THE CASE .........................................................................4
    A.    Factual History ................................................................4
    B.    Procedural History .........................................................7
SUMMARY OF ARGUMENT.......................................................................13
STANDARD OF REVIEW .............................................................................16
ARGUMENT ...................................................................................................16
Aramark Seeks Legal Relief Subject to Arbitration...................................16
    A.    ERISA Claims for Monetary Relief Are Equitable Only if
        They Seek Traceable Funds From Defendants............................18
    B.    The District Court and the Panel Erred in Concluding
        Otherwise ......................................................................27
    C.    Aramark Does Not Seek Traceable Funds...................................36
CONCLUSION................................................................................................38

# TABLE OF AUTHORITIES

Page

## CASES

*Aldridge v. Regions Bank*, 144 F.4th 828 (6th Cir. 2025),
*pet. for cert. filed* (Nov. 14, 2025) (No. 25-590) ...................................*passim*

*Ally Align Health, Inc. v. Signature Advantage, LLC*,
574 S.W.3d 753 (Ky. 2019)..................................................................12

*Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007)...............21, 22, 28

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019), *cert. granted*, 141 S. Ct. 107 (2020),
*and dismissed as improvidently granted*, 141 S. Ct. 656 (2021) ...............11

*Brandon v. Interfirst Corp.*, 858 F.2d 266 (5th Cir. 1988) ...............................34

*Brown v. United of Omaha Life Ins. Co.*,
661 F. App'x 852 (6th Cir. 2016).........................................................32

*Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224 (9th Cir. 2020) .........................32

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) .........................................*passim*

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) .......................................10

*Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba*,
243 F.2d 342 (2d Cir. 1957) .................................................................9

*Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013) .................*passim*

*Gimeno v. NCHMD, Inc.*, 38 F.4th 910 (11th Cir. 2022) ..................................32

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002).......................................................................*passim*

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)...........................................................................18

*Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869 (7th Cir. 2013)......................32

*McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012) ...................25, 28

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) .......................................*passim*

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
577 U.S. 136 (2016)...................................................................*passim*

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
117 F.4th 628 (5th Cir. 2024) ..............................................................34

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013)............11

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
687 F.3d 671 (5th Cir. 2012)...............................................................11

*Powell v. Minn. Life Ins. Co.*, 60 F.4th 1119 (8th Cir. 2023)...........................32

Cases—continued:

*Rainier DSC 1, LLC v. Rainier Cap. Mgmt., LP,*
828 F.3d 356 (5th Cir. 2016) (per curiam) ......................16
*Rollins v. Home Depot USA*, 8 F.4th 393 (5th Cir. 2021) .........................34, 35
*Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023),
*cert. denied*, 144 S. Ct. 1346 (2024) .........................................*passim*
*Saleh v. Bush*, 848 F.3d 880 (9th Cir. 2017) ...............................34
*SEC v. Jarkesy*, 603 U.S. 109 (2024)..............................................1, 18
*Staropoli v. Metro. Life Ins. Co.,*
2023 WL 1793884 (3d Cir. Feb. 7, 2023)........................32
*Stokes v. Sw. Airlines*, 887 F.3d 199 (5th Cir. 2018)...............28
*TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC,*
667 S.W.3d 694 (Tex. 2023) .........................................12
*Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob.*
*Advisors, LLC*, 102 F.4th 572 (2d Cir. 2024)...........................31, 32
*WasteCare Corp. v. Harmony Enters., Inc.,*
822 F. App'x 892 (11th Cir. 2020)...................................11

## STATUTES

9 U.S.C.
§ 3......................................................................................9
§ 4......................................................................................9
29 U.S.C.
§ 1104..............................................................................6
§ 1109............................................................................35
§ 1132....................................................................*passim*

## OTHER AUTHORITIES

AAA R-7...................................................................................11
1 D. Dobbs, *Law of Remedies* (2d ed. 1993)
§ 1.1..................................................................................1
§ 4.3................................................................................21
4 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* (5th ed.
1941) § 1080 ...............................................................30
Wright & Miller, *Federal Practice and Procedure* § 4477.3 (3d ed.) ..............34

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1)(A) because it is an appeal of an order refusing a stay of an action under 9 U.S.C. § 3. Defendant-Appellant Aetna Life Insurance Company timely appealed by filing its notice of appeal on May 2, 2024, six days after the district court's April 26, 2024 order.

## STATEMENT OF THE ISSUE

Whether a request for compensatory money damages to remedy an alleged breach of fiduciary duties is an equitable, not legal, remedy.

**INTRODUCTION**

ERISA allows plaintiffs who allege certain statutory violations to obtain "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). It is settled that whether relief qualifies as "equitable" depends on whether that relief was "***typically*** available" in premerger equity courts. *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016); *accord Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993).

It is also settled that money damages are legal in nature. Money damages involve payments from a defendant to compensate a plaintiff for monetary losses from alleged wrongs. *See* 1 D. Dobbs, *Law of Remedies* § 1.1, at 3-5 (2d ed. 1993); *Great-West*, 534 U.S. at 210. "[M]oney damages are the prototypical common law remedy." *SEC v. Jarkesy*, 603 U.S. 109, 123 (2024). Relying on that history, *Mertens* held that plaintiffs who sought "money damages" against a nonfiduciary who knowingly participated in an ERISA "fiduciary's breach of fiduciary duty" asked for "***legal*** relief," not equitable relief. 508 U.S. at 251, 255. Likewise, in *Great-West*, the Supreme Court concluded that plaintiffs who sought to impose "personal liability" on defendants for "***some*** funds" the plaintiffs claimed they were "contractually

1

entitled to" sought legal relief. 534 U.S. at 214. Because these plaintiffs requested "compensation for loss resulting from [a] defendant's breach of legal duty," they sought "money damages," *i.e.*, the "classic form of **legal** relief." *Id.* at 210 (citations omitted); *see* Op.23-24 (dissent).

By contrast, courts of equity could ordinarily award monetary relief only if the plaintiff sought to recover **specific** funds the defendant possessed but that belonged to the plaintiff. *See Great-West*, 534 U.S. at 213 (describing when "a plaintiff could seek restitution *in equity*"). Thus, courts of equity could force a defendant to turn over "specifically identified funds" or "traceable items" that the defendant purchased with those identified funds. *Montanile*, 577 U.S. at 144-45. But any "personal claim against the defendant's general assets" constitutes a "*legal* remedy, not an equitable one." *Id.* at 145.

That well-established framework should resolve this case. The parties here entered into an arbitration agreement that excludes only "equitable relief" from arbitration. ROA.517. Yet, notwithstanding that agreement, Appellee Aramark Services, Inc. turned around and sued Appellant Aetna Life Insurance Company in the Eastern District of Texas, accusing Aetna of breaches of contract that purportedly rise to the level of alleged violations of

ERISA. As relief, Aramark avowedly sought "compensatory money damages" arising from Aetna's putative breaches of fiduciary duties. ROA.115 (citation omitted). Such damages are classic legal relief and Aramark's claims are thus subject to arbitration under the plain terms of the parties' agreement.

In reaching the contrary conclusion, the district court and the panel majority classified Aramark's request for compensatory money damages as equitable relief that courts, not arbitrators, can resolve on the theory that Aramark's relief resembles the "surcharge" remedy that equity courts could award in specialized breach-of-trust cases. But that conclusion is foreclosed by the Supreme Court's decision in *Montanile*, which confirmed that in the ERISA context only relief that courts of equity could ***typically*** award counts as "equitable." 577 U.S. at 147-48 & n.3. Aramark does not seek to recover any specific funds that can be traced back to Aramark; it simply asks for an award of compensatory damages from Aetna's general funds over Aetna's supposed failure to perform its contractual obligations. *See* ROA.44-48. That relief is fundamentally legal, not equitable.

Relying on *Montanile*, both the Fourth and Sixth Circuits have recently and squarely rejected the conclusion that the district court and panel majority here embraced: that money damages to remedy an alleged breach of fiduciary

3

duty qualify as equitable relief simply because the plaintiff labels the request as seeking "surcharge." *See Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 503-04 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1346 (2024); *Aldridge v. Regions Bank*, 144 F.4th 828, 847 (6th Cir. 2025), *pet. for cert. filed* (Nov. 14, 2025) (No. 25-590). This Court should avoid creating a stark circuit split, hew to Supreme Court precedent, and hold that Aramark seeks legal relief that is subject to arbitration.

## STATEMENT OF THE CASE

### A.  Factual History

1.  This case arises from an agreement between Aramark and Aetna regarding Aetna's ongoing administration of Aramark's self-funded health benefit plans. Aramark is one of the nation's largest providers of "food services, facilities, and uniform services" to schools, prisons, hospitals, and other businesses, and employs some 135,000 employees "across the country." ROA.17, 206.

Like many large employers, "Aramark self-funds its employees' medical expenses." ROA.21-22. Specifically, Aramark sponsors and funds the Aramark Services, Inc. Group Health Plan and the Aramark Uniform Services Group Health and Welfare Plan (the Plans), which are organized and operated under ERISA, the federal statute governing such plans. ROA.18-19, 21-22.

4

Through the Plans, Aramark offers "tens of thousands of employees" and their families coverage for medical treatment and dental care. ROA.17-18, 20.

Deciding whether the Plans in fact cover particular medical claims is complex, and requires familiarity with "standard service and treatment codes," the "standard transaction data sets" associated with medical claims, and byzantine federal regulations governing health plans and claims processing. ROA.25-29. Lacking this specialized knowledge, Aramark sought to hire a third-party administrator for the Plans. ROA.21. Third-party administrators support self-insured plans by providing access to a network of medical providers and adjudicating claims for payment that those providers submit. *See* ROA.18, 21.

Aramark initiated a "competitive" bidding process and, after conferring with various "best-in-class benefits consultants," hired Aetna to provide third-party administrator services for the Plans based on Aetna's "expertise" in this area. ROA.21.

2. Effective January 1, 2018, Aramark and Aetna entered into a Master Services Agreement governing their relationship. ROA.511-46. Under that agreement, Aramark remains the designated "plan administrator" and "retains complete authority and responsibility for the Plan[s]." ROA.512.

For its part, Aetna is responsible for various administrative tasks, as well as "provid[ing] access to its network of providers and adjudicat[ing] claims for payment submitted by those providers" in exchange for a monthly fee. ROA.18; *see* ROA.521-23, 540-43. Although the agreement names Aetna as an ERISA fiduciary, it does so only for the limited "purpose of reviewing denied claims." ROA.525. With respect to reviewing denied claims, Aetna owes fiduciary duties under ERISA to "discharge [its] duties with respect to a plan solely in the interests of the participants and beneficiaries" and with "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1). As to other matters, however, the agreement states explicitly that Aetna "has no other fiduciary responsibility" to Aramark. ROA.525.

3. Like countless other commercial contracts, the Master Services Agreement includes an arbitration agreement, which states in relevant part:

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, ***except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief***, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules[.] … The arbitrator may award only monetary relief and is not empowered to award damages other than compensatory damages.

ROA.517 (emphasis added). "[A]pplicable federal law, including ERISA," governs the agreement, though "Connecticut law" applies to the extent "such federal law does not govern." ROA.519. The Commercial Arbitration Rules of the American Arbitration Association ("AAA") governs arbitrations under the MSA. ROA.517.

The parties' arbitration agreement thus broadly requires arbitration of "[a]ny controversy or claim arising out of or relating to the" MSA or "the breach, termination, or validity" of the agreement. ROA.517. The agreement excludes only certain types of "relief" from mandatory arbitration: "temporary, preliminary, or permanent injunctive relief or any other form of equitable relief" is not subject to arbitration. ROA.517. Reinforcing that exclusion, the agreement only lets arbitrators award "monetary relief," specifically "compensatory damages." ROA.517.

## B. Procedural History

1. **Aramark's E.D. Tex. Suit.** Despite agreeing to arbitrate all claims relating to the parties' Master Services Agreement in Connecticut (where Aetna is based), Aramark—a Delaware corporation headquartered in Philadelphia, *see* ROA.18-19—sued Aetna in the Eastern District of Texas in September 2023 over claims that plainly involve that agreement. ROA.4.

7

Aramark's complaint accuses Aetna of misconduct in performing Aetna's duties under the Agreement. Specifically, the complaint alleges that Aetna approved improper or fraudulent claims or payments for Aetna subcontractors, ROA.29-36, provided inadequate subrogation services, ROA.35, made certain post-adjudication adjustments to claims to Aramark's detriment, ROA.35-39, and commingled Plan funds with Aetna's funds, ROA.39-40. Aramark alleges that this asserted conduct constitutes breaches of fiduciary duty and prohibited transactions, all in violation of ERISA. ROA.43-47 (relying on ERISA §§ 502(a)(2) & (a)(3), 29 U.S.C. §§ 1132(a)(2) & (a)(3)).

Aramark's complaint demanded (1) "any and all losses resulting from Aetna's breach of its fiduciary duty"; and (2) "any and all benefit or profits" that Aetna "made as a result of its breach." ROA.44-48. Aramark also requested any other relief the Court "deem[ed] appropriate," plus attorneys' fees. ROA.43-48. Finally, Aramark demanded "a preliminary injunction" to compel Aetna to produce "all Plan claims data." ROA.48.

2. **Aetna's Petition to Compel and Motion to Stay the Texas Action.** The MSA designated Hartford, Connecticut as the site of the parties' arbitration, so on February 28, 2024, Aetna filed a petition in the District of

Connecticut seeking an order compelling arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 4; *Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba*, 243 F.2d 342, 346 (2d Cir. 1957) (requiring that "arbitration be had" in the district where a motion to compel is filed). The next day, Aetna moved to stay Aramark's lawsuit in the Eastern District of Texas, pursuant to Section 3 of the FAA. *See* 9 U.S.C. § 3; *see* ROA.370-401.

On April 26, 2024, the Eastern District of Texas denied Aetna's motion to stay. ROA.299-307. As relevant here, the court determined that Aramark's claims sought "equitable relief" and thus were not "subject to mandatory arbitration" under the MSA. ROA.303-05. The court acknowledged that Aramark's ERISA claims sought "money damages resulting from Aetna's alleged breach of its fiduciary duty." ROA.303. But the court still considered those damages equitable under *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013), which held that a "surcharge," *i.e.*, an "award of make-whole relief" that equity courts could award in breach-of-trust cases, qualifies as "equitable relief" under ERISA. *Id.* at 451-52 (citations omitted); *see* ROA.305-06. And the court rejected Aetna's argument that later Supreme Court ERISA decisions superseded *Gearlds*. ROA.304, 306.

9

Shortly thereafter, Aramark's attorneys filed two more actions against Aetna in the Eastern District of Texas, asserting virtually identical allegations on behalf of other employers. Aetna and the Plaintiffs in those actions entered stipulations and submitted joint motions to stay both cases pending resolution of this appeal. *See W.W. Grainger Inc. v. Aetna Life Ins. Co.*, No. 2:24-cv-352 (E.D. Tex. Aug. 12, 2024), ECF 14, 16; *Huntsman Int'l LLC v. Aetna Life Ins. Co.*, No. 2:24-cv-404 (E.D. Tex. Aug. 19, 2024), ECF 8, 9. The joint motions were granted and the cases remain stayed. *W.W. Grainger Inc.*, ECF 17; *Huntsman Int'l LLC*, ECF 11.

On May 2, 2024, Aetna appealed the district court's denial of a stay pending arbitration, ROA.309, and, on May 7, asked the district court to stay its "proceedings [pending Aetna's] interlocutory appeal" based on the Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 744 (2023). ROA.324-25. Notwithstanding *Coinbase*'s clear "require[ment]" that the district court "stay its proceedings" pending this appeal, 599 U.S. at 747, the court allowed discovery to continue and did not grant Aetna's motion until Aramark withdrew its opposition three months later. *See* ROA.324, 721.[1]

---

[1] In light of the Eastern District of Texas's stay order, proceedings in the District of Connecticut are also stayed. ROA.727. The district court in

3.    **The Panel's Opinion.**  On December 18, 2025, the panel affirmed the district court over Judge Jones's partial dissent.  The panel first held that the parties' arbitration agreement reserved arbitrability questions for "courts, not arbitrators," reasoning that the agreement's "carveout" provision renders claims for equitable relief "non-delegable."  Op.12-13.[2]

Connecticut decided to "wait for a ruling from the Fifth Circuit" to avoid the possibility of conflicting rulings in two districts.  ROA.746.  But, absent the "prior pending action" the district Court in Connecticut expressed that it anticipated the petition "would be granted in the ordinary course."  ROA.769-70.  Moreover, had the Eastern District of Texas declined to stay the litigation there pending an interlocutory appeal to this Court, the district court in Connecticut would have proceeded to rule on the petition to compel arbitration so that Aetna did not "lose the race to the courthouse."  ROA.774-75.  The Connecticut court further stated that it will "pick up the petition" if the Fifth Circuit "direct[s] the district court to stay the Texas case" and provides "that Connecticut ought to . . . decide whether to order arbitration."  ROA.746.

[2] Aetna argued that the parties had delegated threshold issues to the arbitrator (including the question of whether claims were legal or equitable) by incorporating the AAA Rules.  Those rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA R-7(a); *see also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (AAA Rules clearly and unmistakably delegate arbitrability questions to arbitrator); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019) (same), *cert. granted*, 141 S. Ct. 107 (2020), *and dismissed as improvidently granted*, 141 S. Ct. 656 (2021).  Aetna maintains that is the best reading of the arbitration clause, in light of *Henry Schein* and the emerging consensus among other federal circuit and state high courts.  *See WasteCare Corp. v. Harmony Enters., Inc.*, 822 F. App'x 892, 896 (11th Cir. 2020); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075-76 (9th Cir.

The panel then held that Aramark's claims were equitable and therefore non-arbitrable because they sought "make-whole relief" for a "violation of a duty imposed upon [a] fiduciary," which this Court in *Gearlds* deemed equivalent to an equitable "surcharge." Op.19-20 (citation omitted). It distinguished the Supreme Court's subsequent decision in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), on the ground that "*Montanile* said nothing about ERISA fiduciaries." Op.19.

Judge Jones dissented in part, noting that the panel majority's "perfunctory reliance on [*Gearlds*] mistakenly reads both Supreme Court authority and the limits of 'typical' equitable remedies." Op.23. She explained that for over thirty years, the Supreme Court has "strictly followed" the principle that "equitable relief" under § 502(a)(3) refers only to "those categories of relief that were ***typically*** available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Op.24 (citation omitted). The panel majority was wrong to rely on *Gearlds* because it had

---

2013); *see also TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 714 (Tex. 2023); *Ally Align Health, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 757 (Ky. 2019).

been "implicitly overruled" by *Montanile*. Op.29. *Gearlds* relied entirely on a "fig leaf, a nonstatutory distinction based on the identity of the defendant" that was "inconsistent with the analysis of 'typical equity relief' otherwise adopted by the Supreme Court." Op.29.

4. **En Banc Petition.** On January 16, 2026, Aetna filed a petition for rehearing en banc. This Court granted the petition and vacated the panel's opinion on April 28.

## SUMMARY OF ARGUMENT

Aramark's complaint seeks compensatory money damages from Aetna's general funds over an alleged breach of fiduciary duties. As the Fourth and Sixth Circuits have recognized, the Supreme Court's decision in *Montanile* confirms that such damages are ***legal*** relief, not equitable relief. This Court should likewise follow *Montanile* and avoid creating a circuit split.

A. Again, relief qualifies as equitable under ERISA only if it was ***typically*** available in pre-merger equity courts. In *Mertens* and *Great-West*, the Supreme Court applied that history-focused test to reject plaintiffs' attempts to classify as equitable various forms of compensatory monetary damages. The Court held that the scope of equitable relief is not defined by the special category of remedies courts of equity could sometimes award in the

13

cases over which they possessed exclusive jurisdiction. Instead, the Court looked to the more typical cases where courts of equity and courts of law possessed concurrent jurisdiction. In such cases, courts of equity could award monetary relief only where plaintiffs sought specific funds they rightfully owned but the defendant wrongfully possessed.

In *Amara*, the Supreme Court contemplated a departure from the standard adopted in *Mertens* and *Great-West*. *Amara* suggested in dicta that atypical remedies courts of equity could sometimes award in exclusive jurisdiction cases, such as "make whole" relief, might be equitable. But *Montanile* decisively rejected the turn that *Amara* contemplated, instead reiterating that equitable relief is limited to remedies that were typically available at equity. Two circuits have squarely addressed *Montanile*'s effect on *Amara*, and they agree that, post-*Montanile*, monetary relief must seek specific and traceable funds to qualify as equitable.

B. The district court and the panel majority considered themselves bound by this Court's decision in *Gearlds*, which broke with prior circuit precedent and held that make-whole damages for breaches of fiduciary duty qualify as equitable relief under ERISA. But, as discussed, the Supreme Court's subsequent decision in *Montanile* confirms that *Gearlds* erred in

14

looking beyond the relief that was ***typically*** available at equity. This Court can and should join the Fourth and Sixth Circuits in course-correcting its precedent in light of the Supreme Court's guidance in *Montanile*.

The district court and the panel dismissed *Montanile* because the defendant in that case was not an ERISA fiduciary. But the fiduciary-status distinction that *Amara* suggested—and that the district court and the panel majority embraced—is irrelevant under controlling Supreme Court precedent. There is also no common law basis for classifying make-whole damages for a breach of fiduciary duties as legal when sought against nonfiduciaries (as the Supreme Court has held) yet equitable when asserted against the fiduciary itself.

C. Applying the correct test, Aramark seeks quintessential legal relief. Aramark's request for "any and all losses resulting from" Aetna's alleged breach of fiduciary duties is a demand for compensatory damages and thus a legal remedy. ROA.48. Aramark's further request for "any and all benefit or profits" that Aetna allegedly obtained from this misconduct cannot qualify as equitable because Aramark has not identified any specific funds in Aetna's possession distinct from Aetna's general assets. ROA.45.

15

Because Aramark seeks legal relief, an arbitrator must resolve whether Aramark is entitled to that remedy.

## STANDARD OF REVIEW

This Court "review[s] a district court's denial of a motion to stay litigation pending arbitration *de novo*." *Rainier DSC 1, LLC v. Rainier Cap. Mgmt., LP*, 828 F.3d 356, 360 (5th Cir. 2016) (per curiam).

## ARGUMENT

The parties here undisputedly entered a valid arbitration agreement. ROA.109, 301-02. That agreement mandates arbitration under AAA Rules of "any controversy or claim arising out of or relating to" the Master Services Agreement, "except for … any … form of equitable relief." ROA.517. Aramark seeks legal relief, so this case must be arbitrated.

### Aramark Seeks Legal Relief Subject to Arbitration

Aramark seeks to recover "compensatory money damages" from Aetna's general funds over Aetna's "alleged breach of … fiduciary duty" under ERISA. ROA.303-05. "Money damages are, of course, the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (collecting cases).

The district court and the panel majority nonetheless deemed that relief "equitable" based on *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448 (5th Cir.

16

2013), which held that the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), required classifying awards of "compensatory money damages" for alleged breaches of fiduciary duties as equitable. ROA.304-05 (citations omitted); Op.19-20.

But the Supreme Court decisively rejected that approach in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), as the Fourth and Sixth Circuits have recognized, *see Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 503-04 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1346 (2024); *Aldridge v. Regions Bank*, 144 F.4th 828, 849 (6th Cir. 2025), *pet. for cert. filed* (Nov. 14, 2025) (No. 25-590).[3] The Fourth and Sixth Circuits have thus held that the exact remedy that Aramark seeks here—compensatory damages for an alleged breach of fiduciary duties under

---

[3] The Supreme Court recently issued an order calling for the views of the Solicitor General in *Aldridge v. Regions Bank*, No. 25-590 (U.S.), which, as discussed, presents the question of whether compensatory damages can constitute "equitable relief" within the meaning of 29 U.S.C. § 1132(a)(3). Notably, the petitioner in *Aldridge* argued that certiorari was necessary because the panel decision in this case created a split amongst the "several circuits [that] have expressly considered *Amara* and *Montanile*." *See* Petitioners' Reply Brief at 3, *Aldridge v. Regions Bank*, No. 25-590 (U.S. Mar. 17, 2026). This Court has now vacated that decision and should reject Aramark's invitation to create a circuit split for the Supreme Court to consider. *See infra* pp. 27-36.

ERISA—is legal, not equitable. *Rose*, 80 F.4th at 503-04; *Aldridge*, 144 F.4th at 847-49. This Court should avoid creating a circuit split, follow *Montanile*, and revert to the well-settled rule that compensatory damages are not equitable relief.

### A. ERISA Claims for Monetary Relief Are Equitable Only if They Seek Traceable Funds From Defendants

1. The parties' arbitration agreement is governed by "applicable federal law, including ERISA." ROA.519. The parties thus agree that the agreement's reference to "equitable relief" tracks the well-established division between legal and equitable relief reflected in federal law. *See* ROA.113-17, 384-88; Red Br. 42-43; *see also, e.g., Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999); *SEC v. Jarkesy*, 603 U.S. 109, 122-23 (2024). In the ERISA context, the Supreme Court established the governing rule over 30 years ago: "equitable relief" means only those remedies that equity courts could "typically" award. *Mertens*, 508 U.S. at 256-59.

a. The Supreme Court first confronted ERISA's distinction between equitable and legal relief in *Mertens*. There, the Court considered whether a plaintiff's request for monetary relief for "all losses" that were "sustained as a result of [an] alleged breach of fiduciary duties" qualified as "appropriate

equitable relief" under Section 502(a)(3) of ERISA. *Id.* at 255 (quoting 29 U.S.C. § 1132(a)(3)). The plaintiff argued that relief should be considered equitable if courts of equity could have granted it in the "particular case at issue." *Id.* at 256. In making that argument, the plaintiff pointed to the remedies that courts of equity could award in cases arising under their "exclusive jurisdiction"—that is, cases where only courts of equity could exercise jurisdiction because courts of law did not recognize the cause of action. *Id.*; *accord Rose*, 80 F.4th at 497. In those exclusive jurisdiction cases, like actions for breach of trust, equity courts were empowered to grant broad relief, including prototypical legal remedies such as money damages, because no relief at all was available in courts of law. *See Mertens*, 508 U.S. at 256; *Aldridge*, 144 F.4th at 845. By contrast, in cases where courts of equity and courts of law shared concurrent jurisdiction, like actions for breach of contract, equity could not provide legal remedies like money damages. *See Rose*, 80 F.4th at 497; *Aldridge*, 144 F.4th at 845. Legal remedies remained the province of law courts.

*Mertens* squarely rejected the plaintiff's proposal to define "equitable relief" by reference to equity courts' exclusive jurisdiction. As the Court explained, that approach "would limit the relief *not at all*," because "*all* relief

available for breach of trust could be obtained from a court of equity," including classic legal relief like money damages. 508 U.S. at 257. To give meaning to ERISA's distinction between equitable and legal relief, the Supreme Court held that "equitable relief" must instead be limited to "those categories of relief that were ***typically*** available in equity." *Id.* at 256. And because exclusive jurisdiction cases were the exception, remedies uniquely available in those cases necessarily were not "typically" available in equity.

*Great-West* reaffirmed *Mertens*'s focus on typical equitable remedies. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). The Court held that ERISA's authorization to seek "appropriate equitable relief" could not be used to "compel the defendant to pay a sum of money to the plaintiff." *Id.* at 210 (citation omitted). That was so, the Court explained, because requests for "compensation for loss resulting from [a] defendant's breach of legal duty" seek "money damages," the "classic form of ***legal*** relief." *Id.* (citations omitted); *accord Rose*, 80 F.4th at 498, 504; *Aldridge*, 144 F.4th at 848. In the days of the divided bench, such requests were "[a]lmost invariably" the subject of suits "for money damages," seeking to force defendants "to pay money—relief that was not typically available in equity." *Great-West*, 534 U.S. at 210 (citation omitted).

20

Along the way, *Great-West* reiterated that the "special equity-court powers applicable to trusts" in exclusive jurisdiction cases do not define "equitable relief" under ERISA. *Id.* at 219. It thus discounted trust-law remedies as "simply inapposite" to whether a given type of relief was typically available at equity. *Id.* *Great-West* also clarified that calling relief "equitable" does not make it so. In particular, *Great-West* concluded that equitable restitution—a remedy ordinarily sounding in equity—is "equitable" for ERISA purposes only if it seeks the return of money "belonging in good conscience to the plaintiff" that "could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213 (citing 1 D. Dobbs, Law of Remedies § 4.3(1) at 587-88). Relief predicated on personal liability and seeking recovery from a defendant's general assets flunks that test. *Id.* at 214; *see* Blue Br. 42-43.

Following *Mertens* and *Great-West*, this Court recognized that so-called "make-whole damages"—money damages to compensate for an alleged breach of fiduciary duty—must be classified as legal, not equitable. Such damages, the Court explained, were not among the "categories of relief '*typically* available in equity.'" *Amschwand v. Spherion Corp.*, 505 F.3d 342, 345 (5th Cir. 2007) (citation omitted). Any other approach would sweep in the

21

"panoply of legal remedies" that equity courts "sometimes awarded" in atypical situations, which would render the "term 'equitable'" meaningless. *Id.*

*Amschwand* also expressly "rejected the proposition" that the "identity of the defendant" affected how equitable relief is defined. Op.25 (dissent); *see Amschwand*, 505 F.3d at 346-47 (noting there was no "textual argument for drawing this distinction" under ERISA and that it had "been rejected by many of our sister circuits"). After all, "*Mertens* and its progeny state that [Section] 502(a)(3) relief is affirmatively **not** grounded in 'the special equity-court powers [applicable] to trusts.'" *Amschwand*, 505 F.3d at 347 (quoting *Great-West*, 534 U.S. at 219).

b. Almost a decade after *Great-West*, the Supreme Court briefly toyed with an alternative approach to defining equitable relief. In *Amara*, the Court held that the plaintiff could not recover under the provision that was the basis for the lawsuit, Section 502(a)(1)(B) of ERISA. 563 U.S. at 425. Although that holding resolved the case, the Court went on to "identify equitable principles that the [district] court might apply on remand." *Id.* As relevant here, the Court suggested that a request for "make-whole" monetary relief against a fiduciary could qualify as "equitable" under ERISA § 502(a)(3) by analogizing such relief to the "surcharge remedy" that courts in equity could

22

award against trustees who committed a "breach of trust." 563 U.S. at 442. As noted, *supra* pp. 19-20, courts of equity had "exclusive jurisdiction" over trust cases, and that exclusive jurisdiction broadened the range of remedies courts in equity could award in those cases only. *Rose*, 80 F.4th at 497-98. And in those cases, a defendant could be ordered to pay a "surcharge," which subjected them "to *personal* liability based on the *plaintiff's losses*." *Rose*, 80 F.4th at 498. *Amara* thus signaled that the surcharge remedy's roots in equity courts' exclusive jurisdiction might make it "equitable." 563 U.S. at 441-42.

Justice Scalia, joined by Justice Thomas, wrote separately to explain that the Court's "discussion of the relief available under § 502(a)(3) and *Mertens* is purely dicta, binding upon neither us nor the District Court." *Id.* at 449 (Scalia, J., concurring). Justice Scalia added that although it was "beyond [him]" why the Court had offered its "blatant dictum," the district court "need not read any of it—and, indeed, if it takes our suggestions to heart, we may very well reverse." *Id.* at 448-49.

c. As Justice Scalia predicted, the shift *Amara*'s dicta contemplated was "short-lived." Op.27 (dissent). Five years after the decision, *Montanile* flatly rejected an *Amara*-based attempt to expand ERISA's definition of equitable relief. The respondent in *Montanile* contended that *Amara* "all but

overrul[ed]" the history-focused test adopted in *Mertens* and *Great-West*. *Montanile*, 577 U.S. at 148 n.3. The Supreme Court "rebuked" that suggestion, Op.28 (dissent), clarifying that the "interpretation of 'equitable relief' in *Mertens* [and] *Great-West* … remains unchanged," *Montanile*, 577 U.S. at 148 n.3. The Court reiterated that it had "long rejected the argument that 'equitable relief'" includes whatever remedies a court of equity could "provide in the particular case at issue"—*e.g.*, in exclusive-jurisdiction cases. *Id.* at 147. Simply put, classic legal remedies are not "equitable relief" under ERISA, even if "a court of equity could sometimes award" them. *Id.* at 149. Any other approach would allow plaintiffs to relabel almost any relief as "equitable" and render any distinction between legal and equitable remedies "meaningless." *Mertens*, 508 U.S. at 256-58 & n.8; *accord Great-West*, 534 U.S. at 219.

2. Two of this Court's sister circuits have considered *Montanile*'s effect on *Amara*. Both have concluded that *Montanile* "rejected the turn" that the Court "contemplated in *Amara*." *Rose*, 80 F.4th at 503; *accord Aldridge*, 144 F.4th at 849.

The Fourth Circuit initially understood *Amara* as a "striking development" that bound it to "expand[]" ERISA's definition of "equitable

24

relief" to include "make-whole relief" in "breach of fiduciary duty" cases. *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 180 (4th Cir. 2012). But in *Rose*, the Fourth Circuit considered "*Montanile*'s effect on *Amara*" for the first time. 80 F.4th at 504.

As the Fourth Circuit recognized in *Rose*, the central insight of *Montanile*, and *Mertens* and *Great-West* by extension, is that relief is only "typically available" if equity courts could award it in the typical cases where courts of equity and courts of law shared concurrent jurisdiction. *Id.* at 500, 503-04. *Amara* veered off these tracks, suggesting that surcharge is distinguishable because it was an "exclusively equitable" remedy that could be brought against a trustee for breach of duty. 563 U.S. at 441-42. But *Montanile* clarified that "legal remedies" of this sort that were normally "beyond the scope of [equity courts'] authority" cannot qualify as "equitable" because they were not "***typically*** available in equity." *Rose*, 80 F.4th at 504 (quoting *Montanile*, 577 U.S. at 147). Because *Montanile* put *Amara*'s contrary suggestion "to rest," the Fourth Circuit concluded that its "prior decisions" that embraced *Amara* were "inconsistent with the Supreme Court's dictates" and thus that it was "not bound to follow them." *Id.* (citations omitted). Accordingly, the Fourth Circuit "return[ed] to the same rule" it

applied "before *Amara*: Plaintiffs that seek merely personal liability upon the defendants to pay a sum of money ask for legal, not equitable, relief under § 502(a)(3)." *Id.* (cleaned up); *see also id.* at 504-05 (reiterating that "make-whole monetary relief" is "unavailable under § 502(a)(3)" (cleaned up)).

The Sixth Circuit recently "side[d] with the Fourth Circuit" on this question. *Aldridge*, 144 F.4th at 847. As the Sixth Circuit explained, surcharge is merely the "label" that equity courts "sometimes" used in trust cases to describe what law courts "called damages." *Id.* at 848. There is no analytical distinction between the concepts: both damages and surcharge compensate a plaintiff for the losses caused by a defendant. *Id.* They are thus both "the classic form of **legal** relief." *Id.* at 845 (quoting *Mertens*, 508 U.S. at 255).

The Sixth Circuit also recognized that "*Amara*'s dicta conflicts with *Mertens*'s holding" that the "legal remedies" available to equity courts when "exercising their exclusive jurisdiction in trust cases" cannot "qualify as 'equitable relief.'" *Id.* at 848-49. Because *Montanile* "reaffirmed" that holding—and "distanced [the Court] from *Amara*'s dicta"—the Sixth Circuit "refuse[d]" to embrace *Amara* and its "purported distinction of *Mertens*." *Id.* at 849.

## B.  The District Court and the Panel Erred in Concluding Otherwise

The district court and the panel erred in classifying Aramark's request for compensatory damages as equitable rather than legal.  The various justifications offered by the panel and Aramark cannot overcome the weight of the Supreme Court's precedents.

1.  ***Viability of* Gearlds.**  Both the panel majority and the district court considered themselves "bound" by this Court's decision in *Gearlds* to classify Aramark's demand for "compensatory money damages" as "equitable in nature."  ROA.304-05 (citing *Gearlds*, 709 F.3d at 448); Op.19.  *Gearlds* held that "make-whole damages for breach of fiduciary duty" were "equitable relief" under ERISA because equity courts could provide such relief in exclusive-jurisdiction trust cases.  709 F.3d at 450-52.  But as Judge Jones explained—and as the Fourth and Sixth Circuits have held, *see supra* pp. 24-26—the Supreme Court's intervening decision in *Montanile* rejected that approach and reiterated that "legal remedies" of this sort "are not equitable relief" even if "a court of equity could sometimes award" them.  577 U.S. at 149.

*Gearlds* is thus in "serious tension" with "Supreme Court authority" and the historical "limits of 'typical' equitable remedies." Op.23, 27 (dissent).  And

27

because *Montanile* "disavow[ed] the mode of analysis on which [*Gearlds*] relied," this Court has an "***obligation***" to recognize that *Gearlds* "no longer states the law." *Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) (citations omitted).

That explains why the Fourth Circuit disavowed its *Gearlds*-equivalent precedent, on which *Gearlds* heavily relied, classifying make-whole remedies for breaches of fiduciary duty as equitable as "flatly inconsistent" with *Montanile*. *Rose*, 80 F.4th at 503-04 (repudiating *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 181 n.2 (4th Cir. 2012)); *see Gearlds*, 709 F.3d at 451-52 (opting to "follow" *McCravy*'s "path"). The Sixth Circuit has likewise course-corrected given the Supreme Court's guidance in *Montanile* that the "legal remedies" available in "trust cases" do "not qualify as 'equitable relief.'" *Aldridge*, 144 F.4th at 849 (disavowing "unpublished cases" that suggested "surcharge" qualifies as equitable relief in light of *Amara*). This Court should similarly recognize that *Montanile* "put *Amara*[] ... to rest," *Rose*, 80 F.4th at 504, and "return to [its] precedent articulated in *Amschwand*," Op.29 (dissent).

2. **Amara *and Fiduciaries.*** The panel majority and the district court concluded that *Gearlds*—and its fiduciaries-are-special reading of

*Amara*—remains binding because "*Montanile* said nothing about ERISA fiduciaries." Op.19; *see* ROA.306 (similar). But *Montanile* confirms that distinction is irrelevant. *Amara* focused on "the identity of the defendant"— and, more specifically, a defendant's fiduciary status—because it viewed that as the "fig leaf" that opened the door to consideration of exclusive-jurisdiction trust cases where courts of equity awarded "make-whole relief." Op.28-29 (dissent); *see Amara*, 563 U.S. at 442 (stressing that being a fiduciary is "analogous to [being] a trustee"). *Montanile* then clarified that the exclusive-jurisdiction trust cases are irrelevant, just as the Supreme Court had reasoned in its earlier cases (*e.g.*, *Great-West* and *Mertens*).

To reiterate: relief qualifies as "equitable" only if a plaintiff seeks to recover "those categories of relief that were ***typically*** available in equity." *Great-West*, 534 U.S. at 219 (quoting *Mertens*, 508 U.S. at 256); *Montanile*, 577 U.S. at 142. The specialized trust cases *Amara* mused about were ***atypical***, so they cannot define the contours of "equitable relief." *See Rose*, 80 F.4th at 503-04; *Aldridge*, 144 F.4th at 848-49.

*Amara*'s special rule for claims against fiduciaries is also untenable because the "distinction" between fiduciaries and nonfiduciaries "did not matter under the common law of trusts." *Aldridge*, 144 F.4th at 848. In trust

cases, equity courts could grant "money damages" against not just the trustee but also "against third persons who knowingly participated in the trustee's breach." *Mertens*, 508 U.S. at 256. Indeed, the treatises that *Amara* relied on for its fiduciaries-are-special rule "made this point," stressing that "'[i]f third persons are parties to a breach of trust, they are equally liable with the trustee.'" *Aldridge*, 144 F.4th at 848 (quoting 4 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 1080, at 230 (5th ed. 1941)); *see id.* (collecting common-law sources). *Mertens* rejected classifying "money damages" as "equitable relief" when asserted against "nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty." 508 U.S. at 251, 256; *see supra* pp. 18-20. And there is simply "[n]o common-law basis" for classifying such damages any differently when asserted against the fiduciary itself. *Aldridge*, 144 F.4th at 848-49.

Aramark is thus wrong to dismiss the Supreme Court's decisions in *Mertens* and *Great-West* as being "inapplicable if the defendant is a fiduciary." Red Br. 56-57; Opp. to En Banc Pet. 9-10. As those cases make clear, whether a defendant is a fiduciary is not dispositive of whether the claims asserted against that defendant are legal or equitable. *See Aldridge*, 144 F.4th at 848 ("*Mertens*'s logic—that the phrase 'equitable relief' in § 1132(a)(3) does not

30

include this monetary remedy because it was not '***typically*** available in equity' outside trust cases—applies to claims against fiduciaries too."); *see also supra* pp. 18-21, 28-29.

3. ***Other Circuits***. Aramark claims that "five circuits" agree with the panel's "understanding of *Amara*." Opp. to En Banc Pet. 11 (citing cases from the Second, Seventh, Eighth, Ninth, and Eleventh Circuits). But none "considered the viability of *Amara*'s rule after *Montanile*." *Rose*, 80 F.4th at 504; *see* Blue Br. 49 n.4.

Take the Second Circuit, which Aramark previously portrayed as standing by *Amara* "notwithstanding … *Rose*." Red Br. 59. In fact, the decision Aramark highlights never even cited the Fourth Circuit's decision in *Rose*, let alone addressed whether *Montanile* abrogated *Amara*. *See Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 602-05 (2d Cir. 2024). The Second Circuit did quote *Montanile* for the general proposition that equitable relief is "limited to those categories of relief that were typically available in equity," *id.* at 602, but it simply assumed that its earlier reading of *Amara* endured without engaging with what

*Montanile* said about *Amara*,[4] *see id.* at 602-05. The Second Circuit certainly did not suggest that it intended to create a circuit split as to *Amara*'s viability. *Id.* at 602-05; *see* Gray Br. 18-19.

The other circuit decisions that Aramark highlights fare no better. They either predate *Montanile*, *see Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869 (7th Cir. 2013), or do not cite *Montanile* at all, *see Powell v. Minn. Life Ins. Co.*, 60 F.4th 1119, 1123 (8th Cir. 2023); *Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 914-15 (11th Cir. 2022); *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020).[5] There is good reason to think that if those courts considered *Montanile*, they would join the Fourth and Sixth Circuits in acknowledging that *Amara*'s dicta has been relegated to the judicial dustbin.[6]

---

[4] The Second Circuit's lack of engagement with *Montanile*'s clarification of *Amara* is unsurprising, as the parties in *White Oak* did not brief the question.

[5] Before the panel, Aramark also claimed that the Third and Sixth Circuits "continue to follow *Amara*." Red Br. 51-53 & n.15. But the decisions Aramark identified also did not cite—let alone grapple with—*Montanile*. *See Staropoli v. Metro. Life Ins. Co.*, 2023 WL 1793884, at *4 (3d Cir. Feb. 7, 2023); *Brown v. United of Omaha Life Ins. Co.*, 661 F. App'x 852, 859-61 (6th Cir. 2016); *see also* Gray Br. 19.

[6] In any event, "to the extent" those circuits "still fasten on *Amara*," they are simply "wrong." Op.29 (dissent); *see supra* pp. 24-28.

4. ***Prior Aetna Arguments***. Both the district court and Aramark have highlighted a smattering of briefs and opinions from arbitrations and litigation where Aetna argued that ERISA claims against it were equitable because it was an ERISA fiduciary.[7] ROA.306; Red Br. 60-62; *see* ROA.130-38, 140-45, 148-69, 172-91, 194-203. In their view, Aetna's supposedly "inconsistent positions" support characterizing Aramark's money-damages remedy as "equitable." ROA.306; Red Br. 60-62 (similar).

But Aetna's position here is not "inconsistent" with its previous positions. Some of those cases pre-date *Montanile* and none grapple with it; all pre-date the Fourth Circuit's recognition that *Montanile* abrogated precedents over-reading *Amara* to greenlight all sorts of trust-like remedies as equitable. *E.g.*, ROA.159-61, 200-03. Others did not involve the "surcharge" remedy that Aramark and the district court embraced. *E.g.*, ROA.160.

---

[7] *See* Arbitrator's Decision at 85-92, *Group 1 Auto., Inc. v. Aetna Life Ins. Co.*, No. 4:20-cv-1290 (S.D. Tex. Aug. 14, 2020), ECF 27-3; Mot. to Strike Jury Demand, *Minerley v. Aetna, Inc.*, No. 13-cv-1377 (D.N.J. Feb. 16, 2017), ECF 106; Mot. to Dismiss, *United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, No. 8:14-cv-211 (M.D. Fla. Sept. 24, 2014), ECF 61; Mot. to Dismiss, *Simon v. Aetna Life Ins. Co.*, No. 6:18-cv-1097 (M.D. Fla. Aug. 10, 2018), ECF 9; Reply in Supp. of Mot. to Dismiss, *Peck v. Aetna Life Ins. Co.*, No. 3:04-cv-1139 (D. Conn. Nov. 4, 2004), ECF 23.

Regardless, the argument is of dubious legal relevance, as Aramark has never contended that it meets the standard for judicial estoppel. *See* Gray Br. 21; *see also Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 638 (5th Cir. 2024) (articulating elements of estoppel). Nor could it: Aetna can hardly be estopped from pointing out that intervening Supreme Court precedent calls previous approaches into question, particularly now that the Fourth and Sixth Circuits have held as much. Aetna's "[r]ecognition of this change in the case law" does "not raise an issue of judicial estoppel." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268-69 (5th Cir. 1988); *see Saleh v. Bush*, 848 F.3d 880, 887 n.5 (9th Cir. 2017) (explaining that positions that "rest[] on an intervening change in law" are "not subject to judicial estoppel"); Wright & Miller, *Federal Practice and Procedure* § 4477.3 (3d ed.) (similar).

5. ***Aramark's New Arguments***. In a last-ditch effort to avoid en banc review, Aramark suggested for the first time that "equitable relief" under the parties' agreement might be "broader" than "equitable relief under § 502(a)(3)." Opp. to En Banc Pet. 13-14. But Aramark "forfeited" this "argument by failing to raise it" before the district court or the panel. *Rollins v. Home Depot USA*, 8 F.4th 393, 397-98 (5th Cir. 2021); *see* ROA.113-17; Red Br. 42-62.

Even setting that aside, Aramark has not explained why the scope of "equitable relief" under this agreement would depart from the "applicable federal law" the agreement incorporates, ROA.519, let alone why the parties would agree to define equitable relief in a way that makes the distinction between legal and equitable remedies "meaningless," *Mertens*, 508 U.S. at 256-58 & n.8; *see supra* pp. 23-24.

In opposing en banc review, Aramark also suggested for the first time that ERISA's text "supports this defendant-based distinction" because certain provisions "provide[] broader relief against fiduciaries" than nonfiduciaries. Opp. to En Banc Pet. 10 (citing ERISA §§ 409(a), 502(a)(2)-(3)). Aramark has likewise "forfeit[ed]" this argument by "failing to raise" it until this late stage. *See Rollins*, 8 F.4th at 397. Still, this new argument illustrates Aramark's "wordplay" and gamesmanship. Op.29 n.5 (dissent). The provisions Aramark highlights—specifically, Sections 409(a) and 502(a)(2)—authorize "legal relief" and thus "may" have made "monetary relief … available to Aramark." Op.29 n.5 (dissent); *see* 29 U.S.C. §§ 1109(a), 1132(a)(2) (making fiduciaries "personally liable" to "the plan" for "breaches … of the[ir] responsibilities"). But Aramark, as "master of its complaint," Opp. to En Banc Pet. 15, chose not

to "rely on" these provisions in a bid to avoid arbitration and ensure money damages "redound[]" to itself instead of the Plans, *see* Op.29 n.5 (dissent).

### C. Aramark Does Not Seek Traceable Funds

Applying the correct test, Aramark seeks legal, not equitable, relief. Aramark asserts ERISA violations for which it seeks to recover "any and all losses resulting from" Aetna's supposed "breach[]" of "its fiduciary duties" and "any and all benefit or profits" that Aetna realized as a result. ROA.44-48. Aramark's "losses resulting from" Aetna's supposed misconduct are quintessential "compensatory money damages," as Aramark tellingly conceded before the district court. ROA.44-48, 115, 304. The plaintiff in *Mertens* sought virtually the same thing: "monetary relief for all losses their plan sustained as a result of [an] alleged breach of fiduciary duties." 508 U.S. at 255. And the Supreme Court deemed that remedy legal, not equitable. *Id.*; *accord Great-West*, 534 U.S. at 210.

Aramark's further request for "any and all benefit or profits" that Aetna allegedly obtained is not equitable relief either. ROA.44-48. Such monetary relief for allegedly wrongful gains would be "equitable" only if Aramark could point to specific funds or property that it rightfully owned but Aetna wrongfully possessed. *See Rose*, 80 F.4th at 500-02; *Montanile*, 577 U.S. at

142-43; *Great-West*, 534 U.S. at 214. Thus, the Supreme Court held that a request for restitution of funds that the defendant never possessed was legal, not equitable. *Great-West*, 534 U.S. at 208-09, 213-14. Nor did a request for a lien against a defendant's "general assets" to recover settlement funds spent on "nontraceable items" qualify as "equitable relief"; such assets are not "a specific fund in the defendant's possession." *Montanile*, 577 U.S. at 145, 147. So too here, Aramark's failure to identify "specific fund[s] in the defendant's possession" distinct from Aetna's "general assets" dooms Aramark's assertion that it seeks equitable relief. *See id.* at 147; *see also* ROA.43-48.

In short, Aramark seeks the "classic" remedy available at common law— "a judgment" that imposes a "personal liability upon [Aetna] to pay a sum of money." *Great-West*, 534 U.S. at 213 (citation omitted); *see* ROA.47-48. Because Aramark seeks legal relief, arbitrators—not courts—must adjudicate that request. *See* ROA.517.

# CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order denying Aetna's motion to stay.

Dated: May 28, 2026

JOHN B. SHELY
M. KATHERINE STRAHAN
CAMERON POPE
HICKS THOMAS LLP
   *700 Louisiana Street*
   *Suite 2300*
   *Houston, TX 77002*
   *(713) 547-9100*

PETER J. KOCORAS
GREGORY H. BERMAN
THOMPSON HINE LLP
   *20 North Clark Street*
   *Suite 3200*
   *Chicago, IL 60602*
   *(312) 998-4241*

Respectfully submitted,

*/s/ Charles L. McCloud*
LISA S. BLATT
CHARLES L. MCCLOUD
NOAH C. MCCULLOUGH
IKENNA N. UGBOAJA
WILLIAMS & CONNOLLY LLP
   *680 Maine Avenue SW*
   *Washington, DC 20024*
   *(202) 434-5000*
   *lmccloud@wc.com*

MELISSA RICHARDS SMITH
GILLAM & SMITH, LLP
   *303 South Washington Avenue*
   *Marshall, TX 75670*
   *(903) 934-8450*

   *Attorneys for Defendant-*
   *Appellant Aetna Life Insurance*
   *Company*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, I electronically filed the foregoing document with the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system, which suffices as notice to all counsel of record.

/s/ Charles L. McCloud
CHARLES L. MCCLOUD
*Counsel for Defendant-Appellant*

Dated: May 28, 2026

**CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, that the attached En Banc Opening Brief for Appellant Aetna Life Insurance Company contains 7,772 words and complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2019, in 14-point CenturyExpd BT.

/s/ Charles L. McCloud
CHARLES L. MCCLOUD
*Counsel for Defendant-Appellant*

Dated: May 28, 2026