No. 24-40323

# In the United States Court of Appeals for the Fifth Circuit

ARAMARK SERVICES, INCORPORATED GROUP HEALTH PLAN; ARAMARK SERVICES INCORPORATED, *formerly known as* ARAMARK CORPORATION; ARAMARK UNIFORM SERVICES, GROUP HEALTH AND WELFARE PLAN; ARAMARK BENEFITS COMPLIANCE REVIEW COMMITTEE,

*Plaintiffs-Appellees*,

v.

AETNA LIFE INSURANCE COMPANY,

*Defendant-Appellant*.

## AMICUS CURIAE BRIEF OF THE U.S. ACTING SECRETARY OF LABOR SUPPORTING PLAINTIFFS-APPELLEES

On Appeal from the United States District Court for the Eastern District of Texas, Case No. 2:23-CV-446


JONATHAN BERRY
*Solicitor of Labor*

EDWARD M. WENGER
*Senior Counselor*

STEPHEN STASKO
*Counselor*

DANIEL COLBERT
*Senior Trial Attorney*

WAYNE R. BERRY
*Associate Solicitor for Plan Benefits Security*

MEGAN E. GUENTHER
*Deputy Associate Solicitor for Plan Benefits Security*

U.S. DEPARTMENT OF LABOR
OFFICE OF THE SOLICITOR
200 Constitution Avenue, NW
Washington, D.C., 20210
Telephone: 202-693-5600
Facsimile: 202-693-5610

*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS

## Case No. 24-40323

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Jonathan Berry, Solicitor, United States Department of Labor
2. Wayne R. Berry, Associate Solicitor for Plan Benefits Security, Office of the Solicitor, United States Department of Labor
3. Daniel Colbert, Senior Trial Attorney, Office of the Solicitor, United States Department of Labor
4. Megan E. Guenther, Deputy Associate Solicitor for Plan Benefits Security, Office of the Solicitor, United States Department of Labor
5. Keith E. Sonderling, Acting Secretary, United States Department of Labor
6. Stephen Stasko, Counselor, Office of the Solicitor, United States Department of Labor
7. Edward M. Wenger, Senior Counselor, Office of the Solicitor, United States Department of Labor

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the undersigned hereby certifies that none of the above-listed persons are corporate entities.

*/s/ Edward M. Wenger*

EDWARD M. WENGER
Attorney of Record for Proposed
Amicus Curiae the Acting
Secretary of Labor
August 31, 2026

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ..... i

TABLE OF CONTENTS ..... iii

TABLE OF AUTHORITIES ..... iv

IDENTITY & INTEREST OF AMICUS CURIAE ..... 1

INTRODUCTION & SUMMARY OF ARGUMENT ..... 2

BACKGROUND ..... 4

ARGUMENT ..... 9

I. SURCHARGE IS AN EQUITABLE REMEDY AVAILABLE UNDER SECTION 1132(A)(3). ..... 9

A. As a matter of history, surcharge was a typically available equitable remedy. ..... 10

B. Given ERISA's incorporation of trust-law principles, it necessarily follows that surcharge is an appropriate equitable remedy when a fiduciary breaches a fiduciary duty. ..... 13

C. Surcharge is not merely monetary damages under a different moniker. ..... 14

D. Surcharge fills a specific—but crucial—role in enforcing ERISA. ..... 17

II. THE SUPREME COURT HAS RECOGNIZED THAT SURCHARGE IS AVAILABLE UNDER SECTION 1132(A)(3). ..... 20

CONCLUSION ..... 25

CERTIFICATES OF COMPLIANCE ..... 26

CERTIFICATE OF SERVICE ..... 27

## TABLE OF AUTHORITIES

### Cases

*Aramark Servs., Inc. Grp. Health Plan v. Aetna Life Ins. Co.*,
162 F.4th 532, 534 (5th Cir. 2025) ........ 6, 7, 8
*Beck v. PACE Int'l Union*,
551 U.S. 96, 102 (2007) ........ 13
*Carpenter v. Providence Washington Ins. Co.*,
45 U.S. 185, 224 (1846) ........ 20
*CIGNA Corp. v. Amara*,
563 U.S. 421, 442 (2011) ........ passim
*Cole Energy Dev. Co. v. Ingersoll-Rand Co.*,
8 F.3d 607, 609 (7th Cir. 1993) ........ 23
*Cunningham v. Cornell Univ.*,
604 U.S. 693, 696 (2025) ........ 5, 22
*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101, 113 (1989) ........ 4
*Gates v. Plainfield Trust Co.*,
194 A. 65 (N.J. 1937) (per curiam) ........ 12
*Gearlds v. Entergy Servs.*, Inc.,
709 F.3d 448, 452 (5th Cir. 2013) ........ 8, 23
*Gimeno v. NCHMD, Inc.*,
38 F.4th 910, 914–15 (11th Cir. 2022) ........ 4
*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204, 211, 213 (2002) ........ 9
*Hollis v. Lynch*,
827 F.3d 436, 448 (5th Cir. 2016) ........ 23
*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
284 F.Supp.2d 511, 607 (S.D. Tex. 2003) ........ 10
*In re Ultra Petroleum Corp.*,
28 F.4th 629, 640–41 (5th Cir. 2022) ........ 23
*Kendall v. DeForest*,
101 F. 167, 170 (2d Cir. 1900) ........ 12
*Kenseth v. Dean Health Plan, Inc.*,
722 F.3d 869, 882 (7th Cir. 2013) ........ 20
*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248, 253 n.4 (2008) ........ 5, 12, 13
*Manhattan Bank of Memphis v. Walker*,
130 U.S. 267, 271 (1889) ........ 12

*Massachusetts Mut. Life Ins. Co. v. Russell*,
473 U.S. 134, 142 n.9 (1985) .......................................................... 15, 18
*McCravy v. Metropolitan Life Ins. Co.*,
743 F. Supp. 2d 511, 523–25 (D. S.C. 2009) .....................................................20
*Mertens v. Hewitt Assocs.*,
508 U.S. 248, 256 (1993) .......................................................... 3, 6, 14
*Mobil Oil Corp. v. Higginbotham*,
436 U.S. 618, 623 (1978) ..........................................................................17
*Montanile v. Bd. of Trustees of Nat. Elevator Indus.*,
577 U.S. 136, 148 n.3 (2016) ........................................................ passim
*Nachman Corp. v. Pension Ben. Guar. Corp.*,
446 U.S. 359, 361 (1980) ..........................................................................5
*Pegram v. Herdrich*,
530 U.S. 211, 224 (2000) ..........................................................................13
*Perez v. Silva*,
185 F. Supp. 3d 698, 703–04 (D. Md. 2016) .....................................................20
*Princess Lida of Thurn and Taxis v. Thompson*,
305 U.S. 456, 463–64 (1939) ......................................................................12
*Rose v. PSA Airlines, Inc.*,
80 F.4th 488, 495–504 (4th Cir. 2023)...............................................................4
*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22, 42 (2025) ..............................................................................22
*Sec'y of Lab. v. Fitzsimmons*,
805 F.2d 682, 693 (7th Cir. 1986) (en banc).........................................................1
*Shalala v. Illinois Council on Long Term Care, Inc.*,
529 U.S. 1, 18 (2000) ..............................................................................22
*Silva v. Metropolitan Life Ins. Co.*,
762 F. 3d 711, 715 (8th Cir. 2014)..................................................................19
*Smith v. Wade*,
461 U.S. 30, 35 (1983) ..............................................................................17
*Thole v. U.S. Bank N.A.*,
590 U.S. 538, 542–43 (2020) ......................................................................15
*U.S. Airways, Inc. v. McCutchen*,
569 U.S. 88, 100 (2013) ........................................................................4, 15
*United States v. Mitchell*,
463 U.S. 206, 226 (1983) ..........................................................................12
*Utah Republican Party v. Cox*,
892 F.3d 1066, 1079 (10th Cir. 2018)...............................................................23
*Varity Corp. v. Howe*,
516 U.S. 489, 497 (1996) ........................................................ passim

**Statutes**

29 U.S.C. § 1001(b) ........ 2
29 U.S.C. § 1103(a)(1) ........ 4
29 U.S.C. § 1001(a) ........ 2
29 U.S.C. § 1002(21) ........ 5
29 U.S.C. § 1104(a) ........ 5, 15
29 U.S.C. § 1109(a) ........ 13
29 U.S.C. § 1132(a)(1)(B) ........ 5, 18, 19
29 U.S.C. § 1132(a)(2) ........ 5
29 U.S.C. § 1132(a)(3) ........ passim

**Rules**

Federal Rule of Appellate Procedure 29(a)(2) ........ 1

**Treatises**

1 John N. Pomeroy, *A Treatise on Equity Jurisprudence* § 1080, at 2481–82 (4th ed. 1918) ........ 12
1 Restatement (Second) of Trusts § 205, and Comment i (1957); § 211) ........ 12
1 S. Speiser, Recovery for Wrongful Death, § 3:49 (2d ed. 1975) ........ 17
2 Joseph Story, *Commentaries on Equity Jurisprudence* §§ 1266–78, at 519–34 (12th ed. 1877) ........ 12
3 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 199.3, at 206 (4th ed. 1987) ........ 12
George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 862, at 36 (rev. 2d ed. 1995) ........ 13
R. Francis, Maxims of Equity 29 (1st Am. ed. 1823) ........ 2
Samuel Bray, *Fiduciary Remedies*, The Oxford Handbook of Fiduciary Law, 449, 452 (Evan J. Criddle, et al. ed., 2019) ........ passim

## IDENTITY & INTEREST OF AMICUS CURIAE[1]

The issue in this case is whether an action for the remedy of surcharge seeks "equitable relief" within the meaning of the parties' arbitration clause. The parties and the courts have treated that issue as overlapping with the question whether surcharge qualifies as "appropriate equitable relief" within the meaning of Section 1132(a)(3) Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1132(a)(3). As the United States officer with chief authority over Title I of ERISA, the Acting Secretary of Labor must help "assure the . . . uniformity of enforcement of . . . the ERISA statutes" when the need arises. *See Sec'y of Lab. v. Fitzsimmons*, 805 F.2d 682, 693 (7th Cir. 1986) (en banc). This duty includes clarifying and harmonizing the scope of relief that ERISA provides, the common law from which it borrows, and the Supreme Court jurisprudence construing it. The Acting Secretary thus offers the following brief addressing the meaning of ERISA Section 1132(a)(3) to aid the Court.[2]

[1] Federal Rule of Appellate Procedure 29(a)(2) provides that a United States officer "may file an amicus brief without the consent of the parties or leave of court." Because the Acting Secretary files this amicus brief past the Court-appointed deadline, however, he moves to file out of time.

[2] The Acting Secretary takes no position on the meaning of the parties' arbitration agreement or the extent to which it tracks ERISA's meaning.

## INTRODUCTION & SUMMARY OF ARGUMENT[3]

In 1974, Congress enacted ERISA in response to the Studebaker Corporation's insolvency and the consequential loss of promised pensions that otherwise would have protected the automobile company's employees through their retirement. Congress self-consciously and expressly created "minimum standards" to assure "the equitable character of" ERISA-covered "plans and their financial soundness." 29 U.S.C. § 1001(a). For those entrusted with responsibilities vis-à-vis ERISA-covered plans—i.e., fiduciaries—Congress imposed similar standards of care that have historically, as a matter of common law, applied to trustees. And Congress put in teeth by "providing for appropriate remedies, sanctions, and ready access to the Federal courts." *Id.* § 1001(b).

In the course of addressing the meaning of the parties' arbitration agreements, the parties have debated the scope of remedies available when an ERISA fiduciary transgresses its statutorily imposed duties (the highest imposed by law). Specifically, when Congress entitled fiduciary-breach victims to sue for "appropriate equitable relief," 29 U.S.C. § 1132(a)(3), may a court award money to make the victim whole?

Because "[e]quity suffers not a right to be without a remedy," R. Francis, Maxims of Equity 29 (1st Am. ed. 1823), the Supreme Court has stated that

---

[3] The Acting Secretary notes that the United States is filing a brief in the Supreme Court of the United States on similar issues in *Aldridge v. Regions Bank*, No. 25-590.

"surcharge"—i.e., a monetary award intended to make whole a fiduciary-breach victim—could be awarded in a suit brought under ERISA. *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011). In so doing, the Court painstakingly recounted surcharge's historic pedigree and concluded that it was a common—indeed "exclusively"—equitable trust-law remedy that fit comfortably within ERISA's trust-law-infused statutory regime.

Examining equity's long history confirms that the *CIGNA* Court got it right—surcharge was "typically available in equity" when courts were divided into those of law and equity. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (emphasis omitted). That means that it is available under Section 1132(a)(3). And for its part, the Supreme Court has never repudiated its extended *CIGNA* discourse.

Courts across the nation have largely (and correctly) followed *CIGNA*. Aetna, however, wants this Court to join the minority view and disregard the *CIGNA* Court's reasoned analysis. Focusing on a single footnote in *Montanile v. Bd. of Trustees of Nat. Elevator Indus.*, 577 U.S. 136, 148 n.3 (2016), Aetna surmises that *CIGNA* has been gutted, and that monetary remedies are only equitable when they seek traceable funds in the fiduciaries' possession—not money collectable from any of their general assets. Because surcharge seeks the latter, Aetna reasons that it cannot be awarded in an ERISA breach-of-fiduciary-duty lawsuit.

A panel of this Court rejected Aetna's argument, reaffirming earlier Circuit precedent holding that surcharge is available under Section 1132(a)(3). In so doing, it followed longstanding trust-law equitable practice and joined five other circuits while rejecting the Fourth and Sixth Circuits' mistaken holdings to the contrary. *Compare, e.g.*, *Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 914–15 (11th Cir. 2022) *with Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 495–504 (4th Cir. 2023). The Acting Secretary now respectfully requests that the Court rule in accordance with its two correctly decided prior decisions and reaffirm that surcharge is an available remedy in suits brought under ERISA.

## BACKGROUND

**A.** ERISA protects America's employer-sponsored retirement, health, and welfare plans. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). Participants in and beneficiaries of those plans have a property interest in the plan's assets, as demarcated by the plan's documents. *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013). To protect those property interests, ERISA treats covered plans as if they were trusts that an employer creates for its employees. 29 U.S.C. § 1103(a)(1); *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996). For that reason, the Supreme Court has held that trust law largely informs the way ERISA operates. *Firestone*, 489 U.S. at 110.

Those who exercise discretionary authority or control over ERISA plans are functionally the plans' trustees and are referred to as "fiduciaries." *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 n.4 (2008); *see also* 29 U.S.C. § 1002(21). Their unique role carries heightened obligations. Specifically, they must follow the plan's written terms and abide by certain trust-law-derived duties that are now enumerated in ERISA. *See* 29 U.S.C. § 1104(a). Relevant here, the duty of loyalty requires fiduciaries to (among other things) "deal fairly and honestly with beneficiaries" and "ensure that a plan receives all funds to which it is entitled." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025).

To animate these goals, ERISA's "comprehensive" enforcement provisions ensure that plan participants and beneficiaries get the benefits that their plans' terms promise them if a fiduciary breaches an ERISA-imposed fiduciary duty. *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 361 (1980). In some cases, enforcement is straightforward. In a run-of-the-mill case, an aggrieved participant or beneficiary can sue for the benefits to which the plan's terms entitle them, 29 U.S.C. § 1132(a)(1)(B), or for plan-wide relief, *id.* § 1132(a)(2).

For more complex enforcement actions, ERISA includes a catchall provision that functions as a safety net by providing remedies for injuries that the other

enforcement mechanisms cannot reach.[4] *Howe*, 516 U.S. at 512. These remedies may take the form of any "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). The Supreme Court has held that this provision allows courts to award any remedy "typically available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). "Typically available in equity," in turn, means the sort of remedy that courts of equity awarded before the 1938 merger of law and equity. *Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (quoting *id.*). Critically, and as discussed at greater length below, *infra* at 10–12, pre-merger courts of equity routinely bestowed monetary awards in circumstances that differed qualitatively from legal compensatory damages.

**B.** Plaintiff Appellee Aramark Services provides food, uniforms, and facility services to public buildings and businesses.[5] *Aramark Servs., Inc. Grp. Health Plan v. Aetna Life Ins. Co.*, 162 F.4th 532, 534 (5th Cir. 2025), *reh'g en banc granted, opinion vacated*, 173 F.4th 744 (5th Cir. 2026). It has several health plans for its employees through which Aramark pays their medical bills. *Id.* Aramark contracted with Aetna to administer the health plans. *Id.* at 534–35. For a monthly fee, Aetna,

---

[4] Though only plan participants, beneficiaries, and fiduciaries can sue under Section 1132(a)(3), the Acting Secretary can obtain similar relief under Section 1132(a)(5). *See* 29 U.S.C. § 1132(a)(5).

[5] The named plaintiffs include Aramark Services, its Incorporated Group Health Plan, and the company's benefits compliance review committee. The Acting Secretary refers to them all as Aramark.

among other things, adjudicated payment claims with its network of healthcare providers, reported on the plans' financial status, and handled plan participants' calls and correspondence about their benefits. *Id.* at 535. Aetna does not dispute that, for the purposes of this appeal, it owed fiduciary duties as the plan's administrator. *Id.* at 541 n.24; Excerpted Record on Appeal at 56–59 (Am. Compl. ¶¶ 99–108; 117–24).

Aramark claims that Aetna charged it excessive service fees while producing subpar results and driving up its employees' healthcare costs. It also alleges that Aetna negligently and imprudently paid millions of dollars of fraudulent and non-subrogated healthcare-provider claims, retained millions of dollars more in undisclosed fees, and engaged in claims processing-related misconduct in violation of ERISA's fiduciary duties. *Aramark*, 162 F.4th at 535. Based on these allegations, Aramark sued, seeking "reimburse[ment] . . . for any and all losses resulting from [Aetna] breaching its fiduciary duties."[6] Excerpted Record on Appeal at 60–61 (Am. Compl. Prayer for Relief).

[6] Aramark sought this remedy for various alleged fiduciary breaches involving several fund and asset sources. *Aramark*, 162 F.4th at 535. The Acting Secretary takes no position on whether surcharge is an acceptable remedy for these alleged breaches and their related funding and asset sources. He argues only that surcharge is an available equitable remedy generally against fiduciaries for fiduciary breaches.

The contract governing the relationship between Aetna and Aramark included a clause that forced all lawsuits into arbitration—except those seeking "equitable relief." Excerpted Record on Appeal at 21. Based on this clause, Aetna attempted to compel arbitration and moved to stay the proceedings below. *Id.* Aramark opposed the motion to stay, arguing that, because it sought an equitable surcharge, the arbitration clause did not apply. *Id.* at 24.

**C.** The district court denied Aetna's motion for a stay. After noting that Aramark sought money that would make it whole in a suit brought against a fiduciary premised on alleged fiduciary breaches, the court looked to the Supreme Court's decision in *CIGNA*, which interpreted similar language in ERISA Section 1132(a)(3). *Id.* at 25. Because the *CIGNA* Court had stated that surcharge was indeed typically awarded by courts of equity when lawsuits were brought against trustees for breaches of fiduciary duties, the district court concluded that Aramark sought the sort of equitable relief that brought its case outside the arbitration clause's purview. *Id.* at 26 (citing *CIGNA*, 563 U.S. at 440–42).

A divided panel of this Court affirmed. The majority noted that an earlier circuit panel, citing *CIGNA*, held that surcharge was an available equitable remedy under ERISA. *Aramark*, 162 F.4th at 544 (citing *Gearlds v. Entergy Servs.*, Inc., 709 F.3d 448, 452 (5th Cir. 2013)). The majority also reasoned that *Gearlds* remained

good law despite recent Supreme Court precedent, none of which addressed claims brought against ERISA fiduciaries for fiduciary breaches. *Id.*

Judge Jones dissented in part. In her view, *CIGNA*—and by extension *Gearlds*—had indeed been abrogated by a footnote in *Montanile*. She reasoned, further, that *CIGNA*'s surcharge discussion was dicta and could thus be disregarded. *Id.* at 548 (Jones, J., dissenting in part) (citing *Montanile*, 577 U.S. at 148 n.3). Finally, she construed the Supreme Court's jurisprudence in this area to limit monetary, yet equitable, remedies to instances in which a "plaintiff could trace the funds or property [it sought to recover] in a defendant's possession." *Id.* at 546 (Jones, J., dissenting in part) (citing *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211, 213 (2002)).

On April 28, 2026, the Court agreed to rehear this case en banc.

## ARGUMENT

### I. SURCHARGE IS AN EQUITABLE REMEDY AVAILABLE UNDER SECTION 1132(A)(3).

For purposes of ERISA, surcharge is a form of "appropriate equitable relief" that may be awarded for claims brought against fiduciaries for breaches of fiduciary duties. 29 U.S.C. § 1132(a)(3). This is true both as a matter of historical analysis and Supreme Court jurisprudence. Dating to the Middle Ages, surcharge was a commonly used, *exclusively* equitable remedy that could be awarded against a trustee for losses caused by violations of his trust-related duties. And as a matter of

precedent, the only time the Supreme Court has ever taken up the surcharge question in a case involving a breach-of-fiduciary claim brought against an ERISA fiduciary, it reasoned that surcharge could be awarded under Section 1132(a)(3). *See CIGNA*, 563 U.S. at 442. For its part, the Department of Labor has long agreed that surcharge is available as a remedy under ERISA. *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 607 (S.D. Tex. 2003). And because surcharge is sometimes the only method by which a court can make whole participants who suffer ERISA violations, concluding that it is available animates the purpose that ERISA was enacted to serve.

For all these reasons, the panel majority got the ERISA issue right, and the en banc court should make that manifest.

### A. As a matter of history, surcharge was a typically available equitable remedy.

Surcharge—or "equitable compensation"—is a longstanding remedy derived from the traditional equitable process of "accounting." Arising in medieval equity courts and evolving through the nineteenth century, accounting required trustees to report the assets they held in trust. Samuel Bray, *Fiduciary Remedies*, The Oxford Handbook of Fiduciary Law, 449, 452 (Evan J. Criddle, et al. ed., 2019). If the trust assets were depleted, a court could award an "accounting for profits," which required trustees to restore any assets of which they deprived the trust. *Id.* Critically, given the sui generis nature of trust law throughout the Anglo-American legal system,

these causes of action could be heard only in courts of equity. *See CIGNA*, 563 U.S. at 442.

Surcharge developed as a shortcut for accounting. Simply put, if an aggrieved person could show that a trustee had somehow wrongfully deprived the trust of value, a court of equity could force the offending trustee to pay money to account for the losses without first ordering it to conduct an accounting. In other words, "without [requiring] an accounting, a beneficiary could sue for . . . the expected results on the negative side of the ledger." Bray, *supra*, at 457. A surcharge is thus "make-whole" relief; it restores specific trust property (i.e., the account balance) to a state unblemished by trustees' actions. *CIGNA*, 563 U.S. at 442.

Although an award of money for losses superficially resembles monetary damages (a quintessentially legal remedy), those similarities fade on closer inspection. The differences lie primarily in trustees' unique duties, the forebears of the fiduciary duties currently enumerated in ERISA. Consistent with surcharge's origins in equitable accounting, trust beneficiaries could only seek surcharge against a trustee (in the ERISA context, against a plan fiduciary), and surcharge could only be awarded enough to restore the trust to its state absent the breach of trust (in the ERISA context, a fiduciary breach). These limits existed because the unique responsibilities imposed on trustees made them solely "chargeable with . . . any profit which would have accrued to the trust estate if there had been no breach of

trust," even including profits forgone because the trustee "fail[ed] to purchase specific property which it is his duty to purchase." *LaRue*, 552 U.S. at 253 n.4 (quoting 1 Restatement (Second) of Trusts § 205, and Comment i (1957); § 211)).

Critically, surcharge was a remedy exclusively available in equity. Suits against trustees proceeded only in trust law, over which equitable courts had exclusive jurisdiction. *Manhattan Bank of Memphis v. Walker*, 130 U.S. 267, 271 (1889). And courts of equity commonly awarded surcharge as relief.[7] Thus, surcharge was a typical, indeed exclusively, equitable remedy available back when courts divided their jurisdiction between law and equity.[8] *See* Bray, *supra*, at 458 n.66.

---

[7] *See, e.g.*, *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 463–64 (1939) (explaining that courts have the equitable power to "surcharge [the trustee] with losses incurred"); *Manhattan Bank*, 130 U.S. at 279 (ordering an equitable monetary remedy "for the proper value of the $5,200 of bonds" a trustee misappropriated); *Kendall v. DeForest*, 101 F. 167, 170 (2d Cir. 1900) (upholding decree that held trustee liable to beneficiaries for income deficiency resulting from breach of trust that had depleted annuity fund); *Gates v. Plainfield Trust Co.*, 194 A. 65, 66 (N.J. 1937) (per curiam) (upholding decree that required executor to pay income to life beneficiary); *cf. United States v. Mitchell*, 463 U.S. 206, 226 (1983) (relying on trust law to hold that Indians—whose tribes have a trust relationship with the U.S. government—could sue for monetary relief for losses allegedly caused by government's violation of timber-management duties).

[8] Treatises both before and after the years of the divided bench accord. 2 Joseph Story, *Commentaries on Equity Jurisprudence* §§ 1266–78, at 519–34 (12th ed. 1877); 1 John N. Pomeroy, *A Treatise on Equity Jurisprudence* § 1080, at 2481–82 (4th ed. 1918); Restatement (Second) of Trusts, § 205, at 458 cmt. a; 3 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 199.3, at 206 (4th ed. 1987);

### B. Given ERISA's incorporation of trust-law principles, it necessarily follows that surcharge is an appropriate equitable remedy when a fiduciary breaches a fiduciary duty.

ERISA carries surcharge's role and purpose to the present. As mentioned above, ERISA fiduciaries are, for all intents and purposes, trustees. They have responsibility for the plan assets that they hold in trust, and ERISA subjects them to fiduciary duties that impose heightened obligations on their conduct. *Beck v. PACE Int'l Union*, 551 U.S. 96, 102 (2007). More specifically, they must act exclusively in the interest of plan participants and beneficiaries any time they take a fiduciary action, and just like their trustee ancestors, they can be held to account when a fiduciary-duty breach causes a financial loss. *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000).

That last point bears emphasis. Just like trustees, ERISA fiduciaries' unique roles and responsibilities expose them to unique liability if they breach those duties. ERISA fiduciaries can be held "personally liable" and are expected to restore "any losses to the plan resulting from each [fiduciary-duty] breach," as well as "any profits of such fiduciary which have been made through use of assets of the plan[.]" 29 U.S.C. § 1109(a). This mirrors precisely trustees' liability to restore any ill-gotten profit to the trust. *LaRue*, 552 U.S. at 253 n.4; *see also supra* at 11.

---

George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 862, at 36 (rev. 2d ed. 1995).

Given the inimitable nature of the trust/trustee relationship, as well as the fact that suits against trustees could only be brought in courts of equity, it follows that the remedies plan participants can obtain from fiduciaries differ inherently from those they can obtain from non-fiduciaries. Fiduciaries are ERISA's primary regulated actors. *Mertens*, 508 U.S. at 253–54. For all these reasons, it should be entirely noncontroversial that the equitable remedies ERISA makes available against fiduciaries extend more broadly than those it imposes against non-fiduciaries.

Surcharge is of that ilk—an equitable remedy that is available for suits against a fiduciary, and for claims of fiduciary-duty breaches. It is precisely the type of remedy that remains in the quiver to enforce the heightened duties that ERISA imposes upon fiduciaries. Indeed, fiduciaries' greater liability for monetary remedies like surcharge is a burden of the mighty: fiduciaries (but not non-fiduciaries) are responsible for retirement and health plans' assets and property under certain fiduciary duties, so courts can require them (but not non-fiduciaries) to make plans whole for any losses associated with their breach of those duties.

### C. Surcharge is not merely monetary damages under a different moniker.

As noted above, conceded by Aramark, acknowledged by the Acting Secretary, and relied upon by the panel dissent, surcharge resembles—at least superficially—monetary damages that are traditionally considered a legal, as opposed to an equitable, remedy. But even though neither surcharge nor monetary

damages require a plaintiff to identify specific funds that are unlawfully in the hands of a defendant, the similarities end there. These differences matter, they outnumber the likenesses, and they keep surcharge squarely within the equitable-remedy limitation in Section 1132(a)(3).

The scope of fiduciaries' duties under ERISA and the fiduciaries' role in managing plan assets impose significant, property-rights-based limitations on the scope of any surcharge relief. These limitations do not exist when a plaintiff seeks monetary damages for a legal claim. All ERISA remedies turn on the property interest participants and beneficiaries have in the retirement or health plan under its terms. *U.S. Airways*, 569 U.S. at 100. But unlike legal damages, the equitable remedies ERISA offers go no further than making sure that those property interests remain whole and intact.

ERISA plan participants and beneficiaries have no general property interest in the plan itself. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 542–43 (2020). But they do have a property interest in what the plan's terms guarantee them, *id.*, and, in some circumstances, an interest in the plan's overall financial integrity, *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). This limitation affects all of ERISA's substantive provisions; the duty of loyalty does not, for example, require plan fiduciaries to give plan participants benefits above and beyond those that the plan's terms entitle them to receive. *See* 29 U.S.C. § 1104(a)(1)(A)(i), (D).

Under ERISA, any equitable relief must be "appropriate" to that property entitlement. *Id.* § 1132(a)(3). ERISA thus strictly connects any potential recovery to the plan's assets and the portion to which its terms entitle the participants and beneficiaries.

Equitable remedies restore damage to property and funds to which plaintiffs have a finite, circumscribed property right. *Montanile*, 577 U.S. at 148 n.3. Properly understood, surcharge does just that, and no more: it makes whole plan participants and beneficiaries by restoring to them the plan property—and only such property—that was promised to them under the plan's terms. *CIGNA*, 563 U.S. at 442. Consistent with its origins as an equitable trust-law remedy, surcharge is only available against the fiduciaries responsible for—and with heightened duties toward—those limited funds of which the fiduciaries' breach deprived the participants or beneficiaries. And like all equitable claims, surcharge claims carry no jury-trial right, and defendants enjoy the full panoply of equitable defenses like laches and unclean hands, which prevent abuses from both courts and plaintiffs. Bray, *supra*, at 458.

Contrast that with legal damages: legal relief is open-ended while equitable relief is not. With legal relief, courts can award individual plaintiffs nearly any sum that fits their injuries, and those sums need not be tethered to any property entitlement. Unlike surcharge, legal relief is compensatory. It can encompass non-

pecuniary losses like emotional distress, loss of society, and similar harms "not capable of measurement by any material . . . standard." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 623 (1978) (quoting 1 S. Speiser, Recovery for Wrongful Death, § 3:49 (2d ed. 1975)). And it can include punitive damages meant to affirmatively punish defendants for their actions even if there is no material harm. *See Smith v. Wade*, 461 U.S. 30, 35 (1983). Legal relief has few inherent limits—plaintiffs can be awarded essentially whatever is deemed fair by a jury. Bray, *supra*, at 457.

In other words, the differences between surcharge and money damages are legion, qualitative, and meaningful. These variances should quell any apprehension that allowing them under Section 1132(a)(3) would reduce to a specter the limitations on ERISA relief intended by Congress. For these reasons, the panel majority was correct.

### D. Surcharge fills a specific—but crucial—role in enforcing ERISA.

Surcharge is an archetype of the relief that Section 1132(a)(3)'s catchall, safety-net provision provides to ensure that ERISA violations do not lack a meaningful remedy. *Howe*, 516 U.S. at 512. Some fiduciary breaches neither violate the plan's terms nor harm the plan as a whole, yet they still clearly cause losses—sometimes substantial—to plan participants and beneficiaries. If disallowed, certain plan participants and beneficiaries—including those affected by outright fraud—

may find themselves with no way to be made whole in the wake of losses caused by fiduciaries for breaches of fiduciary duty, which would in turn undermine the entire reason ERISA was enacted in the first place.

An example illustrates this process. Suppose an ERISA plan offered a one-time payment of five thousand dollars for each plan participant who retired after thirty or more years of consecutive service with the company that sponsored the plan. To receive this benefit under the plan's terms, participants must simply fill out a form within thirty days of retirement. Suppose also that the plan's fiduciary, concerned with the company's bottom line, dishonestly told participants that filling out the eligibility form was unnecessary to obtain the benefit. Doing so would be fraud—and, as the Supreme Court has held, an obvious violation of that fiduciary's duty of loyalty. *Howe*, 516 U.S. at 506.

As flagrant as the fiduciary's breach would be in such a scenario, ERISA's usual enforcement provisions provide no relief. Because the fiduciary's fraud led plan participants to not fill out the form as required by the plan's terms, those participants cannot obtain relief under Section 1132(a)(1)(B), which allows recovery for benefits due. *See* 29 U.S.C. § 1132(a)(1)(B). And because the fiduciary's actions also caused no loss to the plan as a whole, those participants would remain similarly unable to recover the lost benefits under Section 1132(a)(2). *See Russell*, 473 U.S. at 140.

Contrast that deficiency with a more mundane, unintentional ERISA violation for which the statute provides clear relief. Suppose, rather than fraudulently lying about what the plan requires to prevent plan participants and beneficiaries from getting the one-time retirement benefit, that the plan's fiduciary inadvertently reads the plan to require participants to give notice of retirement when doing so is not required. If the fiduciary told plan participants and beneficiaries of this misreading, doing so would deprive of the retirement benefit and they could sue for benefits due under the plan's terms. 29 U.S.C. § 1132(a)(1)(B).

A surcharge awarded under Section 1132(a)(3) remedies the fraud described above. The harm is obvious: plan participants *should* have gotten the retirement benefit under the plan's terms, but the fiduciary's fraudulent breach of his duty of loyalty prevented them from receiving their benefits. Section 1132(a)(3) can give participants a surcharge equal to the retirement benefit. Doing so provides "appropriate equitable relief": the benefits contemplated by the plan's terms strictly limit the monetary relief available via surcharge to the amount that it would take to make whole the participants' property interest encroached upon by the fiduciary's breach.[9] This follows the basic equity maxim: "that if by fraud or misrepresentation

[9] *See also Silva v. Metropolitan Life Ins. Co.*, 762 F. 3d 711, 715 (8th Cir. 2014) (permitting a surcharge for the beneficiary of a life insurance policy after the insurer denied his claim for benefits because the deceased policy holder had not submitted sufficient "evidence of insurability" because his plan's fiduciary did not put out a summary plan description mentioning the requirement); *Perez v. Silva*, 185

one prevents acts from being done, equity treats [the act] as if it were done." *Carpenter v. Providence Washington Ins. Co.*, 45 U.S. 185, 224 (1846) (internal quotation marks omitted). And just as importantly, it ensures that every ERISA plaintiff can get the relief appropriate for their injury.

These hypotheticals help illustrate why surcharge is necessary to ensure that ERISA provides the robust relief and protection that Congress plainly intended. The foregoing shows that ERISA's primary remedial provisions can sometimes provide relief for simple fiduciary mistakes but not more malicious fraud. Allowing surcharge under Section 1132(a)(3) fills that counter-intuitive gap.

## II. THE SUPREME COURT HAS RECOGNIZED THAT SURCHARGE IS AVAILABLE UNDER SECTION 1132(a)(3).

Recognizing all this history, trust-law tradition, and statutory application, the Supreme Court explicitly said in *CIGNA* that surcharge was available as a remedy under Section 1132(a)(3). *CIGNA* was one of many cases in which the Court addressed which remedies were "typically available at equity" for purposes of ERISA. It remains the Court's most thorough analysis of the equitable remedies

F. Supp. 3d 698, 703–04 (D. Md. 2016) (similarly permitting the Secretary of Labor to seek a surcharge for such conduct); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013) (holding surcharge was available to health plan participant who was incorrectly told that a procedure was covered by her plan); *McCravy v. Metropolitan Life Ins. Co.*, 743 F. Supp. 2d 511, 523–25 (D. S.C. 2009) (letting a life insurance plan participant seek surcharge when she was denied benefits following the death of her daughter, where plan fiduciary had not informed her that the daughter was no longer a "child" within plan definition).

available in a cause of action for breach of fiduciary duty brought against an ERISA fiduciary. And contrary to a minority of circuits, the Supreme Court has never called into question its position on this issue.

*CIGNA* was a prototypical surcharge case. It analyzed a district-court order that required fiduciaries to pay losses to participants resulting from misleading statements that the fiduciaries made. *CIGNA*, 563 U.S. at 432–433. In *CIGNA*, the Court held that the ERISA provision on which the district court relied did not provide such relief, but it nonetheless instructed the district court to consider on remand that 29 U.S.C. § 1132(a)(3) allowed it to award a surcharge. *Id.* at 440–442. The Court drew on some of the history and statutory analysis described above, focusing on surcharge's status as an "exclusively equitable" remedy commonly used in equitable trust-law cases and distinguishing past cases in which it denied monetary remedies because they involved non-fiduciaries. *Id.* at 441–442 (citations omitted).

As the panel majority recognized here, the Supreme Court has never wavered from these statements. That said, the Sixth Circuit, the Fourth Circuit, and the panel dissent have disregarded *CIGNA*'s relevant discussion as dicta and have opined that a footnote in *Montanile sub silentio* abrogated *CIGNA*'s surcharge discussion. 577 U.S. at 148 n.3. The Acting Secretary is respectfully of the opinion that it did not.

In the Acting Secretary's view, *Montanile* is best read to support the opposite conclusion. As an initial matter, it bears noting that the Supreme Court has warned

repeatedly that it does not *sub silentio* overrule its prior decisions. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000). The notion that the *Montanile* Court nullified *CIGNA*'s detailed ERISA-remedies guidance in a footnote that itself was not necessary to *Montanile*'s outcome runs afoul of the Court's pronouncements on the seriousness of stare decisis. Yet that is precisely what Aetna claims, contending that *Montanile* "decisively rejected" *CIGNA* as "short-lived" dictum. Appellant's Br. at 14, 23.

But the *Montanile* footnote onto which Aetna clings merely clarified that *CIGNA* did not "all but overrul[e]" the Court's earlier ERISA-remedies decisions. *Montanile*, 577 U.S. at 148 n.3. Far from doing so, the Court explained, *CIGNA* "reaffirmed" that caselaw, which necessarily means that *CIGNA* harmonizes with that caselaw. *Id.* In other words, the footnote in *Montanile* is precisely the sort of passing observation for which the Court has cautioned against giving decisive weight. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 42 (2025).

Taking the *Montanile* Court at its word that it was not overruling any part of *CIGNA*, the correct way to harmonize the Court's jurisprudence in this area is the conclusion reached by the panel majority: surcharge is available, but only for breach-of-fiduciary-duty claims brought against ERISA fiduciaries. This is true even if a plaintiff bringing a breach of fiduciary duty claim against an ERISA fiduciary cannot identify the "particular funds or property in the defendant's possession." *Id.* (citing

*CIGNA*, 563 U.S. at 439). As explained above, ERISA treats fiduciaries differently than non-fiduciaries, and it does so for good reason. Because equity holds fiduciaries to a higher standard than non-fiduciaries, it is wholly appropriate that the availability of surcharge turns on whether a defendant owes fiduciary duties to a plaintiff.

*CIGNA*'s careful analysis should guide this Court. Even if *CIGNA*'s surcharge discussion was not strictly "essential to resolving t[he] case," it is still a legal pronouncement endorsed by the Supreme Court, and it was offered as instruction to aid the district court's analysis on remand. *Montanile*, 577 U.S. at 148 n.3. As this Court has noted, lower courts are "generally bound by Supreme Court dicta" when its guidance is "recent and detailed." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (quoting *Gearlds*, 709 F.3d at 452). And in such cases, Supreme Court dicta informs lower courts' decisions "almost as firmly as . . . the Court's outright holdings." *Utah Republican Party v. Cox*, 892 F.3d 1066, 1079 (10th Cir. 2018). This is especially true where, as here, the purported dicta contains "explicit directives . . . to the lower court concerning proceedings on remand." *In re Ultra Petroleum Corp.*, 28 F.4th 629, 640–41 (5th Cir. 2022) (quoting *Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 609 (7th Cir. 1993)).

*CIGNA*'s surcharge discussion more than meets this standard. Far from a drive-by dictum or an unadorned statement, *CIGNA*'s surcharge discourse was robust, it built upon past caselaw, and it analyzed closely the case's facts and all

relevant history. *CIGNA*, 563 U.S. at 441–45. This is enough, based on this Circuit's earlier precedent, to be considered binding.

Indeed, the Court had previously encountered similar facts, and when it did, it reached similar conclusions. For example, in *Varity Corp. v. Howe*, the Court held that ERISA provided a remedy for similar fiduciary breaches involving fiduciary misstatements, even if it left what remedy would be appropriate for another day. *Howe*, 516 U.S. at 515. *CIGNA* expanded upon this holding and applied the Court's ERISA-remedies caselaw when doing so. *CIGNA*, 563 U.S. at 441–45. That discussion is far more probative for answering whether surcharge is an available ERISA remedy than the cursory lines *Montanile* stowed in a footnote, especially considering that the same footnote also noted that *CIGNA* "reinforce[d]" past caselaw. *Montanile*, 577 U.S. at 148 n.3. The panel majority was correct when it declined to minimize *CIGNA*'s surcharge discussion into unearned obscurity.

*CIGNA* was correctly decided, and per *Montanile*, it can be read in harmony with the rest of the Court's jurisprudence regarding the forms of equitable relief available under Section 1132(a)(3). And in any event, the Court remains bound *CIGNA*'s analysis and conclusion, even if such analysis and conclusion might be viewed as dicta. For these reasons, the panel majority was correct when it held that surcharge is available under Section 1132(a)(3) for fiduciary-duty breaches claims brought against ERISA fiduciaries.

## CONCLUSION

Without surcharge woven into its tapestry, ERISA cannot provide participants and beneficiaries wronged by fiduciary breaches with the relief they desperately need. Because of surcharge's long history as a typically available equitable remedy, its clear limitations tied to property interests, and its strong place in ERISA's statutory architecture, this Court need not contemplate that possibility. For all these reasons, the Acting Secretary respectfully submits that surcharge is a form of "equitable relief" available against fiduciaries for breach of fiduciary duty under ERISA Section 1132(a)(3).

August 31, 2026

Respectfully submitted,

/s/ Edward M. Wenger


JONATHAN BERRY
*Solicitor of Labor*

EDWARD M. WENGER
*Senior Counselor*

STEPHEN STASKO
*Counselor*

WAYNE R. BERRY
*Associate Solicitor for Plan Benefits Security*

MEGAN E. GUENTHER
*Deputy Associate Solicitor for Plan Benefits Security*

DANIEL COLBERT
*Senior Trial Attorney*

U.S. DEPARTMENT OF LABOR
OFFICE OF THE SOLICITOR
200 Constitution Avenue, NW
Washington, D.C., 20210
Telephone: 202-693-5600
Facsimile: 202-693-5610

*Counsel for Amicus Curiae*

## CERTIFICATES OF COMPLIANCE

1. This document complies with the type-volume and word-count limits of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,934 words.

2. This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Edward M. Wenger*
EDWARD M. WENGER

August 31, 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 31st day of August, 2026, a true copy of the Amicus Curiae Brief of the Acting U.S. Secretary of Labor in Support of the Plaintiffs-Appellees was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by email a notice of docketing activity to all registered Attorney Filers.

*/s/ Edward M. Wenger*
EDWARD M. WENGER

August 31, 2026